PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
AUSTIN MANES (State Bar No. 284065)
amanes@kramerlevin.com
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

CLEMENT ROBERTS (State Bar No. 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

AMY K. VAN ZANT (SBN: 197426)
avanzant@orrick.com
FRANCES CHEEVER (State Bar No. 287585)
fcheever@orrick.com
EVAN BREWER (State Bar No. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

*Attorneys for Defendant*
CHECK POINT SOFTWARE
TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., a Israeli Limited Company,<br><br>    Defendants. | Case No.: 5:18-cv-02621-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Date:        August 14, 2018<br>Time:        2:00 p.m.<br>Location:   Courtroom 2, 17th Floor<br><br>Date Complaint Filed: May 3, 2018<br><br>Trial Date:  None Set |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, Patent Local Rule 2-1, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, Judge Orrick's Case Management Conference Order (Dkt. No. 11), the parties to the above-titled action, Plaintiff Finjan, Inc. ("Finjan") and Defendants Check Point Software Technologies Inc. ("Check Point") jointly submit this Case Management Statement and Proposed Order.

## 1.    Jurisdiction and Service

This is an action for patent infringement arising under 35 U.S.C. § 101 *et seq*.  The Court has subject matter jurisdiction over actions for patent infringement pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

**Check Point's Position:** Finjan's Complaint also names Check Point Technologies Ltd. ("Check Point Israel") as a defendant in this action, but Finjan has not served Check Point Israel. Contrary to Finjan's claims, (1) Finjan did not properly serve Check Point Israel; (2) Check Point Israel does not maintain an office in this District and does not do business in the United States or in California – indeed, it is a foreign listed company on the NASDQ, and that fact does not make it amenable to service of process; and (3) Mr. Roberts does not currently represent Check Point Israel in this action or otherwise.

Furthermore, Finjan misrepresents the quoted 6-K filing, which recites a press release that was *issued* from San Carlos, California, but does not state that Check Point Israel is *based* in San Carlos, because, of course, it is not based in San Carlos.  As the Form 20-F Finjan cites makes clear, Check Point Israel is based and headquartered in Israel.  Finally, Check Point Israel is not attempting to evade service, and Mr. Roberts did not represent to Finjan that Check Point Israel could not be served through the Hague Convention.  Rather, Mr. Roberts stated that in the past, plaintiffs have been unwilling or unable to serve Check Point Israel under the Hague Convention in Israel, and that Check Point Israel has not authorized Mr. Roberts to accept service on its behalf.  Moreover, a CMC statement is not a proper place for making this kind of motion.  Finjan is essentially trying to utilize the

1

JOINT CASE MANAGEMENT STATEMENT
& [PROPOSED] ORDER

Case No.: 5:18-cv-02621-WHO

1  CMC statement to pierce the corporate veil and circumvent the need for proper service of process on a
2  foreign entity.

3      **Finjan's Position:** Finjan properly served both Check Point and Check Point Israel in
4  California.  Check Point admits that it was properly served and Finjan requests that the Court order this
5  service to also be effective on Check Point Israel, of which Check Point is a wholly-owned subsidiary.
6  Both Check Point and Check Point Israel are represented by the same attorney, Clement S. Roberts.
7  Mr. Roberts currently represents Check Point in this case and previously appeared as counsel of record
8  for Check Point Israel in, for example, *Intellectual Ventures I LLC v. Check Point Software Techs.*
9  *Ltd.*, 2012 WL 6200337 (D. Del. Dec. 12, 2012).  On August 6, 2018, Mr. Roberts represented to
10 Finjan that Check Point Israel does not believe it can be served through the Hague Convention.  Thus,
11 despite doing business and maintaining an office in this District, it appears Check Point Israel seeks to
12 evade service of process altogether.  Under F.R.C.P. 4(f), Courts will order counsel for a domestic
13 entity to accept service on behalf of a related foreign entity, especially where the same counsel
14 represents both entities.  *See Finjan, Inc. v. Eset, LLC, et al.,* Case No. 3:16-cv-03731-JD (N.D. Cal.
15 2016) (Dkt. No. 49 at 1) (ordering Eset's counsel to accept service on behalf of Eset's parent Slovakian
16 entity under Rule 4(f)).

17     Further, California law, which Federal Courts follow for service issues, permits service on an
18 entity by serving its "general manager" in this State, which is interpreted broadly.  *See U.S. ex rel.*
19 *Miller v. Public Warehousing Co. KSC,* 636 Fed. Appx. 947, 948 (9th Cir. 2016) ("The Federal Rules
20 of Civil Procedure permit service upon a corporation . . . as prescribed by the law of the forum state or
21 the state in which service is made" and California law "permits service of process upon a foreign
22 corporation transacting business in California by serving 'its general manager in this State.'"); *Yamaha*
23 *Motor Co., v. Sup. Ct.,* 174 Cal. App. 4th 264 (2009) (holding service on a closely related corporation
24 can be effective on its foreign counterpart).  Here, Check Point and Check Point Israel are closely
25 related such that service on one is sufficient to impute service on the other.  Check Point Israel
26 publishes various manuals, guides, and whitepapers concerning the Accused Products that Check Point
27 sells in the United States with Check Point Israel's corporate logo.  All exhibits to the Complaint
28

2

regarding the Accused Products bear Check Point Israel's corporate logo and state "[a]ll rights reserved" for "Check Point Software Technologies Ltd."  *See* Dkt. No. 1-12 – 1-25 (Exs. 13-25). Check Point Israel's website regularly advertises active job listings in this District for its U.S. Headquarters in this District.  Dkt. No. 1 at ¶ 6.  Check Point Israel is also publicly traded on NASDAQ and regularly files various documents with the SEC, such as Form 6-K and Form 20-F.  In its most recent Form 6-K, Check Point Israel represents that it is a leading provider of cyber-security out of San Carlos, California, which is in this District: "SAN CARLOS, CA – July 30, 2018 --- Check Point® Software Technologies, Ltd. (NASDAQ: CHKP), a leading provider of cyber-security solutions globally." *See* http://secfilings.nasdaq.com/filingFrameset.asp?FilingID=12881377&RcvdDate=7/30/2018&CoName =CHECK%20POINT%20SOFTWARE%20TECHNOLOGIES%20LTD&FormType=6-K&View=html; *also see* http://secfilings.nasdaq.com/filingFrameset.asp?FilingID=12709462&RcvdDate=4/27/2018&CoName =CHECK%20POINT%20SOFTWARE%20TECHNOLOGIES%20LTD&FormType=20-F&View=html.

      Finjan further contends venue is proper as to Check Point Israel because Check Point Israel does business in this District continuously and regularly through its wholly-owned subsidiary Check Point USA, whose Headquarters is located within this District at 959 Skyway Road Suite 300, San Carlos, CA 94070.  Finjan further contends that there is personal jurisdiction over Check Point Israel in this District because Check Point Israel regularly and continuously does business in this District and has infringed or induced infringement, and continues to do so, in this District.

