PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
AUSTIN MANES (State Bar No. 284065)
amanes@kramerlevin.com
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., a Israeli Limited Company,<br><br>Defendants. | Case No.: 5:18-cv-02621-WHO<br><br>**PLAINTIFF FINJAN'S BRIEF IN SUPPORT OF ITS PROPOSAL TO STREAMLINE THE ISSUES**<br><br>Date Complaint Filed: May 3, 2018 |

Pursuant to the Court's Minute Order at Dkt. 24, Plaintiff Finjan, Inc. ("Finjan") submits this brief in support of its proposal to streamline the issues in this case, and opposing Defendants Check Point Software Technologies Inc.'s and Check Point Software Technologies Ltd.'s (collectively "Check Point") proposal regarding the same. *See* Dkt. 23 (Joint CMC Statement) at 14-19.

### 1. Finjan's Proposal Follows the Federal Circuit's Model Order

Finjan's proposal for streamlining the issues follows the Federal Circuit's Model Order ("Model Order"). Specifically, Finjan proposes that Finjan select no more than 8 claims from each patent and no more than 50 claims across all Patents-in-Suit within 45 days of Check Point's invalidity contentions. Then, 14 days later, Check Point shall select 8 prior art references per patent and no more than a total of 50 references. Finjan further proposes that within 28 days of the Claim Construction Order, Finjan select 5 claims per patent and no more than 20 total. And 14 days later Check Point will select 5 references per patent and no more than 20 total. Finjan's proposal is simple, easy to administer, well established in numerous districts, and follows the Federal Circuit's Model Order. In fact, the only changes that Finjan made to the Model Order are minor changes to the total numbers of claims and references allowed at each stage to account for the fact that there are seven patents asserted.

### 2. Every Authority that Plaintiff Found Streamlines by Claims

An untold number of courts have entered orders in patent cases to streamline the issues and "promote a just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1. In every single one of the cases Plaintiff found, the court streamlined the case by narrowing the number of patent claims. Finjan was unable to find even a single decision that supported narrowing a patent case by anything other than the number of claims asserted. Although the number of decisions that support narrowing patent cases by claims is in the hundreds or higher, below Finjan provides a limited list of 51 such cases, from multiple jurisdictions, that support Finjan's proposal. See Appendix A. Each one of these decisions narrowed the case by the number of claims, not by "theories" as Check Point proposes.

There is good reason that narrowing a case by claims has been the method adopted by Courts and approved by the Federal Circuit for streamlining cases. First, it is easy to administer because there is no dispute about what a "claim" is. Second, patents often include duplicative claims, and typically a

1

few claims can be used as "representative claims" without unduly prejudicing the patent holder. Narrowing the case by claims also makes the most sense for streamlining claim construction, because limiting the claims asserted also reduces the amount of claim language at issue. The Federal Circuit has provided examples of various methods courts could use to streamline the case for claim construction, and each of these examples involves narrowing by claims, not by "theories." "There are legitimate ways in which district courts can streamline the claim construction analysis when faced with myriad claims from multiple patents. District courts may choose, for instance, to construe only the independent claims of the various patents, or may direct the parties to identify the most representative claims for construction." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1327 n.2 (Fed. Cir. 2007).

### 3. The Federal Circuit Authorizes Streamlining Cases by Claims

The seminal authority on this issue is *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011) ("Katz"). There, the plaintiff filed 25 actions asserting "a total of 1,975 claims from 31 patents against 165 defendants in 50 groups of related corporate entities." *Id*. at 1309. The 31 patents came from eight families – each of them shared one of eight unique specifications. *Id*. As a result, the district court noticed many of the claims were duplicative or overlapped on infringement and validity issues, and ordered the plaintiff to ultimately narrow the case to 64 claims total (eight claims per unique specification). *Id*. Importantly, the district court held, "the limitations on the numbers of claims were not immutable" and the plaintiff could add more claims "if they raise[d] issues of infringement/validity that [were] not duplicative of previously selected claims." *Id*.

The Federal Circuit held that narrowing the case by the number of claims was not an abuse of discretion, since the plaintiff made no attempt to add any additional claims that were not duplicative. *Id*. at 1312. But the Federal Circuit also noted that if the plaintiff had shown "some of its unselected claims presented unique issues as to liability or damages" or if the district court had excluded any claims with unique invalidity or infringement issues, such a decision would have been "subject to review and reversal." *Id*. at 1313. Thus, while a Court has discretion to limit the number of asserted claims, it must do so with consideration to due process and property rights, especially where any excluded claims present unique issues on infringement, invalidity, liability, or damages, for example.

