CLEMENT ROBERTS (State Bar No. 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

AMY K. VAN ZANT (SBN: 197426)
avanzant@orrick.com
FRANCES CHEEVER (State Bar No. 287585)
fcheever@orrick.com
EVAN BREWER (State Bar No. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:   +1 650 614 7400
Facsimile:   +1 650 614 7401

*Attorneys for Defendant*
CHECK POINT SOFTWARE
TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC. a Delaware Corporation,<br><br>               Plaintiff,<br><br>     v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., an Israeli Limited Company,<br><br>               Defendants. | Case No. 5:18-cv-02621-WHO<br><br>**DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, INC.'S BRIEF RE: CASE NARROWING AND INFRINGEMENT CONTENTIONS**<br><br>Judge:   Hon. William H. Orrick |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

## I. INTRODUCTION

If history is any guide, Plaintiff Finjan, Inc. ("Finjan") will litigate this case by inundating Defendant Check Point Software Technologies, Inc. ("Check Point") with dozens of broadly-stated infringement theories asserted in the alternative for each of dozens of claims and products. Through this approach, Finjan can avoid revealing the small number of infringement theories it *actually* intends to present at trial, while leaving itself nearly infinite flexibility to change positions as the case progresses. Each time Finjan has brought a case, the same script has played out, defendants move to compel or strike, and the court is forced to step in. It need not be this way.

This District's Patent Local Rules ("PLR") "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (citation and internal quotation marks omitted). Taken together with the 2013 Federal Circuit Model Order Limiting Excess Patent Claims and Prior Art ("2013 Model Order"), the PLR *should* allow this case to proceed in an orderly, merits-focused way. In particular, the Court should: (a) limit the number of claims and prior art reference at issue in the lawsuit according to the limits and schedule provided in the 2013 Model Order; and (b) require Finjan to strictly comply with the PLR by providing separate infringement contentions for *each* accused product, that identify the specific lines of code that Finjan contends meet *each* limitation of *each* asserted claim.

## II. ARGUMENT

The Court made clear during the Case Management Conference that it did not want to adopt a novel case management strategy—and instead asked the parties to submit proposals based on: (a) the 2013 Model Order; and (b) other court orders involving Finjan's contentions. The following proposal combines the 2013 Model Order, the Patent Local Rules, and prior orders issued by courts that have wrestled with Finjan's approach to infringement contentions.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

### A. Timeline and Claim Limits Under the 2013 Model Order

The 2013 Model Order[1] provides a two-phase process for limiting asserted claims and prior art references, keyed off: (1) a defendant's production of documents sufficient to show operation of the accused instrumentalities; and (2) claim construction.

First, the Model Order provides that, within 40 days of a defendant producing documents sufficient to show the operation of the accused products, the plaintiff must serve a Preliminary Election of Asserted Claims, asserting no more than 10 claims per patent, and no more than 32 total claims. 2013 Model Order, at 1. Not later than 14 days from service of that pleading, the defendant must serve a Preliminary Election of Asserted Prior Art, asserting no more than 12 prior art references against each patent, and no more than 40 total references. *Id*.

Check Point has already provided Finjan access to the source code for all of the accused products, and it has provided Finjan with a list of ***all*** of the products which might be at issue.[2] *See* Declaration of Clement Roberts ("Roberts Decl."), ¶¶ 2, 3. If the parties had been following the 2013 Model Order from the outset, Finjan's 40-day clock for providing a Preliminary Election of Asserted Claims would expire on September 4, 2018. But because Finjan has yet to identify the specific products it intends to accuse or to begin its source code review, Check Point proposes that the Court order Finjan to comply with the Model Order within 40 days ***of the order on this motion***. And, to make sure that Finjan has sufficient time, Check Point further proposes that the Court ***extend*** the time for Finjan's infringement contentions so that they are served ***with*** Finjan's Preliminary Election of Asserted Claims. Check Point further proposes that its Preliminary Election of Prior Art and its invalidity contentions be due 40 days thereafter. A table summarizing these proposed deadlines is attached hereto as Appendix A.

---

[1] Although the Federal Circuit withdrew the 2013 Model Order shortly after issuance, courts have nevertheless relied on the order for guidance in crafting effective limits in patent cases. *See, e.g.*, *Altera Corp. v. PACT XPP Techs., AG*, No. 14-CV-02868-JD, 2015 WL 3830982, at *2 (N.D. Cal. June 19, 2015). The 2013 Model Order is available at http://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf.