      Finjan reserves the right to seek sanctions and reimbursement of its attorney's fees expended pursuing service of Check Point Israel, especially considering that the same counsel is likely to represent both Check Point and Check Point Israel in this case.

### 2. Facts

      Finjan filed its complaint (the "Complaint") in this action on May 3, 2018.  Finjan alleges that Check Point directly infringes U.S. Patent Nos.: 6,154,844 ("the '844 Patent"); 6,965,968 ("the '968

3

Patent"); 7,418,731 ("the '731 Patent"); 7,647,633 ("the '633 Patent"); 8,141,154 ("the '154 Patent");
8,079,086 ("the '086 Patent") and 8,677,494 ("the '494 Patent") (collectively the "Patents-in-Suit") by
making, using, selling, offering for sale and/or importing Check Point's Next Generation Firewall and
Security Gateway products, Blade products, CloudGuard products, Endpoint Protection products,
Advanced Threat Prevention products, Mobile Security products, ZoneAlarm products, Threat
Intelligence products, Security Management and Policy Management products, ThreatCloud Managed
Security Service products, Smart-1 Appliance products, products using SandBlast technology, and
products utilizing the Gaia Operating System. The foregoing products and services are identified in
the Complaint at paragraphs 35-55 and collectively referred to herein by Finjan as the "Accused
Products." Check Point objects to what Finjan characterizes as the "Accused Products" because, by
and large, the terms identified as "Accused Products" are marketing terms that describe types of
products (*e.g.,* "Advanced Threat Prevention products") rather than specific products within the listed
types. Since Check Point makes its product catalogue publicly-available, Finjan could (and should)
identify specific products to accuse of infringement rather than labeling types of products as the
"Accused Products," leaving CheckPoint to guess at which products are really accused of infringing
the Patents-in-Suit. During the parties' Rule 26 conference, Checkpoint agreed to provide Finjan with
a list of specific products that it sells and Finjan agreed to identify which of those specific products it is
accusing and would like Check Point to include on the source code computer. Finjan contends it holds
all rights, title, and interest in the Patents-in-Suit. Finjan seeks damages and injunctive relief for the
alleged infringement, as well as a finding that this case is exceptional.

The parties filed a joint stipulation on June 12, 2018, extending the time for Check Point to
respond until July 16, 2018 (Dkt. No. 15). Check Point filed an Answer to the Complaint on July 16,
2018 (Dkt. No. 19) denying Finjan's claims and asserting affirmative defenses.

### 3.    Legal Issues

The principal disputed legal issues are:

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

- Whether Check Point has infringed any claim of the Patents-in-Suit, either directly under 35 U.S.C. § 271(a), or indirectly under § 271(b);

- Whether the Patents-in-Suit are valid and enforceable;

- Whether Finjan is entitled to recover damages as a result of the alleged infringement of any or all of the Patents-in-Suit, and if so, the amount (35 U.S.C. §§ 284, 287);

- Whether Finjan is entitled to injunctive relief to prevent alleged irreparable harm as a result of the alleged continuing infringement of any or all of the Patents-in-Suit (35 U.S.C. § 283);

- Whether this case is exceptional (35 U.S.C. § 285).

### 4.      Motions and/or Pending Matters

#### (a)      Pending Motions

There are no pending motions in this action.

#### (b)      Anticipated Motions

Finjan and Check Point anticipate moving for summary judgment and may file other dispositive and non-dispositive motions as the case progresses.  The parties anticipate filing a joint motion for a protective order governing the confidentiality of information and the review of source code in this matter.

**Check Point's Position:** Check Point anticipates moving for specific infringement contentions early in the case.  Check Point already has made its source code available for inspection, and has requested that Finjan identify—in its initial disclosures—specifically accused instrumentalities with citations to that source code.  This is important to Check Point because, in Finjan's numerous other cases, it has frequently provided vague contentions pointing at numerous (broadly worded) products as alternative, mix-and-match components which can be put together in any combination to create a nearly infinite number of alternative infringement theories.  *See, e.g.*, Motion to Compel Further Infringement Contentions, *Finjan, Inc. v. Zscaler, Inc.*, No. 3:17-cv-06946-JST, at Dkt. No. 61 (N.D. Cal., Aug. 2, 2018); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6-10 (N.D. Cal. Apr. 2, 2015) (finding Finjan's infringement contentions failed to identify where each limitation of each asserted claim could be found within each accused instrumentality as required by Pat. L.R. 3-1).  Finjan should be prohibited from adopting this same improper tactic here.  Check Point

JOINT CASE MANAGEMENT STATEMENT                          Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

wrote to Finjan on July 26th making its source code available for inspection under the interim model protective order and asking Finjan to identify specific products it would like to review.  Finjan responded by refusing to look at the source code unless Check Point stipulated to changes in the interim order that would allow Finjan to participate in IPRs.  After Check Point agreed to Finjan's demands, Finjan asked to review "all versions" of source code for the (undefined) "accused products" for an unspecified period of review.  When Check Point asked Finjan to specify particular products by looking at its website, Finjan represented that it had been unable to identify any specific products on Check Points web site.  In response Check Point offered to produce a list of specific products for Finjan that fall within the general categories of technology it has gestured at in the complaint.  Check Point continues to believe that Finjan should be required to provide specific contentions for specifically accused products early in the litigation including by specifying "where" in the accused products the accused instrumentalities can be found.  Given that Check Point is providing early and prompt access to source code, Finjan should include that level of specificity in its contentions.

**Finjan's Position:** Finjan disagrees that Check Point's anticipated motion for specific infringement contentions will be warranted.  Finjan also disagrees with Check Point's mischaracterizations of the parties' discussions regarding the accused products, as the accused products are identified in paragraphs 35-55 of the Complaint and it was Check Point who first offered to provide Finjan with a complete list of its accused products to choose from.

As in its prior cases, Finjan's infringement contentions here will be sufficient to "provide reasonable notice to the defendant as to why the plaintiff believes it has a reasonable chance of proving infringement."  *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *3 (N.D. Cal. Jan. 9, 2017) ("[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'").  Check Point's statement that it will move for specific infringement contentions, before even seeing Finjan's infringement contentions in this case, is premature.

Notwithstanding the fact that pin-cites to source code are not required in infringement

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

contentions,[1] Finjan has agreed to begin early review of Check Point's source code.  The parties negotiated certain terms of a protective order related to source code review from July 26-30.  On August 6, 2018, Finjan identified a source code reviewer and requested a time and location to begin review.  That same day, Check Point agreed to provide a list of Check Point's products to Finjan, so that Finjan could select which products it would like to review on the source code computer.  Once Finjan does so, it understands that Check Point will place the code for those products on the computer and make it available at its offices in San Francisco, California.

**5.      Amendment of Pleadings**

The parties agree that the deadline for joining parties and amending the pleadings without leave of Court should be November 1, 2018, and that otherwise the parties may only amend the pleadings upon a showing of good cause, or upon being granted leave to amend by the Court.