*Id.* at 1313; *Avocent Redmond Corp. v. Rose Elecs.*, No. C 06-1711 RSL, 2012 WL 4903270, at *1-2 (W.D. Wash. May 29, 2012) (holding methods to streamline must not "unfairly prejudice the patent holder by creating a significant risk that it would be erroneously deprived of its property rights in the claims").

### 4. CheckPoint's Proposal Violates Finjan's Due Process and Property Rights

Check Point proposes that Finjan limit its entire case to a single infringement "theory" per claim, and just over two claims per patent (15 claims across 7 patents). Specifically, Check Point wants Finjan to choose only a single functionality out of a single product that meets each claim limitation, point to "specific lines of source code" for that functionality, and abandon any assertion that those same products, or any other products, infringe that claim in any other way. And Finjan can only do this twice per patent. Thus, what Check Point actually wants is to limit the number of ways Finjan can prove it infringes. This prejudices Finjan and violates its due process and property rights.

As the Federal Circuit held in *Katz* – and hundreds of cases citing it with approval since – limiting the number of claims in a patent case is only proper where the plaintiff has an opportunity to show good cause for why that number is insufficient. *Katz*, 639 F.3d at 1312 (finding error to preclude claims that present unique issues); *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184-SBA (MEJ), 2015 WL 307256, at *2 (N.D. Cal. Jan. 22, 2015) (holding the "discretion to reasonably limit the number of claims" is "subject to due process considerations"). Otherwise, the court risks violating due process and the plaintiff's property rights. *Katz*, 639 F.3d at 1311; *Avocent*, 2012 WL 4903270, at *2. However, under Check Point's proposal Finjan would be limited in its theories from the outset, violating its due process and property rights. *Id*.

Check Point's proposal should also be rejected because it attempts to limit the number of causes of action that Finjan can raise in the case. But a defendant cannot limit the number of facts that a plaintiff may use to prove it has been harmed. This is especially true because such facts are based on the defendant's own actions. For example, if this were a tortious interference case alleging five acts of intentional interference, the defendant would not be able to exclude four of its five intentional acts under the guise of streamlining. Similarly, Finjan alleges that Check Point infringes the patents with

multiple technologies, across multiple products, that infringe the patents in multiple ways. Finjan is entitled to present all of those ways to the jury. Check Point's proposal also prejudices Finjan because it narrows Check Point's damages exposure. Even though Check Point sells multiple products that infringe, Finjan might only be given the opportunity to recover damages based on sales of the one product Finjan was forced to select. *Avocent*, 2012 WL 4903270, at *1-2 (denying a motion to limit claims and holding "plaintiff should be permitted to seek damages as to all infringing product lines"). For example, it is not uncommon that different products would use different technologies that infringe the same patent. Therefore, under Check Point's proposal Finjan may not be able to capture the infringement of those different products. Thus, Check Point's proposal is prejudicial, unfair, and violates Finjan's due process and property rights. *Katz* at 1311, 1328 n.6 ("We assume without deciding that Katz has a separate property right in each claim of each asserted patent.").

### 5. Check Point's Proposal is Logistical Nightmare and Waste of Judicial Resources

Check Point's proposal is also likely to be a logistical nightmare, particularly regarding the scope of what constitutes a "theory." The exact contours of a "theory" are difficult to define and will likely require Court intervention to resolve. In fact, resolving each dispute regarding what is a single "theory" or two separate "theories" will require the Court to become intimately familiar with a particular technology, in order to differentiate between the scope of different theories. Further, Check Point's request that a theory be limited to precise source code would not add clarity, but would actually make the issue even more difficult to unravel, as a single functionality in a product is often implemented using thousands of lines of code spread across hundreds of files in numerous directories, requiring the Court to decipher how many theories the cited code requires. Thus, Check Point's proposal is likely to waste judicial resources and is completely unnecessary when a tried and true system for narrowing based on claims is available and has been approved by the Federal Circuit.

Furthermore, should Check Point argue that its proposal will not lead to additional disputes that must be resolved by the Court, it is either being disingenuous or naïve, as Defendants in patent cases always raise every defensive avenue available, procedurally or otherwise. Just as motion practice over the scope of the disclosure of infringement contentions has become *de rigueur*, Check Point's proposal

will lead to an additional motion that they will file, which must be resolved by the Court.