[2] Check Point maintains a price list on its website and, for this reason, Finjan could have—with the exercise or reasonable diligence—figured out which Check Point products it might want to accuse. Despite this, Finjan claimed it could not specifically identify the accused products, so Check Point produced the list attached to the Roberts Declaration as Exhibit 2.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-cv-02621-WHO

Under the 2013 Model Order, the second phase of claim/prior art selection occurs after the Court issues its claim construction order. 2013 Model Order, at 2. In line with the 2013 Model Order, we propose that Finjan's Final Election of Asserted Claims be due 28 days after the issuance of the Court's claim construction order, and that—in that selection—Finjan be required to identify no more than 5 asserted claims per patent from the 10 previously identified, and no more than 16 claims in total. *Id*. Also in line with the 2013 Model Order, Check Point proposes that its Final Election of Asserted Prior Art be due 14 days after Finjan's selection, and that Check Point may identify no more than 6 asserted prior art references per patent from among the 12 previously identified, and no more than 20 references in total. *Id*.

Adopting the 2013 Model Order will help advance the goal of making this case about the *best* claims and defenses and will (among other things) help ensure that Court is presented with the most pressing and important issues on summary judgment.

### B. Infringement and Invalidity Contentions Under the Patent Local Rules

Under PLR 3-1,[3] Finjan's infringement contentions must, among other things, (1) identify, separately for each asserted claim, each accused instrumentality, in as specific a manner as possible, PLR 3-1(b); (2) identify *specifically where* and *how* each limitation of each asserted claim is found within each accused instrumentality, PLR 3-1(c); (3) identify, for each claim which is alleged to have been indirectly infringed, any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement, PLR 3-1(d); and (4) disclose, for each limitation of each asserted claim, whether Finjan contends that the limitation is present under the doctrine of equivalents, and how.[4] PLR 3-1(e).

The purpose of these requirements is to "require parties to crystallize their theories of the case early in the litigation," *O2 Micro*, 467 F.3d at 1364 (citation and internal quotation marks omitted), so as to "further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases," *Genentech, Inc. v. Trustees of Univ.*

---

[3] PLR 3-3 contains corresponding requirements for Check Point's invalidity contentions.

[4] Although PLR 3-1 does not contain an express "and how" requirement in this element, courts in this district have routinely interpreted it to contain such an obligation. *See* cases cited below in Section (C)(4).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

*of Pa.*, Case No. C 10–2037 LHK(PSG), 2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted). "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366. District courts have wide discretion in enforcing the PLR. *Id.* at 1365-66; *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005).

### C.  The Court Should Compel Finjan to Strictly Comply with the Local Rules.

This is not the first time Finjan has brought suit in this District on these and related patents. In each case, Finjan's gambit is the same. Finjan serves contentions that cite vaguely to entire products, functions, marketing terms, and screenshots, without *specifically* saying which instrumentalities are accused or how they are alleged to infringe. *See, e.g.*, *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015) ("Finjan's infringement contentions are largely comprised of generic marketing literature and screenshots of the type routinely rejected by courts in this District"; "These unexplained references comprise the majority of Finjan's over 1,000 pages of claim charts,"; "Even more troublingly, the little explanation Finjan does provide is framed in high-level generalities that do not specifically relate to the claim elements identified in each Claim."); *see also* Transcript of Record at pp. 77-78, *Finjan, Inc. v. Cisco Systems, Inc.*, No. 5:17-cv-00072-BLF (SVK) ("*Finjan v. Cisco*") (N.D. Cal. Oct. 12, 2017), Dkt. No. 83 (ordering Finjan to amend its infringement contentions "across the board"); *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) (ordering Finjan to amend infringement contentions). Finjan hopes that the Court will conflate *volume* and *specificity* and lack the time and inclination needed to sift through the superabundance of the former to see that the latter is absent.