**6.      Evidence Preservation**

The parties have reviewed the Northern District of California's Guidelines for the Discovery of Electronically Stored Information ("ESI") and the Checklist for Rule 26(f) Meet and Confer Regarding ESI, including those portions related to evidence preservation.  The parties confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve electronic and hardcopy evidence relevant to the issues reasonably evident in this action.

The parties anticipate addressing further agreement regarding ESI in the parties' ESI Order.

**7.      Initial Disclosures**

The parties agree to exchange initial disclosures pursuant to Rule 26(a) on August 28, 2018.  Each party reserves its right to amend such disclosures as discovery progresses.

**8.      Discovery**

No discovery has been taken to date, and, at this time, the parties have not identified any discovery disputes.  Check Point proposes that the Court appoint a Magistrate Judge to oversee the

---

[1] *See, e.g., Finjan v. Proofpoint*, Case No. 13-cv-05808-HSG, Dkt. No. 282 at *5 (N.D. Cal. Dec. 16, 2015) (expressly holding that pinpoint citations to source code are not required: "[Rule 3-1]'s purpose is to provide notice of the patentee's theory of infringement, not to provide the evidence supporting that theory").

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

resolution of any discovery disputes that do arise, as Check Point anticipates that there may be significant discovery disputes given the scope of the case. Because this proposal was added late on the due date by Check Point, Finjan will address it at the Case Management Conference.

**Check Point's position:** On July 26, 2018, Check Point made the source code for the Accused Products available to Finjan for inspection pursuant to the Northern District of California's Patent Local Rule 2-2 Interim Model Protective Order. Finjan subsequently requested amendments to the Interim Model Protective Order, and the parties negotiated limitations to the terms of the "Prosecution Bar" provided in the Interim Model Protective Order. Further, Check Point agreed to provide a list of Check Point products from which Finjan will select source code to review. As of the filing of this statement, Finjan has yet to conduct an inspection.

**Finjan's position:** Finjan disagrees with Check Point's mischaracterizations above. Check Point has not yet made any source code available and it confirmed yesterday that the source code computer is not ready for review. In fact, it is impossible for Check Point to accurately claim that the source code is available while simultaneously claiming that it cannot tell what products are accused or what products to place on the source code computer. Finjan identified the accused products in paragraphs 35-55 of the Complaint. However, in order to move the case forward Finjan also agreed to further identify the accused products from a list, which Check Point's counsel unilaterally offered to provide to Finjan, so that Check Point knows exactly what products to place on the source code computer. Finjan is still waiting on that list of accused products from Check Point.

Pursuant to Rule 26(f) and paragraph 8 of the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, the parties propose the following discovery plan:

> **(a)    Changes to the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

As noted above, the parties agree to exchange initial disclosures pursuant to Rule 26(a) on August 28, 2018. The parties' proposals regarding the timing for expert disclosures under Rule 26(a)(2) and pretrial disclosures under Rule 26(a)(3) are set forth in the proposed schedule at Section

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

17 (Appendix A) below.

> **(b)   Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

The parties anticipate that the scope of discovery will encompass the factual and legal issues identified in Sections 2 and 3 above, and the requested relief discussed in Section 11 below, including all related, ancillary, and subsidiary factual and legal issues and matters.  The parties' proposals regarding when discovery should be completed are set forth in the proposed schedule in Section 17 (Appendix A) below.

> **(c)   Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

The parties discussed discovery of ESI during their Rule 26(f) conference.  The parties intend to file a proposed stipulated ESI Order to address discovery of ESI, including the particular topics set forth in the Northern District of California's Guidelines for the Discovery of ESI and Checklist for Rule 26(f) Meet and Confer Regarding ESI.  The parties will continue to meet and confer in good faith to reach agreement on the terms of the ESI Order and will advise the Court if they are unable to resolve any disputed issues.  The parties intend to file the stipulated ESI Order (with competing provisions if necessary) by September 14, 2018.

> **(d)   Any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order.**

The parties agree that neither party will produce nor list on any privilege log any item protected by any privilege, immunity, or protection that occurred or was created on or after the filing of the Complaint (May 3, 2018).  Subject to the foregoing, the parties agree that issues of privilege or work product shall be addressed as provided in the Federal Rules of Civil Procedure, Federal Rule of Evidence 502 and the Protective Order and/or ESI Order to be entered in this action.

(e)     **Changes that should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

To the extent not limited below, and unless otherwise agreed to by the parties, the parties agree that discovery is subject to the limitations set forth in the Federal Rules of Civil Procedure, Local Rules of this Court and the ESI Order and Protective Order to be entered in this action.  If a party requests discovery that exceeds any of the limitations set forth below, the parties agree to meet and confer in good faith to attempt to resolve the issue without intervention of the Court.  If the parties are unable to reach agreement, a party may seek leave from the Court for the additional discovery.

The parties and the court hereby adopt paragraphs 6–11 of the Model Stipulated Order Re: Discovery of Electronically Stored Info (Patent Cases), available on the website for the Northern District of California, except that with regard to paragraphs 10 and 11 the parties agree that each side may select ten (10) email custodians and ten (10) search terms for each custodian.

### (i)     Requests for Production of Documents and Things

The parties agree that there is no limit on the number of requests for production of documents and things that each side may serve, consistent with the Federal Rules of Civil Procedure.

### (ii)     Interrogatories

The parties agree that each side may serve up to 25 Interrogatories, consistent with the Federal Rules of Civil Procedure.

### (iii)     Request for Admissions

Each side may serve up to 50 Requests for Admission.  Requests for Admission related to the authentication of documents are exempt from this limitation.

### (iv)     Depositions

*Fact and Expert Depositions:*

The parties agree that individual depositions will be subject to the limits contained in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as set forth below:

**Finjan's Proposal:** Finjan proposes that the 7 hours total per witness limit does not apply to Rule 30(b)(6) witnesses, particularly where there are numerous topics identified for one witness, but that each deposition day for a Rule 30(b)(6) witnesses will still be limited to 7 hours and total

JOINT CASE MANAGEMENT STATEMENT                     Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

deposition time for all Rule 30(b)(6) witness will be limited to 28 hours.  Finjan needs 28 hours of total deposition time for Rule 30(b)(6) witnesses because there are seven patents asserted in this case across thirteen different accused product groups.  *See* Dkt. 1 at ¶¶ 33-35.  Counsel for Check Point told counsel for Finjan that it intends to designate a single individual, Tamir Zegman, as Check Point's Rule 30(b)(6) witness for all technical issues raised by any Rule 30(b)(6) request on these thirteen accused product groups.  Given the number of accused products in this case and Check Point's decision to designate Mr. Zegman for all of them, Finjan cannot be limited to a single deposition day with Mr. Zegman.