6. **Check Point Misrepresents Finjan's Proposals from Past Cases Regarding Prior Art, Which Were Supported by Current Law**

At the Case Management Conference in this case, counsel for Check Point also raised the fact that in previous cases Finjan successfully advocated for narrowing the number of prior art references by "grounds" or "combinations," rather than by the pure number of references the defendant could rely on. However, Check Point's argument is a red herring because prior art "grounds" or "combinations" are not the same as Check Point's request to limit Finjan's "theories." Instead, Finjan's previous requests made the common sense argument that limiting prior art to "references," without more, leaves open the possibility for abuse where a party uses a handful of references to create countless permutations of different obviousness combinations, each of which require a separate analysis for how those references could be combined. In fact, Finjan has never proposed for prior art the equivalent of what Check Point is proposing here, that a party be limited to any specific "theory." Instead, Finjan's proposals allowed the defendant to rely on any portion of the prior art reference that it wished.

Although Finjan does not seek such an order in this case limiting prior art to "grounds" or "combinations," numerous courts around the country, including this Court and others in this District, have entered similar orders restricting prior art by the number of combinations or grounds asserted, not by the number of references relied on. In fact, the Northern District of Illinois's local rules committee recently approved amended patent rules that require a defendant to narrow its prior art by "grounds" or combinations, not by the number of references. *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, No. 15 C 1067, 2018 WL 2765952, at *3 (N.D. Ill. June 9, 2018) (ordering limitations based on "grounds" and noting the court was in the process of making this restriction part of its amended local patent rules: "Each assertion of anticipation and each combination of references shall constitute separate grounds."); *see also Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2013 WL 5587559, at *4 (N.D. Cal. Oct. 10, 2013) (holding limitations that include both single obviating references and combinations of multiple references are "not limit[ing] enough" and ordering that "each reference listed as part of an obviating combination shall count towards the per patent and total limit"); *Altera Corp. v. PACT XPP Techs., AG*, No. 14-cv-02868-JD, 2015 WL 3830982, at *1-3 (N.D. Cal.

5

June 19, 2015) (ordering limits on prior art combinations: "a prior art combination of A+B+C counts as one combination, and subsets . . . count as a combination if they are separately alleged to render a claim obvious"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9460295, at *1-2 (N.D. Cal. Dec. 23, 2015) (striking invalidity theories for exceeding the limit on prior art combinations "obviousness combination A+B+C+D is not the same as the combination A+B"); *Finjan, Inc. v. Cisco Corp.*, No. 17-cv-00072-BLF, Dkt. No. 70 at 4-5 (N.D. Cal. Aug. 16, 2017) (accord); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 14-245 (JNE/JSM), 2015 WL 12781253, *2 (D. Minn. 2015) (ordering limits on "combinations of prior art references"); *Unified Messaging Solutions LLC v. Facebook, Inc.*, No. 6:11cv120, 2012 WL 11606516, at *1 (E.D. Tex. June 12, 2014) (limiting invalidity contentions to "no more than 4 distinct bases of invalidity for each asserted claim"). None of these cases proposed or suggested that this also supports limiting infringement to only a certain number of "theories."

Thus, Check Point's arguments regarding Finjan's proposals in past cases limiting prior art by combinations or "grounds" is misplaced and unsupported by law.

**7.     There Is No Merit to CheckPoint's Arguments Regarding Expert Reports**

Also at the Case Management Conference, counsel for Check Point claimed Finjan's expert reports in past cases were too lengthy and that Check Point might be unable to discern Finjan's infringement theories before trial. But this grievance is also contrary to the law. First, multiple courts have refused to enter orders limiting patent claims, noting the natural selection that occurs during the course of patent litigation and the risk of prejudice arising as a result of such narrowing. *See, e.g., Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980-JRG, 2017 WL 6559169, at *1-2 (E.D. Tex. Dec. 22, 2017) (noting the "natural narrowing of claims that occurs" after claim construction and during fact and expert discovery, and declining to limit the number of claims); *Katz*, 1324 at 1328 n.9 ("It is also conceivable that a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses."); *see also Regents of the Univ. of Minn. v. AT&T Mobility LLC*, No. 14-cv-1466

6

(JRT/TNL), 2016 WL 7670604, at *2-3 (D. Minn. Dec. 13, 2016) (noting that in view of the complexity of the technical subject matter it would be unfair to require the patentee to limit its asserted claims to 15).  Furthermore, Finjan's infringement experts are required to submit an expert report disclosing the entirety of their opinion.  *See* Fed. R. Civ. Proc. 26(a)(2)(B) (requiring "a complete statement of all opinions the witness will express and the basis and reasons for them").  If Finjan's experts do not disclose an opinion on a topic, they will not be able offer that opinion at trial.  Moreover, after Finjan's experts submit their expert reports, Check Point will then have the opportunity to depose Finjan's expert regarding the content of their opinion and clarify anything they perceive as ambiguous or superfluous.  Check Point has offered no reason for why this standard procedure set forth in the Federal Rules of Civil Procedure and this Court's local rules is insufficient to address its concerns, or that they should be modified to provide Check Point special treatment.  Thus, Check Point's arguments regarding expert reports is unsupported, premature, and unfounded.[1]

For all of the foregoing reasons, Finjan respectfully requests that the Court adopt Finjan's proposal regarding narrowing the case and deny Check Point's proposal.