Check Point hopes to break the pattern by asking the Court to make clear, at the outset, that Finjan must *fully* comply with PLR 3-1 by serving infringement contentions that specifically identify where and how each limitation of each asserted claim is found within each accused instrumentality, including by: (1) providing pinpoint source code citations to the elements in each accused Check Point product; (2) avoiding open-ended citation to "exemplary" products; (3) setting forth any infringement theories based on the doctrine of equivalents with limitation-by-

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

limitation analysis, not boilerplate reservations; and (4) for any indirect infringement theories, identifying the alleged direct infringement, the alleged acts of inducement or contribution to that infringement, *and* the relationship between them. *See* PLR 3-1(c), (d), and (e).

### 1. The Court Should Require Finjan to Provide Source Code Citations.

PLR 3-1 requires Finjan to explain "specifically where and how each limitation of each asserted claim is found" within each accused product. "This burden cannot be met simply by parroting claim language or referencing screenshots and/or website content." *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920, at *6. Rather, where, as here, an accused product "includes computer software based upon source code made available to the patentee, patentees must provide 'pinpoint citations' to the code identifying the location of each limitation." *Genentech*, 2010 WL 11509141, at *2 (citation omitted); *see also* Civil Minute Order, at p. 1, *Finjan, Inc. v. FireEye, Inc.*, No. C 4:13-03133 SBA (JCS) ("*Finjan v. FireEye*"), (N.D. Cal. Oct. 16, 2017) Dkt. No. 134 ("Finjan shall provide pinpoint source code citations in its Infringement Contentions."); *Finjan, Inc. v. Sophos, Inc.*, 2015 WL 5012679, at *3 (ordering Finjan to provide pinpoint source code citations, including "the actual full directory paths, file names, function or procedure names and line numbers") (internal alterations omitted); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C 09-cv-05897-RS (HRL), 2011 WL 940263, at *7 (N.D. Cal. Feb. 18, 2011) ("[T]he authority is clear that a plaintiff should provide citations once a plaintiff has had a sufficient opportunity to review the source code[.]"). "The bottom line is that, after a plaintiff-patentee has had a reasonable opportunity to review the source code for the defendant's accused software product, the patentee's time for trolling the proverbial waters for a theory of infringement comes to an end, and the patentee must fish or cut bait with respect to its specific theory of infringement by providing PICs to the defendant that clearly identify and explain how the source code for the accused product infringes upon specific claims for the patent-in-suit." *Diagnostic Sys. Corp. v. Symantec Corp.*, No. SACV 06-1211 DOC (ANx), 2009 WL 1607717, at *5 (C.D. Cal. June 5, 2009).

Check Point wrote to Finjan and asked it to come review the source code on July 26, 2018, expressly because it wanted Finjan to produce source code-specific infringement

contentions. *See* Roberts Decl., ¶ 2. Check Point even provided Finjan a comprehensive list of all Check Point products that could potentially be at issue. *Id*., ¶ 3; Ex. 2. All Finjan must do is specify the accused products, and it may start reviewing the source code on a mutually agreed schedule. *Id*., Ex. 1. Yet Finjan has not selected the products it wants to review, much less begun to review the code. *Id*. ¶ 5. The bottom line is that Finjan has access to the code, and the Court should therefore require Finjan to comply with both the PLR and the authorities cited above by including pinpoint source code citations in its infringement contentions. *See Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010) ("Once source code has been provided to the plaintiffs, . . . courts have required plaintiffs to supplement their infringement charges with pinpoint citations."); *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005) (requiring source-code level supplementation within 30 days of code availability).[5]

Check Point would be prejudiced were it forced to enter claim construction without the benefit of Finjan's *specific* theories of infringement. *See, e.g., Dynetix Design Sols. Inc. v. Synopsys Inc.*, No. 11-cv-05973 PSG, 2012 WL 6019898, at *3 (N.D. Cal. Dec. 3, 2012). Although claim construction focuses on the intrinsic record, the theories at issue in the case must be crystallized before Check Point can know which terms must be construed. Indeed, absent specific infringement theories, Check Point will have no way to know **which aspects** of the asserted claims are really in dispute, and will enter claim construction without knowing which terms, phrases, and concepts actually **matter** to a merits adjudication. And given the Federal Circuit's cases holding that all claim construction disputes relevant to a merits determination must be resolved before trial, that could create an enormous unnecessary burden on the Court as well.

Finjan has previously justified its refusal to provide pinpoint source code citations on several grounds, all of which should be (and frequently have been) rejected.