Finjan further proposes that an expert witness may be deposed for up to 7 hours for each primary issue (e.g., infringement, invalidity) on which that expert has provided an opinion.  Thus, if an expert provides an opinion regarding infringement as well as an opinion regarding invalidity, then that expert may be deposed for up to 7 hours regarding infringement and for up to 7 hours regarding invalidity, for a maximum total of 14 hours of deposition time.  Check Point's proposal below for 7 hours of deposition time for every 250 pages in an expert's report is premature.  At this juncture, neither party knows how long any expert report will be or the content of those pages.  It is possible, based on the type of evidence included, that an expert report will be 500 pages but only require three hours of deposition time.  If Check Point decides it needs additional time for an expert deposition, beyond the full-day for each primary issue that Finjan proposes, the parties can address that potential need when it arises.  Check Point's proposal, as written, also encourages formatting and stylistic changes that may reduce the number of pages in an expert report but also make it more difficult to follow.

**Check Point's Proposal:** Check Point does not agree that Finjan should be allowed to take an unbounded amount of 30(b)(6) deposition time.  Finjan's proposal effectively gives Finjan (i) an infinite number of 30(b)(6) hours and (ii) four days of deposition time with each 30(b)(6) witness.  Taken together, these will allow Finjan to take its entire deposition budget as 30(b)(6) depositions, rendering the Federal Rules presumptive limits on deposition time a nullity.

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

Moreover, Finjan's proposal means that it would be able to effectively depose Check Point's key technical resources for *four times* the amount of deposition time that Finjan proposes to give Check Point to depose Finjan's key technical resource – i.e. its expert witness.  Getting unlimited 30(b)(6) time with experts on Check Point's products while limiting the time Check Point gets to spend with Finjan's experts to a single day is unreasonable – especially given Finjan's history of serving expert reports that clock in at well more than a thousand pages.

Check Point therefore proposes that each side be allocated a total of 21 hours of 30(b)(6) deposition time to use however it wants and that each side be allowed to depose the other side's experts for seven hours for every 250 pages included in an expert's report, and no less than 7 hours for each issue (i.e. infringement, validity, damages) on which the expert produces a report.

### (f)    Protective Order

The parties will be producing confidential information requiring entry of a protective order in this action.  Any confidential information produced prior to entry of a protective order is subject to the Northern District of California model protective order for litigation involving patents (pursuant to Patent Local Rule 2-2).  The parties intend to meet and confer in good faith to reach agreement on the terms of a stipulated Protective Order, taking into consideration the Northern District of California model protective order for litigation involving patents, and will advise the Court if they are unable to resolve any disputed issues.  The parties intend to file the stipulated Protective Order (with competing provisions if necessary) by September 14, 2018.

### (g)    Discovery from Experts

The parties agree that the Federal Rules of Civil Procedure (*e.g.*, Rule 26(b)(4)) and the Local Rules of this Court govern discovery from experts in this case.

The parties further agree that the following communications and materials relating to expert witnesses in this litigation shall not be the subject of discovery or inquiry at trial: (a) drafts of any expert disclosures or analysis (including reports, declarations, affidavits, or any other form of testimony); (b) communications, whether written or oral, between or among any expert, consultant, and/or counsel for the party retaining said expert; (c) notes or preparatory materials taken by or on

JOINT CASE MANAGEMENT STATEMENT                     Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

behalf of any expert; (d) emails, lists, agendas, outlines, memoranda, presentations, and letters, whether in draft or any other form, that are provided to, or by or on behalf of, any expert; and, (e) any other types of preliminary work product created by or on behalf of any expert. The foregoing exemptions shall not apply to any communications or materials, including those listed above, on which any expert, in any disclosure, expressly relies as a basis for an opinion. Such communications or materials shall be subject to discovery and inquiry at trial. Communications and materials exempt from discovery under this provision shall be treated as attorney work product and need not be listed on any privilege log.

        **(h)**    **Service**

The parties agree that service via email is acceptable pursuant to Rule 5(b)(2)(E).

**9.**    **Class Actions**

Not applicable.

**10.**    **Related Pending Cases**

Information concerning other pending litigations involving the Patents-in-Suit is provided at Appendix B.

**11.**    **Relief**

Finjan seeks entry of judgment finding that Check Point has infringed and is infringing the Patents-in-Suit. Finjan also seeks injunctive relief, including an injunction against Check Point from infringing the Patents-in-Suit. Finjan also seeks monetary damages, including damages based on an amount no less than a reasonable royalty. Finjan further seeks a judgment that this case is exceptional and an award of Finjan's costs and reasonable attorneys' fees. Finjan also seeks an accounting of all sales and revenues, together with pre-judgment and post-judgment interest. Finjan seeks any other relief available under applicable law. Check Point seeks the relief set forth in its Answer—including entry of judgment in its favor and adverse to Finjan on all issues.

**12.**    **Settlement and ADR**

Pursuant to ADR L.R. 3-5, the parties have reviewed the Court's ADR handbook, discussed the available ADR procedures and considered whether this case would benefit from an ADR procedure.

The parties prefer to discuss ADR selection at the case management conference, as set forth in their ADR Certifications filed on July 25, 2018 (Dkt. Nos. 21, 22).

### 13.    Consent to Magistrate Judge

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

### 14.    Other references

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15.    Narrowing of Issues

Subject to the progression of discovery, the parties may be able to narrow certain issues via stipulated facts.  In order to streamline "the issues in this case to promote a 'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1," the parties propose the following phased limits on asserted claims and invalidity theories.

**Finjan's Proposal:** Not later than 45 days after Check Point is required to provide invalidity contentions pursuant to Patent Local Rule 3-3 and produce documents sufficient to show the operation of the accused instrumentalities pursuant to Patent Local Rule 3-4, Finjan shall serve a Preliminary Election of Asserted Claims, which shall assert from claims previously asserted in its Infringement Contentions no more than 8 claims from each patent and no more than a total of 50 claims across all Patents-in-Suit.  Not later than 14 days after service of the Election of Asserted Claims, Check Point shall serve a Preliminary Election of Asserted Prior Art, which shall identify no more than 8 prior art references per patent and no more than a total of 50 references.

Not later than 28 days after the Court enters its Claim Construction Order, Finjan shall serve a Final Election of Asserted Claims, which shall identify from the subset of claims previously identified no more than 5 asserted claims per patent and no more than a total of 20 claims across all Patents-in-Suit.  Not later than 14 days after service of a Final Election of Asserted Claims, Checkpoint shall serve a Final Election of Asserted Prior Art, which shall identify from the subset of grounds previously

identified no more than 5 asserted prior art references per patent and no more than a total of 20 references across all Patents-in-Suit.

Check Point's proposal below is unheard of and makes no sense.  In this patent infringement action, Finjan asserts claims of direct infringement on seven asserted patents and claims of indirect infringement on six of those patents.  Check Point's proposal seeks to limit the facts on which Finjan can base its claims of direct and indirect infringement, but this is improper.  As with any other civil action, Finjan's claims of infringement are based on alleged infringing actions taken by the defendant. The defendant cannot seek to exclude its own infringing actions, on which Finjan may base its claims of direct and indirect infringement, from the case.  To use another type of civil action as an example, if Finjan was asserting a tortious interference claim alleging five acts of intentional interference, the defendant would not be able to argue that Finjan should limit its theories of interference to only one of those acts of interference, as opposed to all five.  Similarly, here Finjan alleges that Check Point makes, offers, and sells multiple technologies operating across multiple accused products that infringe the asserted patents in multiple ways.  Finjan is entitled to pursue and present to the jury all of the ways that Check Point's products directly and indirectly infringe the asserted claims.