Respectfully submitted,

DATED:  August 28, 2018

By: */s/ Austin Manes*
Paul Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Austin Manes (State Bar No. 284065)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
amanes@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

---

[1] Counsel for Check Point also raised Judge Alsup's "shootout" procedure in support of its proposal.  Notably, Judge Alsup's "shootout" procedure involves selecting <u>claims</u>, not "theories" of infringement.

7

## Appendix of Cases Supporting Finjan's Position

1. *In re Katz Interactive Call Processing Litigation*, 639 F.3d 1303, 1310-13 (Fed. Cir. 2011);
2. *Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897, 902-03 (Fed. Cir. 2011);
3. *Nuance Communications, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368 (Fed. Cir. 2016);
4. *ReRoof Am., Inc. v. United Stuctures of Am., Inc.*, Nos. 98-1378, 98-1430, 1999 WL 674517, at *4-6 (Fed. Cir. Aug. 30, 1999);
5. *Comcast Cable Commc'n., LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 3335742, at *1 & *7 (N.D. Cal. Aug. 4, 2017);
6. *Technology Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184-SBA (MEJ), 2014 WL 5499511, at *4 (N.D. Cal. Oct. 30, 2014);
7. *Acantha LLC v. Depuy Orthopaedics Inc.*, No. 15-C-1257, 2017 WL 5186376, at *4 (E.D. Wis. Nov. 8, 2017);
8. *Straight Path IP Group, Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 1365124, at *2 (N.D. Cal. Apr. 13, 2017);
9. *West View Research, LLC v. BMW of N. Am., LLC*, No. 16-cv-2590 JLS (AGS), 2017 WL 606511, at *1-*3 (S.D. Cal. Feb. 15, 2017);
10. *Allergan, Inc. v. Teva Pharms. USA*, 2017 WL 373462, at *1-*3 (E.D. Tex. Jan. 26, 2017);
11. *Integra LifeSciences Corp. v. HyperBranch Medical Tech., Inc.*, 223 F. Supp. 3d 202 (D. Del. 2016);
12. *Gentherm Canada, Ltd v. IGB Automotive, Ltd.*, No. 13-11536, 2016 WL 1170801, at *2-*3 (E.D. Mich. Mar. 25, 2016);
13. *Univ. of Va. Patent Found. v. General Elec. Co.*, No. 3:14cv51, 2015 WL 6958073, at *2-7 (W.D. Va. Nov. 10, 2015);
14. *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-cfv-00262-SI, 2015 WL 6659674, at *2-*4 (D. Or. Oct. 30, 2015);
15. *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184-SBA (MEJ), 2015 WL 307256, at *3-5 (N.D. Cal. Jan. 22, 2015);
16. *Joao Bock Transaction Sys., LLC v. Fidelity Nat'l. Information Servs., Inc.*, No. 13-cv-223-J-32JRK, 2014 WL 12535297, at *1 (M.D. Fla. Oct. 30, 2014);
17. *Telebuyer, LLC v. Amazon.com, Inc.*, No. 2:13-cv-1677-BJR, 2014 WL 5312275, at *2-3 (W.D. Wash. 2014);
18. *Select Comfort Corp. v. Gentherm, Inc.*, No. 13-cv-2314 (SRN/JJK), 2014 WL 4976586 (D. Minn. 2014);
19. *Certusview Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13cv346, 2014 WL 4930803, at *5-6 (E.D. Va. Oct. 1, 2014);
20. *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, Nos. 13-cv-13615, 13-cv-13957, 2014 WL 645246, at *2-3 (E.D. Mich. Feb. 19, 2014);

21. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 252045, at *1 (N.D. Cal. Jan. 21, 2014);

22. *Joao Control and Monitoring Sys., LLC v. Ford Motor Co.*, Nos. 13-cv-13615, 13-cv-13957, 2014 WL 106926, at *2-5 (E.D. Mich. Jan. 10, 2014);

23. *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2013 WL 6173761, at *1 (W.D. Wash. Nov. 25, 2013);

24. *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2013 WL 5587559, at *2-5 (N.D. Cal. Oct. 10, 2013);