First, Finjan has claimed that source code citations are never required, relying on *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9023166. But *Proofpoint* is at odds with the other district court

---

[5] If, despite having had access to Check Point's source code since July, Finjan asserts that it cannot review the code and provide pinpoint citations by the deadline for serving its infringement contentions, the Court should order Finjan to supplement its infringement contentions with pinpoint source code citations within a reasonable time (such as 30 days) thereafter.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

decisions in this district—which is why courts in this district (including both this Court the Magistrate Judge assigned to this case) have repeatedly ordered Finjan to provide source code level contentions. *See, e.g.*, *Finjan v. FireEye*, Dkt. No. 134 (decided by Magistrate Judge Spero); *Finjan v. Sophos*, 2015 WL 5012679.

Second, Finjan has argued that pinpoint source code citations may be required in interrogatory responses, but not infringement contentions. But this distinction is irrelevant, because as this and many other courts have noted, "[t]his district's patent local rules require disclosures early in a case and streamline discovery by replacing the series of interrogatories that parties would likely have propounded without them." *Finjan v. Sophos*, 2015 WL 5012679, at *1 (internal quotation marks and citation omitted). And at least one court has rejected this very argument before. *See Finjan v. FireEye*, Dkt. No. 129, at p. 4 (Finjan argument) *and* Dkt. No. 134 (ordering Finjan to provide pinpoint source code citations in infringement contentions). *See also* Roberts Decl., ¶ 4; Ex. 3 (mooting this argument by serving a source-code citation interrogatory).

Finally, Finjan has argued that pinpoint source code citations are evidence, and that it need not provide them because it is not obligated to prove its case in the infringement contentions. It is true that PLR 3-1 distinguishes "between the required identification of the precise element of any accused product alleged to practice a particular claim limitation, and every evidentiary item of proof showing that the accused element did in fact practice the limitation." *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1330–31 (Fed. Cir. 2014) (internal citation omitted). But pinpoint source code citations are necessary here to precisely ***identify*** each element alleged to practice each claim limitation and we are not asking for ***every*** evidentiary item of proof. Put differently, while source code citations may be used as evidence, they are ***also*** the only effective means of precisely identifying ***where*** in each accused product Finjan believes the limitations of the asserted patents are located. *See Genentech*, 2010 WL 11509141, at *2 (where software products are accused, patentees must provide "pinpoint citations to the code identifying the location of each limitation."). Indeed, Finjan itself previously admitted that several of the patents at issue are directed to specific elements that must be identified through source code. *See*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

Roberts Decl., ¶ 6.[6] And Check Point is *not* asking for Finjan to be required to identify all of the evidence on which it intends to rely to show infringement. Thus, for example, we fully expect that Finjan will rely on documents and testimony *as well as source code* when it comes time to prove its case. But, Check Point needs to know *what* is being accused, and because the accused products *are* just a collection of source code the only way to identify the accused instrumentalities with a meaningful level of specificity is by pointing to the code itself.

### 2. The Court Should Require Finjan to Avoid Catch-Alls.

The Court should require Finjan to set forth its infringement positions without open-ended disclaimers or qualifications. PLR 3-1(c) requires identification of "*specifically where and how* each limitation of each asserted claim is found within each Accused Instrumentality." (emphasis added). In previous cases, Finjan has frequently refused to take specific infringement positions, hedging its bets by providing generic contentions pointing to high-level "exemplary" structures and components of accused products, effectively arguing that somewhere within the identified structure or component, the infringing instrumentality may be found through the given example or in some other (unspecified) way. *See, e.g., Finjan v. FireEye*, Dkt. No. 134, at p. 1 ("Finjan shall delete references in the Infringement Contentions and Claim Charts to the infringement as 'exemplary and not limiting' or 'by way of example and not limiting'"); *Finjan v. Proofpoint*, 2015 WL 1517920, at *7 ("Finjan was required to expressly discuss the particular claim elements identified in each Claim and map those elements onto the features of the allegedly infringing products. . . . Neither the Court nor the Defendants should be required to guess which aspects of the accused products allegedly infringe each claim element.").