Check Point's use of the word "theories" (which Check Point does not adequately define) is also a misnomer, since Finjan's actual theories of infringement are its claims of direct and indirect infringement for each patent.  What Check Point truly seeks with this proposal is to limit the number of ways that Finjan can prove Check Point directly and indirectly infringes each patent, by forcing Finjan to rely on just a single specific combination of technologies per asserted claim.  In this manner, Check Point's proposal would also improperly narrow its own damages exposure early in the case.  Because, for example, even if Check Point maintains multiple different types of databases in different locations that all met the "database" claim limitation of Finjan's '494 Patent, under Check Point's proposal Finjan will only be able to rely on one of those databases.  Thus, limiting Finjan's infringement case in this manner will improperly limit Finjan's recoverable damages and prejudice Finjan, even as discovery is just beginning.

Moreover, Check Point's proposal is inherently unfair.  Check Point's proposal attempts to

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

limit the ways that Finjan can prove its infringement claims, and in exchange Check Point offers to limit its own invalidity theories to certain combinations of prior art references.  But a single prior art reference may be used to invalidate a patent claim in multiple different ways.  For example, a single prior art reference may be used to invalidate a patent under 35 U.S.C. § 102(a), § 102(b), or § 103. Additionally, a user manual for an entire product may be designated as a single prior art reference, and thus Check Point may point to multiple different functionalities described within that same user manual to attack Finjan's patent claims from multiple different angles within that single reference.  By contrast, Check Point's proposal requires Finjan to limit its proof of infringement to a single combination of "specific lines of source code" for a "specific instrumentality."  It is for this reason that Courts overwhelmingly narrow an infringement case <u>by the number of asserted claims</u>, not by the ways that Finjan is allowed to prove the defendant infringes those claims.  *See, e.g., Finjan v. Sophos*, No. 14-cv-01197-WHO (N.D. Cal. Apr. 16, 2015) (narrowing by number of asserted claims); *Finjan v. Blue Coat Systems, Inc.*, No. 15-cv-03295, Dkt. No. 98 (N.D. Cal. Sept. 12, 2014) (same); *Finjan v. Cisco*, No. 17-cv-00072-BLF, Dkt. No. 70 (N.D. Cal. Aug. 16, 2017) (same); *Finjan v. Proofpoint*, Case No. 13-cv-05808-BLF, Dkt. No. 98 at *3 (N.D. Cal. Nov. 14, 2014) (same); *Finjan v. Symantec*, No 14-cv-02998-HSG (N.D. Cal. Aug. 1, 2016) (same).  The balance for Check Point is that it must narrow the number of prior art references it asserts.

Finally, Check Point only raised its unusual proposal the day before this Joint CMC Statement was due.  As such, Finjan reserves the right to supplement its argument on this issue at the Case Management Conference.  And to the extent the Court is inclined to consider Check Point's untested proposal on a potentially prejudicial issue, Finjan respectfully requests the opportunity to brief this issue in full.

**Check Point's Proposal:** In case after case, Finjan has served "grab bag" infringement contentions which advance between dozens and *thousands* of separate infringement theories for each claim.  Multiplied by the dozens and dozens of claims Finjan intends to assert here, it will be literally impossible for Check Point to formulate a defense, move for summary judgment or otherwise move this case along.  Check Point is, at the same time, sensitive to the fact that defendants sometimes do the

16

1  same thing to plaintiffs by pointing to dozens of prior art references and then saying that "any"

2  combination of those references could be used to invalidate a given claim.  Our proposal would allow

3  for neither: limiting **both** the infringement theories that Finjan pursues and the prior art theories that

4  Check Point advances.

5        Finjan characterizes as "unheard of" and "inherently unfair" the idea that Courts in this district

6  would consider imposing limits on the number of theories that a plaintiff advances in litigation.  But

7  courts in this district routinely use flexible and adaptive case management strategies to streamline

8  cases according to the particular issues they present.  Thus, for example, Judge Alsup is *right this very*

9  *minute* using a "shootout" procedure in one of Finjan's other cases—in which each party moves for

10  summary judgment on a single claim of a single patent—as a novel case management strategy.  Here,

11  the *fact* is that Finjan wants to start with 50 patent claims against 13 different product groups

12  encompassing a huge number of different products.  That's a gargantuan case scope on its own.  Even

13  under Check Point's proposal of two infringement theories per claim, this will result in one hundred

14  separate theories of infringement.  How many theories does Finjan need?  How many theories does

15  Finjan think can realistically be dealt with on summary judgment, let alone at trial?  If Finjan is

16  allowed to assert an unlimited number of theories for each of those claims, the case will simply be

17  unmanageable.  The Court need not take our word for it . . . just ask Finjan to submit its expert reports

18  on infringement produced in connection with other cases it has brought in this District, most of which

19  are well in excess of a thousand pages.  And that is **after** Finjan has narrowed its case down to the

20  same number of claims it proposes to pursue here.

21        As this Court well knows, it is impossible to try more than a handful of theories to the jury in a

22  single case.  All Check Point is asking is that Finjan be required to select these theories in a reasonably

23  timely way so that Check Point actually knows what this case is about.  That is the *purpose* of the

24  Local Patent Rules' initial disclosures.  *See, e.g., Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO,

25  2015 WL 5012679, at *1 (N.D. Cal. Aug. 24, 2015) (patent local rules "are designed 'to require parties

26  to crystallize their theories of the case early in the litigation and to adhere to those theories once they

27  have been disclosed.'") (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417

28

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

F.Supp.2d 1121, 1123 (N.D.Cal.2006)).  Finjan is working around those rules by, for each claim, asserting numerous different theories about what each limitation might be said to read on in the alternative.  The *effect* of this strategy is to make the Local Patent Rules a nullity—the defendant has no idea what the issues will be at trial, and no effective way to prepare a defense.

For these reasons, Check Point's proposal is as follows:

Not later than 45 days after Check Point is required to provide invalidity contentions pursuant to Patent Local Rule 3-3, Finjan shall serve a Preliminary Election of Asserted Claims, which shall assert from claims previously asserted in its Infringement Contentions no more than two alternative theories of infringement for each of 8 claims from each patent and not more than a total of 50 theories across all Patents-in-Suit. For each asserted theory, Finjan shall identify the specific lines of source code constituting the accused instrumentality and sufficient textual information to provide Check Point with notice of *why* Finjan contends that specific instrumentality meets the claim limitation.

Not later than 14 days after service of the Election of Asserted Claims, Check Point shall serve its a Preliminary Election of Asserted Prior Art, which shall identify no more two alternative theories (what Finjan calls "grounds") for each of 8 references[2] for each patent and no more than a total of 50 theories across all Patents-in-Suit.