25. *Unwired Planet LLC v. Google Inc.*, No. 12-cv-05601-WHO, 2013 WL 5592896, at *4-5 (D. Nev. Oct. 10, 2013);

26. *Adobe Sys. Inc. v. Wowza Media Sys. LLC*, No. 11-cv-02243-JST, 2013 WL 9541126, at *1 (N.D. Cal. May 6, 2013);

27. *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471 RSWL (RZx), 2013 WL 3322248, at *1-3 (C.D. Cal. Apr. 5, 2013);

28. *Classen Immunotherapies, Inc. v. Biogen Idec*, No. WDQ-04-2607, 2013 WL 680379, at*3-4 (D. Md. Feb. 22, 2013);

29. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282-86 (D. Del. 2013);

30. *Unified Messaging Sols. LLC v. Facebook, Inc.*, Nos. 6:11cv120, 6:11cv464, 2012 WL 11606516, at *1 (E.D. Tex. July 12, 2012);

31. *Round Rock Research, LLC v. Dell Inc.*, No. 4:11-cv-332, 2012 WL 8017390, at *2 (E.D. Tex. Mar. 26, 2012);

32. *Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-cv-2319 BEN (NLS), 2012 WL 579490, at *2-3 (S.D. Cal. Feb. 22, 2012);

33. *Havco Wood Prods., LLC v. Indus. Hardwood Prods., Inc.*, No. 10-cv-566-WME, 2011 WL 5513214, at *6 (W.D. Wis. Nov. 10, 2011), order amended, No. 10-cv-566-WME, 2012 WL 5199185 (W.D. Wis. Oct. 22, 2012);

34. *3D Sys., Inc. v. Envisiontec, Inc.*, No. 05–74891, 2011 WL 4691937, at *7 (E.D. Mich. Oct. 6, 2011);

35. *Oasis Research, LLC v. Adrive, LLC*, No. 4:10–CV–00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 11, 2011);

36. *Oracle America, Inc. v. Google Inc*., No. C 10–03561 WHA, 2011 WL 12209477, at *1 (N.D. Cal. May 3, 2011);

37. *LML Patent Corp. v. JPMorgan Chase & Co.*, No. 2:08–CV–448 (DF), 2010 WL 5140823, at *1-2 (E.D. Tex. Oct. 12, 2010);

38. *High Point Sarl v. Sprint Nextel Corp*., No. 09–2269–CM–DJW, 2010 WL 9497168, at *2-5 (D. Kan. Aug. 18, 2010);

39. *Nextec Applications v. Brookwood Companies, Inc.*, 703 F. Supp. 2d 390, 397-398 (S.D. N.Y. 2010);

40. *LG Display Co. v. AU Optronics Corp*., 686 F. Supp. 2d 429, 434 (D. Del. 2010);

41. *Automotive Techs. Intern., Inc. v. Delphi Corp.*, No. 08-CV-11048, 2009 WL 211039, at *2 (E.D. Mich. Jan. 28, 2009);

42. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, No. 04–1371–JJF, 2008 WL 5210843, at *1-2 (D. Del. Dec. 12, 2008);

43. *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C–05–00334 RMW, C–05–02298 RMW, C–06–00244 RMW, 2008 WL 4104116, at *5-*6 (N.D. Cal. Aug. 27, 2008);

44. *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07CV104, 2008 WL 2485426, *1 (E.D. Tex. June 13, 2008);

45. *NICE Sys., Inc. v. Witness Sys., Inc.*, 528 F. Supp. 2d 470, 490 (D. Del. 2007);

46. *Fenster Family Patent Holdings, Inc., Elscint Ltd.*, No. Civ.A.04–0038 JJF, 2005 WL 2304190, *6 (D. Del. Sept. 20, 2005);

47. *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, P.A.*, 326 F. Supp. 2d 1060, 1066 (C.D. Cal. 2003);

48. *Auto Wax Co. v. Mark V Prods., Inc.*, No. 3:99–CV–0982–M 2001 WL 292597, at *1 (N.D. Tex. Mar. 14, 2001);

49. *Driessen v. Sony Music Entm't*, No. 2:09–cv–0140–CW, 2013 WL 4501063, at *3-4 (D. Utah Aug. 22, 2013);

50. *Network Protection Sciences, LLC v. Fortinet, Inc.*, No. C 12–01106 WHA, 2013 WL 1949051, at *3 (N.D. Cal. May 9, 2013);

51. *Avocent Redmond Corp. v. Rose Electronics*, No. C06–1711RSL, 2012 WL 4903270, at *2 (W.D. Wash. May 29, 2012).