To address this issue the Court should prohibit the use of open-ended placeholder phrases like "such as," "for example," "exemplary and not limiting," or "by way of example and not limiting." Such open-ended language is improper and regularly stricken from infringement contentions in this District. *See, e.g., Word to Info Inc. v. Google Inc.*, No. 15-CV-03486-WHO,

---

[6] At a hearing in *Finjan v. Proofpoint*, on Proofpoint's motion to strike, Finjan argued that it could provide more detailed contentions after seeing Proofpoint's source code, explaining that "a lot of these patents really go to—they're directed at what specific rules, routines, source code, elements that may be occurring in the back end." Roberts Decl., Ex. 4, p. 4

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

2016 WL 3648605, at *5 n.4 (N.D. Cal. July 8, 2016) (warning plaintiff its improper "use of open-ended placeholder phrase like 'such as' and 'for example' [would] not enable it to rely on infringement theories not specifically articulated in its infringement contentions.").

**3.     The Court Should Require Finjan to Specifically Identify the Accused Products.**

The Court should require Finjan to provide separate and specific contentions for each product it is accusing. PLR 3-1(b). This identification must be "as specific as possible," and include the "name or model number" if known. *Id*. The PLR do not permit "broad categorical identifications" nor "representative examples." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) ("Rule 3-1(b) does not permit parties to identify accused products by using categorical or functional identifications, or limited, representative examples."). In past cases, Finjan has repeatedly used vague and catch-all language to identify accused products, and the courts have stricken it. *See, e.g., Finjan v. FireEye*, Dkt. No. 134, at p. 1 ("Finjan shall delete, in its identification of accused products 'at least (without limitation)' and 'including but not limited to'"); *Finjan v. Cisco*, Dkt. No. 83, at p. 77-8 (same); *Finjan v. Proofpoint, Inc.*, 2015 WL 1517920, at *6 (same). Finjan has access to Check Point's source code, and a comprehensive list of Check Point's products. We have offered to give Finjan access to any reasonable number of prior versions it would like to review. *See* Roberts Decl., Ex. 2. Thus Finjan can, and should, be required to specifically identify and accuse each product separately, without the use of broad categorical identifications and representative examples.

**4.     The Court Should Require Finjan to Avoid Boilerplate Reservations.**

If Finjan intends to rely on the doctrine of equivalents, the Court should require it to comply with PLR 3-1(e) by identifying each limitation of each asserted claim that is alleged to be present under the doctrine of equivalents in each accused instrumentality. Finjan has frequently sought to avoid this requirement through the use of boilerplate doctrine of equivalents contentions. *See Finjan v. Sophos*, 2015 WL 5012679, at *4 ("Finjan must do more than vaguely reference the alleged function, way, and result of the whole accused product. . . . Finjan must specify in what way [Sophos's] products infringe under the doctrine of equivalents, or drop the

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-cv-02621-WHO

contention altogether."); *Finjan v. Proofpoint*, 2015 WL 1517920, at *10 (striking all doctrine of equivalents in Finjan's infringement contentions). The Court should not permit this and should instead require Finjan to provide a limitation-by-limitation analysis that fairly reveals its theory. *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008) (requiring "limitation-by-limitation analysis, not a boilerplate reservation."); *see also Geovector*, 2017 WL 76950, at *7.

Similarly, PLR 3-1(d) requires specific indirect infringement theories be set forth in infringement contentions. Finjan should not be permitted to rely on "boilerplate language that simply claims an accused infringer provided instructions on, advertised, or promoted the use of an accused product, without describing which instructions, advertisements, or promotions led to what infringing behavior." *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *4 (N.D. Cal. June 19, 2017); *see also France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12–cv–04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013). Again, Check Point asks the Court to make it clear at the outset that Finjan must comply with the PLR by specifically tying any alleged direct infringement by third parties to specific conduct by Check Point that allegedly induced or contributed to that infringement. *See id*.

### III.   CONCLUSION

Finjan has full access to Check Point's source code and therefore should be able to fully comply with the requirements in PLR 3-1 by serving complete and detailed infringement contentions that include pinpoint source code citations.[7] Indeed, it is Check Point's hope that, by requiring that compliance at the outset, and by adopting the Federal Circuit's 2013 Model Order, we can focus this case on the merits and avoid the situation Finjan repeatedly has created in other cases, where the defendant is faced with a kaleidoscope of vaguely worded alternative and exemplary theories that frustrate any ability to develop a meaningful defense on the merits.