Not later than 28 days after the Court enters its Claim Construction Order, Finjan shall serve a Final Election of Asserted Claims, which shall identify from the subset of claims previously identified no more than 5 asserted claims per patent, no more than a total of 15 claims and 15 infringement theories across all Patents-in-Suit.  Not later than 14 days after service of a Final Election of Asserted Claims, Checkpoint shall serve a Final Election of Asserted Prior Art, which shall identify from the subset of theories / grounds previously identified no more than 5 asserted references per patent and no more than a total of 15 references and 15 theories / grounds across all Patents-in-Suit.

Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify the above limits on asserted claims and prior art grounds for good cause shown.  Any request

---

[2] A "reference" is a single asserted prior-art publication or, where a collection of information (including multiple documents) describing a single prior art product or system.

18

to increase these limits must specifically show why the inclusion of additional asserted theories, claims or prior art references is warranted. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312–13 (Fed. Cir. 2011).  A failure to seek such a modification will constitute acquiescence to the above limits on asserted claims and prior art references.

### 16.    Expedited Trial Procedure

The parties do not propose that this case proceed under the Expedited Trial Procedure of General Order 64 Attachment A.

### 17.    Scheduling

The parties' scheduling proposals are set forth in the chart attached hereto as Appendix A.

### 18.    Trial

The parties have requested trial by jury.  The parties expect that the trial will last at least 10 court days in light of the complexity of the case and the number of patents asserted.

### 19.    Disclosure of Non-party Interested Entities or Persons.

The parties have filed Certifications of Interested Entities or Persons pursuant to Civil Local Rule 3-16.

Finjan certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Finjan, Inc. is a wholly owned subsidiary of Finjan Holdings, Inc.  Additionally, CybeRisk Security Solutions LLC, Finjan Mobile, Inc., and Finjan Blue, Inc. are also wholly owned subsidiaries of Finjan Holdings, Inc.  No other entities have a financial interest in the subject matter in controversy or Finjan, Inc., or a non-financial interest in that subject matter or Finjan, Inc. that could be substantially affected by the outcome of this proceeding.

Check Point certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

in that subject matter or in a party that could be substantially affected by the outcome of this

proceeding:

Check Point, Inc. is a wholly-owned subsidiary of Check Point Software Technologies Ltd.  No

other entities have a financial interest in the subject matter in controversy or Check Point, Inc., or a

non-financial interest in that subject matter or Check Point, Inc. that could be substantially affected by

the outcome of this proceeding as of this date.

**20.    Professional Conduct**

The attorneys of record confirm that they have reviewed the Guidelines for Professional

Conduct for the Northern District of California.

**21.    Patent Local Rule 2-1(b)**

Pursuant to Patent Local Rule 2-1(b), the parties have also met and conferred regarding the

following additional matters:

**(a)    Proposed modification of the obligations or deadlines set forth in the Patent Local Rules**

The parties' proposed modified timeline for Patent Local Rule 4 is set forth in Appendix A

below.

**(b)    The scope and timing of any claim construction discovery (including disclosure of and discovery from any expert witness permitted by the court) and damages discovery**

The parties' proposed schedule (Section 17, Appendix A) addresses timing of fact discovery

(including damages discovery), as well as the timing of claim construction and damages-related

disclosures and discovery required under the Patent Local Rules.  The parties do not currently

anticipate a need to limit the scope of such discovery.

**(c)    The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing**

 The parties agree that the presentation of argument at the hearing should be in the manner and

order that the Court prefers to address the issues, particularly given the nature of the Patents-in-Suit,

the technology involved, and the number and nature of claim terms that remain in dispute at the time of

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

the hearing.  The parties do not anticipate that they will seek to present live expert witness testimony at the claim construction hearing and any tutorial.  The parties anticipate requesting at least 3 hours for the Claim Construction Hearing, with each side entitled to half of the total time permitted.

**(d)     How the parties intend to educate the court on the technology at issue**

The parties propose providing the Court with a tutorial regarding the technology at issue at the Court's convenience.

**(e)     Non-binding, good-faith estimate of the damages range**

Pursuant to Patent Local Rule 2-1(b), Finjan makes the following statement:

Finjan seeks all damages to which it is entitled under U.S. patent laws, including 35 U.S.C. § 284, arising from Check Point's infringement.  Finjan seeks damages in an amount adequate to compensate for Check Point's infringement, which includes, but is not limited to, no less than a reasonable royalty for the manufacture, use, offer for sale, sale, and/or importation of the invention.  A non-binding, good-faith estimate of the reasonable royalty range expected for the case is approximately $137 million.  This non-binding estimate is based on a range of factors and the information available to Finjan, including when Finjan put Check Point on notice of the Asserted Patents, the different expiration dates for the Asserted Patents, the publicly available information regarding Check Point's revenues and extent and amount of use for the Accused Products, Finjan's established licensing practices and royalty rates applied to a royalty base, royalty base assessments, the benefits and advantages of Finjan's patented technology, and Check Point's convoyed sales.  Finjan anticipates that additional confidential information from Check Point, such as specific revenue data, estimated profits, the number of users of Check Point's products, and other confidential financial and technical information from Check Point will also inform Finjan's damages for infringement.  Finjan also seeks interest and costs fixed by the Court, as well as an accounting of all infringing sales and revenues by Check Point.  Finjan also seeks an award of attorneys' fees, expenses, and costs associated with the present action under 35 U.S.C. § 285, as well as enhanced damages under 35 U.S.C. § 284.  Such fees, costs, and expenses cannot be computed at the present time and depend on a variety of factors, such as the length and intensity of the litigation and the positions that Check Point takes.

Respectfully submitted,

DATED:  August 7, 2018             By: */s/ Austin Manes*
                                         Paul Andre (State Bar. No. 196585)
                                         Lisa Kobialka (State Bar No. 191404)
                                         James Hannah (State Bar No. 237978)
  Austin Manes (State Bar No. 284065)
  KRAMER LEVIN NAFTALIS & FRANKEL LLP
  990 Marsh Road
  Menlo Park, CA  94025
  Telephone: (650) 752-1700
  Facsimile: (650) 752-1800
  pandre@kramerlevin.com
  lkobialka@kramerlevin.com
  jhannah@kramerlevin.com
  amanes@kramerlevin.com

  Attorneys for Plaintiff
  FINJAN, INC.

Respectfully submitted,

DATED:  August 7, 2018             By: */s/Evan Brewer*
  CLEMENT ROBERTS (State Bar No. 209203)
  croberts@orrick.com
  ORRICK, HERRINGTON & SUTCLIFFE LLP
  405 Howard Street
  San Francisco, CA 94105
  Telephone: (415) 773-5700
  Facsimile: (415) 773-5759

  AMY K. VAN ZANT (SBN: 197426)
  avanzant@orrick.com
  FRANCES CHEEVER (State Bar No. 287585)
  fcheever@orrick.com
  EVAN BREWER (State Bar No. 304411)
  ebrewer@orrick.com
  ORRICK, HERRINGTON & SUTCLIFFE LLP
  1000 Marsh Road
  Menlo Park, CA 94025-1015
  Telephone: +1 650 614 7400
  Facsimile: +1 650 614 7401

  Attorneys for Defendant
  CHECK POINT SOFTWARE
  TECHNOLOGIES, INC.