---

[7] To the extent the Court denies Check Point's request to order Finjan's compliance with the requirements set forth herein, Check Point asks that the denial be without prejudice to Check Point later bringing a motion to strike Finjan's infringement contentions, should the contentions prove insufficient and unmanageable.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-cv-02621-WHO

Dated: August 28, 2018

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____/s/ *Clement S. Roberts*_____
Clement S. Roberts
Attorneys for Defendants
CHECK POINT SOFTWARE
TECHNOLOGIES, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

CHECK POINT BRIEF RE: CASE NARROWING
AND INFRINGEMENT CONTENTIONS
5:18-CV-02621-WHO

**Appendix A:**
**Proposed Case Schedule**
Note: non-bolded dates previously set by Court order following Initial Case Management Conference on August 14, 2018. *See* Dkt. No. 24.

| Event | Applicable Rule or Order | Ordered or Agreed Date/Deadline |
|---|---|---|
| Finjan Preliminary Election of Asserted Claims selecting no more than 10 claims per patent, and no more than 32 total claims | 2013 Model Order, at 1 | **Within 40 days of the Court's Order on Case Narrowing and Infringement Contentions** |
| Finjan Disclosure of Infringement Contentions, including pinpoint source code citations | Pat. L.R. 3-1 | |
| Finjan Document Production Accompanying Disclosure | Pat. L.R. 3-2 | |
| Check Point Preliminary Election of Asserted Prior Art identifying no more than 12 prior art references against each patent, and no more than 40 total references | Model Order, at 1 | **Within 40 days of Finjan's Preliminary Election of Asserted Claims and Disclosure of Infringement Contentions** |
| Check Point Disclosure of Invalidity Contentions | Pat. L.R. 3-3 | |
| Check Point Document Production Accompanying Invalidity Contentions | Pat. L.R. 3-4 | |
| Exchange of Proposed Terms for Construction | Pat. L.R. 4-1 | December 14, 2018 |
| Exchange of Preliminary Claim Constructions and Extrinsic Evidence | Pat. L.R. 4-2 | January 11, 2019 |
| Damages Contentions | Pat. L.R. 3-8 | January 15, 2019 |
| Joint Claim Construction and Prehearing Statement | Pat. L.R. 4-3 | January 25, 2019 |
| Responsive Damages Contentions | Pat. L.R. 3-9 | February 14, 2019 |
| Completion of Claim Construction Discovery | Pat. L.R. 4-4 | February 25, 2019 |
| Claim Construction Briefs – opening brief | Pat. L.R. 4-5(a) | March 11, 2019 |
| Claim Construction Briefs – responsive brief | Pat. L.R. 4-5(b) | March 25, 2019 |

| Event | Applicable Rule or Order | Ordered or Agreed Date/Deadline |
|---|---|---|
| Claim Construction Briefs – reply brief | Pat. L.R. 4-5(c) | April 1, 2019 |
| Claim Construction Tutorial | Pat. L.R. 4-6 | April 19, 2019 at 10:00 a.m. |
| Claim Construction Hearing | Pat. L.R. 4-6 | April 26, 2019 at 10:00 a.m. |
| Finjan Final Election of Asserted Claims: no more than 5 asserted claims per patent from the 10 previously identified, and no more than 16 claims in total | 2013 Model Order, at 2 | **Within 28 days of the issuance of the Court's Claim Construction Order** |
| Check Point Final Election of Asserted Prior Art: no more than 6 asserted prior art references per patent from among the 12 previously identified, and no more than 20 references in total | 2013 Model Order, at 2 | **Within 14 days of Finjan's Final Election of Asserted Claims** |
| Close of fact discovery |  | December 13, 2019 |
| Opening expert reports |  | March 11, 2020 |
| Rebuttal expert reports |  | April 24, 2020 |
| Close of expert discovery |  | June 12, 2020 |
| Opening summary judgment briefs |  | July 17, 2020 |
| Responsive summary judgment briefs |  | August 14, 2020 |
| Reply summary judgment briefs |  | September 11, 2020 |
| Summary judgment hearings |  | Heard by September 30, 2020 |
| Final Pretrial Conference |  | December 14, 2020 at 2:00 p.m. |
| Jury Trial |  | January 25, 2021 at 8:30 a.m. |