JOINT CASE MANAGEMENT STATEMENT             Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

By: */s/ Austin Manes*

Austin Manes

JOINT CASE MANAGEMENT STATEMENT
& [PROPOSED] ORDER

Case No.: 5:18-cv-02621-WHO

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is

approved as the Case Management Order for this case and the parties shall comply with its provisions.

**IT IS SO ORDERED.**


Dated: _____                    _____
                                          UNITED STATES DISTRICT JUDGE
                                          THE HONORABLE WILLIAM H. ORRICK

JOINT CASE MANAGEMENT STATEMENT                    Case No.: 5:18-cv-02621-WHO
& [PROPOSED] ORDER

**Appendix A:**
**Proposed Case Schedule**

| Event | Applicable Rule or Order | Ordered or Agreed Date/Deadline |
|---|---|---|
| Initial Case Management Conference | | August 14, 2018 |
| Initial Disclosures | Rule 26(a)(1) | August 28, 2018 |
| Protective Order | | September 14, 2018 |
| Last day to join parties or amend the pleadings without leave of Court per Section 5 above | | October 1, 2019 |
| Disclosure of Asserted Claims and Infringement Contentions;  Document Production Accompanying Disclosure | Pat. L.R. 3-1, 3-2 | October 12, 2018 |
| Invalidity Contentions; Document Production Accompanying Invalidity Contentions | Pat. L.R. 3-3, 3-4 | November 26, 2018 |
| Exchange of Proposed Terms for Construction | Pat. L.R. 4-1 | December 14, 2018 |
| Exchange of Preliminary Claim Constructions and Extrinsic Evidence | Pat. L.R. 4-2 | January 11, 2019 |
| Damages Contentions | Pat. L.R. 3-8 | January 15, 2019 |
| Joint Claim Construction and Prehearing Statement | Pat. L.R. 4-3 | January 25, 2019 |
| Responsive Damages Contentions | Pat. L.R. 3-9 | February 14, 2019 |
| Completion of Claim Construction Discovery | Pat. L.R. 4-4 | February 25, 2019 |
| Claim Construction Briefs – opening brief | Pat. L.R. 4-5(a) | March 11, 2019 |
| Claim Construction Briefs – responsive brief | Pat. L.R. 4-5(b) | March 25, 2019 |

i

| Event | Applicable Rule or Order | Ordered or Agreed Date/Deadline |
|---|---|---|
| Claim Construction Briefs – reply brief | Pat. L.R. 4-5(c) | April 1, 2019 |
| Claim Construction Tutorial | Pat. L.R. 4-6 | Subject to the Court's convenience |
| Claim Construction Hearing | Pat. L.R. 4-6 | Subject to the Court's convenience |
| Close of fact discovery | | December 13, 2019 |
| Opening expert reports | | March 11, 2020 |
| Rebuttal expert reports | | April 24, 2020 |
| Close of expert discovery | | June 12, 2020 |
| Opening summary judgment briefs | | July 17, 2020 |
| Responsive summary judgment briefs | | August 14, 2020 |
| Reply summary judgment briefs | | September 11, 2020 |
| Summary judgment hearings | | Subject to the Court's convenience |
| Final Pretrial Conference | | Subject to the Court's convenience |
| Trial | | Subject to the Court's convenience |

APPENDICES TO JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER

Case No.: 5:18-cv-02621-WHO

**Appendix B:**
**Finjan's Statement Regarding Its Pending Cases**

**Palo Alto Networks, Inc.**

On November 4, 2014, Finjan filed a complaint against Palo Alto Networks, Inc., ("PAN") in this district (Case No. 3:14-cv-004908-PJH), alleging that PAN infringes four of the seven patents asserted against Check Point in the instant lawsuit, i.e., the '968, '731, '633, '494 Patents, as well as additional patents.  The action against PAN is currently assigned to the Honorable Phyllis J. Hamilton.  On December 10, 2015, the matter was stayed pending a decision by the PTAB on whether to institute IPR on certain claims of Finjan's ten patents asserted against PAN.  On May 26, 2016, the Court ordered the stay to remain in effect until the PTAB's final determination of the instituted IPRs.  On November 24, 2014, Finjan filed a Notice of Pendency of Other Actions Involving Same Patents in the PAN action regarding the FireEye, Blue Coat and Symantec actions.  On May 23, 2016, the parties filed a Joint Status Report wherein Finjan asked the Court to lift the stay and PAN requested that the stay remain in place.  On May 26, 2016, the Court issued an Order staying the case until the PTAB issues its final ruling on the instituted IPR petitions.

**PTAB PROCEEDINGS:** Of PAN's thirteen IPR petitions, the PTAB denied institution of seven petitions, including one IPR related to the '780 Patent (IPR2016-00165) and one IPR related to the '926 Patent (IPR2016-00145). The PTAB granted institution of six petitions, including one IPR related to the '633 Patent (IPR2015-01974), two IPRs related to the '154 Patent (IPR2015-01979 and IPR2016-00151), two IPRs related to the '408 Patent (IPR2015-02001 and IPR2016-00157), and one IPR related to the '494 Patent (IPR2016-00159).  On March 29, 2016, the PTAB instituted trial on claims 14 and 19 of the '633 Patent, and denied institution on the rest of the challenged claims.  On March 16, 2017, the PTAB issued a final written decision stating that the instituted claims of the '633 patent have not been shown to be unpatentable.  On March 21, 2016, the PTAB instituted trial on

i

claims 1-8, 10 and 11 of the '154 Patent (IPR2015-01979), and on April 20, 2016, the PTAB instituted

trial on the same claims in the other '154 petition (IPR2016-00151).  On March 15, 2017, the PTAB

issued final written decisions for both instituted petitions concerning the '154 Patent (IPR2015-01979

and IPR2016-00151), stating that the instituted claims have not been shown to be unpatentable.  These

IPR decisions have been appealed to the Federal Circuit, where they are currently pending.  On March

29, 2016, the PTAB instituted trial on the IPR petition for the '408 Patent and on March 17, 2017,

issued a final written decision stating that the instituted claims have not been shown to be

unpatentable.  This IPR has been appealed to the Federal Circuit, which is currently pending.  On May

9, 2016, the PTAB denied institution of trial on the '926 Patent.  On April 21, 2016, the PTAB denied

institution of the '780 Patent.  On May 13, 2016, the PTAB instituted trial on the '494 Patent on claims

1-6 and 10-15.  On April 11, 2017, the PTAB issued a final written decision stating that claims 3-5 and

10-15 have not been shown to be unpatentable and that claims 1, 2, and 6 have been shown to be

unpatentable.  This IPR has been appealed to the Federal Circuit, and has been consolidated with

Symantec's appeal of the PTAB's final written decision regarding Symantec's own IPR petition for

the'494 Patent.  This consolidated appeal involving the '494 Patent is currently pending.  On May 16,

2016, the PTAB issued its last decision concerning whether to institute IPR on the 13 petitions filed by

PAN on the 10 patents asserted by Finjan in the case.  On March 13, 2018, the Federal Circuit Court

granted Symantec and Blue Coat's unopposed motion to withdraw as parties to Appeal Nos. 2017-

2034, 2047, 2453, and 2623, cases concerning the '494 Patent and some of which initiated by Palo

Alto Networks and later joined by Symantec and Blue Coat.  On April 12, 2018, the USPTO

intervened in the Appeal No. 2017-2047.  These appeals are currently pending.  On March 13, 2018,

the Federal Circuit Court also granted Symantec's motion to withdraw from Appeal Nos. 17-2314 and

2015 concerning the '154 Patent.  These appeals are currently pending as well.

APPENDICES TO JOINT CASE MANAGEMENT                    Case No.: 5:18-cv-02621-WHO
STATEMENT & [PROPOSED] ORDER

**ESET, LLC and ESET SPOL. S.R.O.**

On July 1, 2016, Finjan filed a patent infringement lawsuit against ESET, LLC and ESET SPOL. S.R.O. in this district (Case No. 16-cv-03731-JD), asserting that defendants infringe two of the seven patents asserted against Check Point in the instant lawsuit, namely, the '844 and '086 Patents, along with additional patents. Eset filed a Motion to Dismiss on July 27, 2016, under first to file rule, and a Motion to Dismiss on October 20, 2016, under failure to state a cause of action under Fed. R. Civ. 12(b)(6). The case was transferred to the Southern District of California on January 31, 2017 (Case No. 17-cv-00183-BAS-NLS). The Court held a case management conference on March 20, 2017, and denied Eset's motions to dismiss on March 21, 2017. Judge Bencivengo issued a Claim Construction Order on November 14, 2017, and denied Finjan's motion for reconsideration of claim construction. On May, 2018, the Court granted a stay as to any claims concerning the '305 Patent but denied to stay the rest of the case. Currently, summary judgment and Daubert hearings are scheduled to take place on November 16, 2018 and jury trial is scheduled to begin on February 4, 2019.

**PTAB PROCEEDINGS:** Eset also filed two IPR petitions, one of which relates to the '086 Patent (IPR2017-01969). The Board denied to institute IPR on January 9, 2018. The Board also denied Eset's request for rehearing on February 15, 2018.

**Cisco Systems, Inc.**

On January 6, 2017, Finjan filed a Patent infringement lawsuit against Cisco Systems, Inc. in this district (Case No. 17-cv-00072) and filed an amended complaint on July 7, 2017, asserting that defendant infringes four of the seven patents asserted against Check Point in this case, namely, the '844, '633, '154 and '494 Patents, along with additional patents. The action against Cisco is currently assigned to the Honorable Beth Labson Freeman. Cisco filed a motion to dismiss Finjan's willfulness claims, which the Court granted on June 7, 2017. Finjan filed a Second Amended Complaint on July

7, 2017.  Cisco filed another motion to dismiss Finjan's willfulness claims on July 24, 2017.  A hearing on Cisco's motion to dismiss the willfulness claims of the Second Amended Complaint was held on December 14, 2017.  The Court issued its claim construction order on July 23, 2018. Currently summary judgment hearings are scheduled to take place on October 31, 2019 and the jury trial is scheduled to begin on June 1, 2020.

**PTAB PROCEEDINGS:** Cisco filed three IPRs, one relating to the '844 Patent (IPR2017-02154), one relating to the '494 Patent (IPR2017-02155), and one relating to the '633 Patent (IPR2018-00391).  Finjan filed its patent owner preliminary response for the '844 Patent on January 6, 2018.  Finjan filed its patent owner preliminary response for the '494 Patent on January 8, 2018.  The PTAB instituted IPR on all of the challenged claims of the '633 Patent on June 5, 2018.  This IPR proceeding is currently pending.  With regarding to the petitions for IPRs on certain challenged claims of the '844 and '494 Patents, the PTAB denied to institute both IPRs on April, 3, 2018.

**SonicWall, Inc.**

On August 4, 2017, Finjan filed a patent infringement lawsuit against SonicWall, Inc. in this district (Case No. 5:17-cv-04467), asserting that defendant infringes five of the seven patents asserted against Check Point in the instant case, namely, the '844, '633, '154, '494 and '968 Patents, along with additional patents.  The action against SonicWall is currently assigned to the honorable Beth Labson Freeman.  On October 13, 2017, SonicWall filed a motion to dismiss Finjan's willfulness claims, which has been fully briefed.  The Court denied SonicWall's motion to dismiss complaint on May 16, 2018 and held that Finjan satisfied its burden to allege sufficient facts to establish that SonicWall engaged in egregious conduct.  On June 7, the Court reassigned the case to Magistrate Judge Virginia K. DeMarchi as Magistrate Judge Howard R. Lloyd retired as of June 4, 2018.  Currently claim construction hearing is scheduled on October 12, 2018 and trial is scheduled on May 3, 2021.

APPENDICES TO JOINT CASE MANAGEMENT                    Case No.: 5:18-cv-02621-WHO
STATEMENT & [PROPOSED] ORDER

**Bitdefender, Inc. and Bitdefender S.R.L.**

On August 16, 2017, Finjan filed a patent infringement lawsuit against Bitdefender, Inc. and Bitdefender S.R.L. in this district (Case No. 5:17-cv-04790), asserting that defendants infringe two of the seven patents asserted against Check Point in the instant case, namely, the '154 and '494 Patents, along with additional patents.  The action against Bitdefender is currently assigned to the Honorable Haywood S. Gilliam.  The Case Management Conference was held on November 21, 2017.  Bitdefender filed an Answer to the Complaint, with counterclaims, on November 22, 2017.  Finjan served its infringement contentions on defendants on December 5, 2017.  After the parties reached an agreement on service of Bitdefender S.R.L., it served its Answer to the Complaint on January 26, 2018 and joined Bitdefender Inc.'s invalidity contentions, served on February 2, 2018. Bitdefender filed a motion to stay the case on February 5, 2018, for which hearing took place on May 10, 2018.  On April 30, the Court granted in part and denied in part Finjan's motion to strike Defendants' affirmative defenses.  The Court conducted a claim construction hearing on June 6, 2018.

**Zscaler, Inc.**

On December 5, 2017, Finjan filed a patent infringement lawsuit against Zscaler, Inc. in this district (Case No. 3:17-cv-06946), asserting that defendants infringe two of the seven patents asserted against Check Point in the instant case, namely, the '633 and '494 Patents.  The action against Zscaler is currently assigned to the Honorable Jon S. Tigar.  The Case Management Conference took place on April 4, 2018 and scheduling order was issued on June 21, 2018, setting claim construction hearing date of December 11, 2018.  The Court denied Zscaler's motion to extend time to serve its invalidity contentions on June 27, 2018.

APPENDICES TO JOINT CASE MANAGEMENT
STATEMENT & [PROPOSED] ORDER

Case No.: 5:18-cv-02621-WHO