CLEMENT ROBERTS (State Bar No. 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

AMY K. VAN ZANT (SBN: 197426)
avanzant@orrick.com
FRANCES CHEEVER (State Bar No. 287585)
fcheever@orrick.com
EVAN BREWER (State Bar No. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

*Attorneys for Defendant*
CHECK POINT SOFTWARE
TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC. a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., an Israeli Limited Company,<br><br>Defendants. | Case No. 5:18-cv-02621-WHO<br><br>**DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**<br><br>Judge:     Hon. William H. Orrick |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

**AMENDED ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Check Point Software Technologies, Inc. ("Check Point") answers Plaintiff Finjan, Inc.'s ("Finjan") Complaint for Patent Infringement as follows.  Check Point denies all allegations that it does not expressly admit.  The numbered paragraphs in this Answer correspond to the numbered paragraphs of the Complaint.  The headings used by Plaintiff in the Complaint are restated below for ease of reference, but no admissions are made thereby.

**THE PARTIES**

1.      Check Point admits that Finjan claims to be a Delaware corporation with its principal place of business at 2000 University Avenue, Suite 600, E. Palo Alto, California 94303. Check Point lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations of paragraph 1.

2.      Check Point admits the allegations of paragraph 2.

3.      Check Point admits the allegations of paragraph 3.

**JURISDICTION AND VENUE**

4.      Check Point admits that Complaint alleges an action arising under the Patent Act, 35 U.S.C. §101 *et. seq.*  Check Point admits that this Court has subject matter jurisdiction over actions arising under 28 U.S.C. §§ 1331 and 1338(a).  Check Point denies any remaining allegations of paragraph 4.

5.      Check Point admits that, for purpose of this case, venue is proper as to itself, but denies that venue is proper as to Check Point Software Technologies Ltd.  Check Point admits that its headquarters is located in this district at the address listed in paragraph 5 but denies that that location is the headquarters for Check Point Software Technologies Ltd.

6.      For purposes of this litigation, Check Point does not challenge this Court's exercise of personal jurisdiction as to itself, but denies that there is personal jurisdiction as to Check Point Software Technologies Ltd.  Check Point admits that it does business in this District, that its headquarters are located in the city of San Carlos, and that it lists job opportunities for its headquarters on its website, but denies that any of those things are accurate with respect to Check

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 1 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    Point Software Technologies Ltd.  Check Point denies that it has ever infringed or induced

2    infringement in this District.  Check Point denies any remaining allegations of paragraph 6.

3                              **INTRADISTRICT ASSIGNMENT**

4          7.      Check Point admits the allegations of paragraph 7.

5                              **FINJAN'S INNOVATIONS**

6          8.      Check Point admits that Finjan has been awarded and continues to prosecute

7    patents.  Check Point lacks knowledge or information sufficient to form a belief about the truth of

8    the remaining allegations of paragraph 8 and on that basis denies them.

9          9.      Check Point lacks knowledge or information sufficient to form a belief about the

10   truth of the allegations of paragraph 9 and on that basis denies them.

11                             **FINJAN'S ASSERTED PATENTS**

12         10.     Check Point admits that the face of U.S. Patent No. 6,154,844 ("the '844 Patent")

13   lists the issue date as November 28, 2000, the title as "SYSTEM AND METHOD FOR

14   ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE," and

15   the inventors as Shlomo Touboul and Nachshon Gal.  Check Point admits that a purported copy

16   of the '844 Patent is attached to the Complaint as Exhibit 2.  Check Point lacks knowledge or

17   information sufficient to form a belief about the truth of any remaining allegations of paragraph

18   10 and on that basis denies them.

19         11.     Check Point lacks knowledge or information sufficient to form a belief about the

20   truth of the allegations of paragraph 11 and on that basis denies them.

21         12.     Check Point admits that the '844 Patent involves computer network security.

22   Check Point denies that Finjan's characterization of the '844 Patent in this paragraph is otherwise

23   accurate.

24         13.     Check Point admits that the face of U.S. Patent No. 6,965,968 ("the '968 Patent")

25   lists the issue date as November 15, 2005, the title as "POLICY-BASED CACHING," and the

26   inventor as Shlomo Touboul.  Check Point admits that a purported copy of the '968 Patent is

27   attached to the Complaint as Exhibit 3.  Check Point lacks knowledge or information sufficient to

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 2 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

form a belief about the truth of any remaining allegations of paragraph 13 and on that basis denies them.

14.     Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 14 and on that basis denies them.

15.     Check Point admits that the '968 Patent involves the use of policies.  Check Point otherwise denies that Finjan's characterization of the '968 Patent in this paragraph is accurate.

16.     Check Point admits that the face of U.S. Patent No. 7,418,731 ("the '731 Patent") lists the issue date as August 26, 2008, the title as "METHOD AND SYSTEM FOR CACHING AT SECURE GATEWAYS," and the inventor as Shlomo Touboul.  Check Point admits that a purported copy of the '731 Patent is attached to the Complaint as Exhibit 4.  Check Point lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations of paragraph 16 and on that basis denies them.

17.     Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 17 and on that basis denies them.

18.     Check Point admits that the '731 Patent involves computer security.  Check Point otherwise denies that Finjan's characterization of the '731 Patent in this paragraph is accurate.

19.     Check Point admits that the face of U.S. Patent No. 7,647,633 ("the '633 Patent"), lists the issue date as January 12, 2010, the title as "MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS," and the inventors as Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  Check Point admits that a purported copy of the '633 Patent is attached to the Complaint as Exhibit 5.  Check Point lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations of paragraph 19 and on that basis denies them.

20.     Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 20 and on that basis denies them.

21.     Check Point admits that the '633 Patent involves computer networks.  Check Point otherwise denies that Finjan's characterization of the '633 Patent in this paragraph is accurate.

22.     Check Point admits that the face of U.S. Patent No. 8,079,086 ("the '086 Patent"),

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 3 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   lists the issue date as December 13, 2011, the title as "MALICIOUS MOBILE CODE RUNTIME

2   MONITORING SYSTEM AND METHODS," and the inventors as Yigal Mordechai Edery,

3   Nimrod Itzhak Vered, David R Kroll, and Shlomo Touboul.  Check Point admits that a purported

4   copy of the '086 Patent is attached to the Complaint as Exhibit 6.  Check Point lacks knowledge

5   or information sufficient to form a belief about the truth of any remaining allegations of

6   paragraph 22 and on that basis denies them.

7       23.     Check Point lacks knowledge or information sufficient to form a belief about the

8   truth of the allegations of paragraph 23 and on that basis denies them.

9       24.     Check Point admits that the '086 Patent involves computer networks.  Check Point

10  otherwise denies that Finjan's characterization of the '086 Patent in this paragraph is accurate.

11      25.     Check Point admits that the face of U.S. Patent No. 8,141,154 ("the '154 Patent"),

12  lists the issue date as March 20, 2012, the title as "SYSTEM AND METHOD FOR

13  INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE," and the inventors as

14  David Gruzman and Yuval Ben-Itzhak.  Check Point admits that a purported copy of the '154

15  Patent is attached to the Complaint as Exhibit 7.  Check Point lacks knowledge or information

16  sufficient to form a belief about the truth of any remaining allegations of paragraph 25 and on that

17  basis denies them.

18      26.     On information and belief, Check Point denies that all rights, title, and interest in

19  the '154 Patent have been assigned to Finjan.  Check Point lacks knowledge or information

20  sufficient to form a belief about the truth of the remaining allegations of paragraph 26.

21      27.     Check Point admits that the '154 Patent claims the use of first and second

22  functions. Check Point otherwise denies that Finjan's characterization of the '154 Patent in this

23  paragraph is accurate.

24      28.     Check Point admits that the face of U.S. Patent No. 8,677,494 ("the '494 Patent"),

25  lists the issue date as March 18, 2014, the title as "MALICIOUS MOBILE CODE RUNTIME

26  MONITORING SYSTEM AND METHODS," and the inventors as Yigal Mordechai Edery,

27  Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  Check Point admits that a purported

28  copy of the '494 Patent is attached to the Complaint as Exhibit 8.  Check Point lacks knowledge

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 4 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   or information sufficient to form a belief about the truth of any remaining allegations of

2   paragraph 28 and on that basis denies them.

3        29.    Check Point lacks knowledge or information sufficient to form a belief about the

4   truth of the allegations of paragraph 29 and on that basis denes them.

5        30.    Check Point admits that the '494 Patent involves security profiles.  Check Point

6   otherwise denies that Finjan's characterization of the '494 Patent in this paragraph is accurate.

7        31.    This paragraph contains no legal or factual allegations to which a response is

8   required.

9        **FINJAN'S NOTICE OF INFRINGEMENT TO DEFENDANT**

10        32.    Check Point admits that Exhibit 9 purports to be a copy of a January 28, 1997

11   press release issued by Finjan Software Ltd. and Check Point Software Technologies Ltd.  Check

12   Point admits that Exhibit 10 purports to be a copy of a Check Point Software Technologies Ltd.

13   "1999 Annual Report" and that Exhibit 10 lists "Finjan" as a "Framework Partner."  Check Point

14   lacks knowledge or information sufficient to form a belief about the truth of the remaining

15   allegations of paragraph 32 and on that basis denies them.

16        33.    Check Point admits that Finjan reached out to explore patent licensing

17   opportunities in 2014.  Check Point denies that Gil Schwed is the Chief Executive Officer of

18   Check Point Software Technologies, Inc.  Check Point lacks knowledge or information sufficient

19   to form a belief about the truth of the remaining allegations of paragraph 33 and on that basis

20   denies them.

21        34.    Check Point lacks knowledge or information sufficient to form a belief about the

22   truth of the allegations of paragraph 34 and on that basis denies them.

23        **CHECK POINT'S PRODUCTS AND TECHNOLOGIES**

24        35.    Check Point admits that it makes, uses, sells, offers for sale, and/or imports

25   products and services which are marketed with terms including: Next Generation Firewall,

26   Security Gateway, Blade, CloudGuard, Endpoint Protection, Advent Threat Prevention, Mobile

27   Security, ZoneAlarm, Threat Intelligence, Security Management, Policy Management,

28   ThreatCloud Managed Security Service, Smart-1 Appliances, SandBlast, and GAiA but denies

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

4162-1982-9784.2

that the foregoing are the names of specific products and services.  Check Point denies any remaining allegations of Paragraph 35.

### CHECK POINT'S NEXT GENERATION FIREWALL AND SECURITY GATEWAY PRODUCTS

36.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 36.

37.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 37.

38.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 38.

39.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 39.

### CHECK POINT'S CLOUDGUARD PRODUCTS

40.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 40.

41.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 41.

### ENDPOINT PROTECTION PRODUCTS

42.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 42.

43.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 43.

### CHECK POINT'S ADVANCED THREAT PREVENTION PRODUCTS AND SANDBLAST

44.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 44.

45.     Check Point admits that Finjan purports to paraphrase Check Point marketing documentation.  Check Point denies any remaining allegations of paragraph 45.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 6 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   46.   Check Point admits that Finjan purports to paraphrase Check Point marketing

2   documentation.  Check Point denies any remaining allegations of paragraph 46.

3   47.   Check Point admits that Finjan purports to paraphrase Check Point marketing

4   documentation.  Check Point denies any remaining allegations of paragraph 47.

5   **ZONEALARM PRODUCTS**

6   48.   Check Point admits that Finjan purports to paraphrase Check Point marketing

7   documentation.  Check Point denies any remaining allegations of paragraph 48.

8   **THREAT INTELLIGENCE PRODUCTS**

9   49.   Check Point admits that Finjan purports to paraphrase Check Point marketing

10   documentation.  Check Point denies any remaining allegations of paragraph 49.

11   50.   Check Point admits that Finjan purports to paraphrase Check Point marketing

12   documentation.  Check Point denies any remaining allegations of paragraph 50.

13   **CHECK POINT'S THREATCLOUD PRODUCTS**

14   51.   Check Point admits that Finjan purports to paraphrase Check Point marketing

15   documentation.  Check Point denies any remaining allegations of paragraph 51.

16   **CHECK POINT'S SECURITY MANAGEMENT PRODUCTS**

17   52.   Check Point admits that Finjan purports to paraphrase Check Point marketing

18   documentation.  Check Point denies any remaining allegations of paragraph 52.

19   53.   Check Point admits that Finjan purports to paraphrase Check Point marketing

20   documentation.  Check Point denies any remaining allegations of paragraph 53.

21   **DEFENDANT'S INFRINGEMENT OF FINJAN'S PATENTS**

22   54.   Check Point denies the allegations of paragraph 54.

23   55.   Check Point denies the allegations of paragraph 55.

24   **COUNT I**

25   56.   Check Point repeats its responses to the allegations of the preceding paragraphs as

26   if fully set forth herein.

27   57.   Check Point denies the allegations of paragraph 57.

28   58.   Check Point denies the allegations of paragraph 58.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 7 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    59.    Check Point denies the allegations of paragraph 59.

2    60.    Check Point denies the allegations of paragraph 60.

3    61.    Check Point denies the allegations of paragraph 61.

4    62.    Check Point denies the allegations of paragraph 62.

5    63.    Check Point denies the allegations of paragraph 63.

6    64.    Check Point denies the allegations of paragraph 64.

7    65.    Check Point denies the allegations of paragraph 65.

8    66.    Check Point denies the allegations of paragraph 66.

9                                **COUNT II**

10    67.    Check Point repeats its responses to the allegations of the preceding paragraphs as

11   if fully set forth herein.

12    68.    Check Point denies the allegations of paragraph 68.

13    69.    Check Point denies the allegations of paragraph 69.

14    70.    Check Point admits that it plays some role in maintaining the website at

15   https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

16   allegations of paragraph 70.

17                               **COUNT III**

18    71.    Check Point repeats its responses to the allegations of the preceding paragraphs as

19   if fully set forth herein.

20    72.    Check Point denies the allegations of paragraph 72.

21    73.    Check Point denies the allegations of paragraph 73.

22    74.    Check Point denies the allegations of paragraph 74.

23    75.    Check Point denies the allegations of paragraph 75.

24    76.    Check Point denies the allegations of paragraph 76.

25    77.    Check Point denies the allegations of paragraph 77.

26    78.    Check Point denies the allegations of paragraph 78.

27    79.    Check Point denies the allegations of paragraph 79.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 8 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    80.    Check Point admits that Finjan is actively engaged in licensing its patent portfolio.

2  Check Point denies the remaining allegations of paragraph 80.

3    81.    Check Point denies the allegations of paragraph 81.

4    82.    Check Point denies the allegations of paragraph 82.

5    83.    Check Point denies the allegations of paragraph 83.

6                                    **COUNT IV**

7    84.    Check Point repeats its responses to the allegations of the preceding paragraphs as

8  if fully set forth herein.

9    85.    Check Point denies the allegations of paragraph 85.

10   86.    Check Point denies the allegations of paragraph 86.

11   87.    Check Point admits that it plays some role in maintaining the website at

12  https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

13  allegations of paragraph 87.

14                                   **COUNT V**

15   88.    Check Point repeats its responses to the allegations of the preceding paragraphs as

16  if fully set forth herein.

17   89.    Check Point denies the allegations of paragraph 89.

18   90.    Check Point denies the allegations of paragraph 90.

19   91.    Check Point denies the allegations of paragraph 91.

20   92.    Check Point denies the allegations of paragraph 92.

21   93.    Check Point denies the allegations of paragraph 93.

22   94.    Check Point denies the allegations of paragraph 94.

23   95.    Check Point denies the allegations of paragraph 95.

24   96.    Check Point denies the allegations of paragraph 96.

25   97.    Check Point admits that Finjan is actively engaged in licensing its patent portfolio.

26  Check Point denies the remaining allegations of paragraph 97.

27   98.    Check Point denies the allegations of paragraph 98.

28   99.    Check Point denies the allegations of paragraph 99.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 9 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    100.    Check Point denies the allegations of paragraph 100.

2                              **COUNT VI**

3    101.    Check Point repeats its responses to the allegations of the preceding paragraphs as

4  if fully set forth herein.

5    102.    Check Point denies the allegations of paragraph 102.

6    103.    Check Point denies the allegations of paragraph 103.

7    104.    Check Point admits that it plays some role in maintaining the website at

8  https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

9  allegations of paragraph 104.

10                             **COUNT VII**

11    105.    Check Point repeats its responses to the allegations of the preceding paragraphs as

12  if fully set forth herein.

13    106.    Check Point denies the allegations of paragraph 106.

14    107.    Check Point denies the allegations of paragraph 107.

15    108.    Check Point denies the allegations of paragraph 108.

16    109.    Check Point denies the allegations of paragraph 109.

17    110.    Check Point denies the allegations of paragraph 110.

18    111.    Check Point admits that Finjan is actively engaged in licensing its patent portfolio.

19  Check Point denies the remaining allegations of paragraph 111.

20    112.    Check Point denies the allegations of paragraph 112.

21    113.    Check Point denies the allegations of paragraph 113.

22    114.    Check Point denies the allegations of paragraph 114.

23                             **COUNT VIII**

24    115.    Check Point repeats its responses to the allegations of the preceding paragraphs as

25  if fully set forth herein.

26    116.    Check Point denies the allegations of paragraph 116.

27    117.    Check Point denies the allegations of paragraph 117.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 10 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    118.    Check Point admits that it plays some role in maintaining the website at

2    https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

3    allegations of paragraph 118.

4    **COUNT IX**

5    119.    Check Point repeats its responses to the allegations of the preceding paragraphs as

6    if fully set forth herein.

7    120.    Check Point denies the allegations of paragraph 120.

8    121.    Check Point denies the allegations of paragraph 121.

9    122.    Check Point denies the allegations of paragraph 122.

10   123.    Check Point denies the allegations of paragraph 123.

11   124.    Check Point denies the allegations of paragraph 124.

12   125.    Check Point denies the allegations of paragraph 125.

13   126.    Check Point denies the allegations of paragraph 126.

14   127.    Check Point denies the allegations of paragraph 127.

15   128.    Check Point denies the allegations of paragraph 128.

16   **COUNT X**

17   129.    Check Point repeats its responses to the allegations of the preceding paragraphs as

18   if fully set forth herein.

19   130.    Check Point denies the allegations of paragraph 130.

20   131.    Check Point denies the allegations of paragraph 131.

21   132.    Check Point admits that it plays some role in maintaining the website at

22   https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

23   allegations of paragraph 132.

24   **COUNT XI**

25   133.    Check Point repeats its responses to the allegations of the preceding paragraphs as

26   if fully set forth herein.

27   134.    Check Point denies the allegations of paragraph 134.

28   135.    Check Point denies the allegations of paragraph 135.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 11 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    136.    Check Point denies the allegations of paragraph 136.

2    137.    Check Point denies the allegations of paragraph 137.

3    138.    Check Point denies the allegations of paragraph 138.

4    139.    Check Point denies the allegations of paragraph 139.

5    140.    Check Point denies the allegations of paragraph 140.

6    141.    Check Point admits that Finjan is actively engaged in licensing its patent portfolio.

7    Check Point denies the remaining allegations of paragraph 141.

8    142.    Check Point denies the allegations of paragraph 142.

9    143.    Check Point denies the allegations of paragraph 143.

10    144.    Check Point denies the allegations of paragraph 144.

11                                  <u>**COUNT XII**</u>

12    145.    Check Point repeats its responses to the allegations of the preceding paragraphs as

13    if fully set forth herein.

14    146.    Check Point denies the allegations of paragraph 146.

15    147.    Check Point denies the allegations of paragraph 147.

16    148.    Check Point denies the allegations of paragraph 148.

17    149.    Check Point denies the allegations of paragraph 149.

18    150.    Check Point denies the allegations of paragraph 150.

19    151.    Check Point denies the allegations of paragraph 151.

20    152.    Check Point denies the allegations of paragraph 152.

21    153.    Check Point denies the allegations of paragraph 153.

22    154.    Check Point denies the allegations of paragraph 154.

23                                  <u>**COUNT XIII**</u>

24    155.    Check Point repeats its responses to the allegations of the preceding paragraphs as

25    if fully set forth herein.

26    156.    Check Point denies the allegations of paragraph 156.

27    157.    Check Point denies the allegations of paragraph 157.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 12 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

158.    Check Point admits that it plays some role in maintaining the website at

https://supportcenter.checkpoint.com/supportcenter/portal.  Check Point denies the remaining

allegations of paragraph 158.

### PRAYER FOR RELIEF

Check Point denies that Finjan is entitled to any judgment or relief.

### DEMAND FOR JURY TRIAL

Check Point admits that Finjan demands a jury trial on all issues so triable.

### AFFIRMATIVE DEFENSES

Check Point alleges the following affirmative defenses.  Check Point reserves all rights to

allege additional affirmative defenses that become known through the course of discovery.

### First Defense: Failure to State a Claim

1.    The Complaint fails to state a claim upon which relief can be granted.

### Second Defense: Lack of Standing

2.    Finjan does not have full ownership of the '154 Patent.  An inventor is presumed

to be the owner of a patent application, and any patent that may issue therefrom, unless there is an

assignment.  The '154 application does not contain a valid written assignment of inventor David

Gruzman.  After a reasonable opportunity for investigation and discovery, evidence will likely

show that no valid written assignment exists.  Finjan, therefore, lacks standing to maintain its

claims of infringement of the '154 Patent.

### Third Defense: Invalidity

3.    One or more of the claims of the Asserted Patents are invalid for failure to satisfy

the conditions of patentability set forth in Title 35 of the U.S. Code, including, without limitation,

35 U.S.C. §§ 101, 102, 103, 112, and/or 116.  In particular, each of the patents is at least

anticipated or rendered obvious by the prior art that other defendants (such as Zscaler) have

asserted in their invalidity contentions.

### Fourth Defense: Prosecution History Estoppel

4.    Plaintiff's claims of infringement are barred in whole or in part by the doctrine of

prosecution history estoppel.  Finjan's conduct during prosecution of the Asserted Patents

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 13 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   shortened the term of the patents and/or argued bases for allowance that now estop Finjan from

2   arguing that the alleged inventions recited in the claims of the Asserted Patents cover Check

3   Point's accused products.

4           5.      For example, the patentee distinguished the '844 Patent from prior art on the

5   ground that the claim invention generates or links the Downloadable security profile to a

6   Downloadable "before the web server makes the Downloadable security profile available to web

7   clients."  During prosecution of the '968 Patent, the patentee maintained that although the prior

8   art did "restrict vending of content to a client according to predefined user policies for

9   acceptability," it did not "teach a policy index to cache contents indicating allowable cache

10  contents for each of a plurality of policies" as required by the patent claims.  The patentee

11  distinguished the claims of the '731 Patent from the prior art on the ground that the claims

12  invented inserting "special code 'before and after each problematic instruction."  During

13  prosecution of the '633 Patent, the patentee stated that, rather than describing the "packaging of

14  protection code," the prior art described " a situation whereby a security monitor is already

15  resident on a client computer, . . . without concerning itself as to how the security the monitor was

16  installed."  In another example, the patentee distinguished the '086 patent from the prior art on

17  the ground that an "alteration" or "instrumentation" to "disable suspicious operations was not the

18  same as the claimed appended "list of suspicious operations in the form of a security profile to a

19  Downloadable, for a receiver thereof to decide how to respond thereto."  In another example, the

20  patentee distinguished the '154 Patent from prior art on the ground that "the claimed transmitter

21  transmits the input in a call to a first function."  With respect to the '494 Patent, the patentee

22  agreed to a terminal disclaimed over the '086 Patent, the '633 Patent, the '731 Patent, U.S. Patent

23  No. 6,480,962, U.S. Patent No. 6,167,520, U.S. Patent No. 6,804,780, U.S. Patent No. 6,092,194,

24  and U.S. Patent 7,613,926.  The patentee also submitted a declaration pursuant to 37 C.F.R. §131

25  in which the inventor declared that the alleged invention of the '494 Patent was embodied in

26  Finjan's SurfinGate product.

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 14 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

**Fifth Defense: Equitable Estoppel**

6.      Plaintiff's claims of infringement are barred in whole or in part by the doctrine of equitable estoppel in that Plaintiff's conduct lead Check Point to reasonably infer that Plaintiff did not intend to enforce its patents.

7.      The '844 Patent issued almost eighteen years ago, on November 28, 2000.  The '968 Patent issued on November 15, 2005, the '732 Patent issued on August 26, 2008, the '086 Patent issued on December 13, 2011, the '633 Patent issued on January 12, 2010, the '154 issued on March 20, 2012, and the '494 Patent issued on March 18, 2014.

8.      In its Complaint, Finjan alleges that it partnered with Check Point as early as 1997 "in providing solutions for Java Security" and that it reached out Check Point as early as 2014 to discuss patent licensing.

9.      After a reasonable opportunity for investigation and discovery, evidence will likely show that Finjan was aware of Check Point's activities between 1997 and 2014, but did not apprise Check Point of its intent to file this suit and that Check Point reasonably inferred that Finjan did not intend to file this suit and detrimentally relied on Finjan's misleading conduct including by continuing to sell the accused technology without modification.

10.     Check Point has worked continuously since its founding in 1993 to develop innovative security solutions, investing heavily in its products and business.  Check Point will be materially prejudiced if Finjan is permitted to proceed with its claims.  Among other things, had Finjan brought its claims in a timely manner, Check Point could have modified its products in ways that would have avoided any possible claim of infringement.

**Sixth Defense: Prosecution Laches**

11.     Plaintiff's claims of infringement are barred in whole or in part by the doctrine of prosecution laches.

12.     For example, Finjan filed its first provisional application that allegedly discloses the subject matter of the '494 Patent on November 8, 1996.  But U.S. Patent Application No. 13/290,708, which would issue as the '494 Patent, was not filed until November 7, 2011, and the '494 Patent did not issue until March 18, 2014.  The 13/290,708 application claims the benefit of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

two partially-overlapping continuation chains, each of which contains five successive continuations and continuations-in-part, each spanning 14 years, 364 days between the earliest provisional application and the most-recent application filing.  Finjan's repetitious continuation strategy and undue delay caused the '494 Patent to issue more than 16 years after the alleged first filing of all of the claimed subject matter.  During the prosecution of the '494 Patent, on October 23, 2012, Dawn-Marie Bey, Finjan's patent attorney at the time, filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."

13.     Similarly, the '154 Patent was filed on June 14, 2010, more than four years after the earliest claimed non-provisional application in the chain of priority was filed on December 12, 2005.  The patent did not issue until July 10, 2012, more than six years after the earliest priority application.  Approximately one and a half years after the '154 Patent issued, on October 16, 2013, Ms. Bey filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior- filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."  In this petition, Ms. Bey sought to claim priority to U.S. Patent No. 7,757,289, which was filed on December 12, 2005.  In this petition, Ms. Bey represented that "the entire delay between the date the priority claim was due and the date that this petition with priority claim added to the specification is filed was unintentional."

14.     The '086 Patent was filed on May 26, 2009, more than eleven years after the earliest claimed non-provisional application in the chain of priority, was on filed January 29, 1997.  The patent did not issue until December 13, 2011, almost fifteen years after the earliest priority application.  On September 1, 2016, Finjan filed a "Petition To Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. §§ 119 and 120 for the Benefit of a Prior-Filed Applications Pursuant to 37 C.F.R. § 1.78," claiming priority to an to U.S. application Serial No. 08/790,097, filed January 29, 1997.  The Petition was accepted September 21, 2016.

15.     The '633 Patent was filed on June 22, 2005, more than five years after the earliest claimed non-provisional application in the chain of priority was filed on March 30, 2000.  The patent did not issue until January 12, 2010, approximately ten years after the earliest priority

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 16 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

application.  In October 2013, in an ex parte reexamination against the '633 patent, the PTO

rejected certain claims as obvious over a combination of Ji and the Liu patent, which had been

filed on May 22, 1998.  In February 2014, Ms. Bey filed a "Petition to Accept Unintentionally

Delayed Priority Claim Under 37 C.F.R. § 1.78" in an attempt to invoke priority dates of two

other Finjan patents potentially antedating the relevant references.  (Notwithstanding its

acceptance of the delayed claim of priority, the PTO issued a final rejection finding that the

claims under examination were not adequately supported by the two other Finjan patents.  Thus,

the late claim of priority was, in fact, unsupported, and priority could not have ever been properly

claimed.)

16.     The '731 Patent was filed on May 3, 2004, more than six years after the earliest

claimed non-provisional application in the chain of priority was filed on November 6, 1997.  The

patent did not issue until August 26, 2008, approximately nine years after the earliest priority

application.

17.     The '633 Patent and '494 Patent are subject to terminal disclaimers for

obviousness-type double patenting over other patents in the family that were filed years before.

The PTO required these terminal disclaimers because the claims in the later-filed patents were

substantially similar and not patentably distinct from previously allowed claims.

18.     By claiming priority to early-filed applications, Finjan limited the universe of prior

art considered by the examiner during the prosecution of its patents.

19.     Plaintiff's unreasonable delay in prosecuting the claims of the Asserted Patents

had an adverse effect on Check Point because, during Finjan's long prosecution periods, it failed

to actively claim the subject matter of its patents.  Check Point could not, therefore, determine

what was patented and what was not.  In the interim, Check Point invested considerable resources

on the products and services that Finjan accuses of infringing the '494, '154, '086, '633, and '731

Patents.

### Seventh Defense: Unavailability of Injunctive Relief

20.     Plaintiff is not entitled to injunctive relief because any injury to Finjan is not

immediate or irreparable and could be adequately remedied by money damages.  After a

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 17 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1  reasonable opportunity for investigation and discovery, evidence will likely show that Finjan does

2  not practice any claims of the Asserted Patents and does not compete with Check Point.  For the

3  same reasons, the harm to Finjan would be outweighed by the harm to Check Point and the public

4  interest would not be served by an injunction.

### Eighth Defense: Limitation on Damages and Costs

6      21.    Plaintiff's claims for damages and costs are limited, in whole or in part, by one or

7  more of 35 U.S.C. §§ 286, 287, and 288.  Among other things, Finjan's Complaint alleges that it

8  "built and sold software, including application program interfaces (APIs) and appliances for

9  network security, using these patented technologies."  After a reasonable opportunity for

10  investigation and discovery, evidence will likely show that Finjan did not mark any of these

11  referenced products with the asserted patent numbers.  Finjan has also sued on the Asserted

12  Patents several times, and has resolved many of its claims by licensing the Asserted Patents to the

13  accused infringers, including, for example, FireEye, Inc. Blue Coat Systems, Inc., Websense, Inc.,

14  and F5 Networks, Inc.  Finjan has not, however, made reasonable efforts to ensure that its

15  licensees comply with the marking requirements of § 287.

### Ninth Defense: Inequitable Conduct re '154 Patent

17      22.    On June 14, 2010, Finjan filed the non-provisional patent application that matured

18  into the '154 Patent.  That non-provisional patent application did not make any claim of priority

19  in its specification.

20      23.    On March 20, 2012, the '154 Patent issued without any claim of priority listed on

21  the face of the patent nor any claim of priority found in the specification.  Approximately one and

22  a half years later, on October 16, 2013, Dawn-Marie Bey, Finjan's patent attorney at the time,

23  filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For

24  The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."  In this petition,

25  Ms. Bey sought to claim priority to U.S. Patent No. 7,757,289, which was filed on December 12,

26  2005.  Ms. Bey represented that "the entire delay between the date the priority claim was due and

27  the date that this petition with priority claim added to the specification is filed was unintentional."

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 18 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

4162-1982-9784.2

24.     After a reasonable opportunity for investigation and discovery, evidence will likely show that Finjan's representative Ms. Bey misrepresented a material fact to the PTO and also violated her duty of candor to the PTO when she represented that the delayed claim of priority in the '154 Patent was "unintentional."  Ms. Bey's petition to the PTO to accept a significantly delayed claim of priority on October 16, 2013 conspicuously coincided with a new campaign by Finjan to assert the '154 Patent.   Specifically, the petition was filed just a couple months after Finjan filed new litigation asserting the '154 Patent against Websense, Inc. on September 23, 2013 (Case No. 5:13-cv-04398, N.D. Cal.) and FireEye, Inc. on July 8, 2013 (Case No. 4:13-cv-03133-SBA, N.D. Cal.), and shortly before Finjan instigated other litigation asserting the '154 Patent against Proofpoint, Inc. on December 16, 2013 (Case No. 4:13-cv-05808-HSG, N.D. Cal.) and Palo Alto Networks, Inc. on November 4, 2014 (Case No. 4:14-cv-04908-PJH, N.D. Cal.).

25.     Claims entitled to an earlier priority date also expire earlier, so Finjan is incentivized to properly claim priority only to the extent it believes is necessary to overcome otherwise invalidating prior art.  After a reasonable opportunity for investigation and discovery, evidence will likely show that Finjan and Ms. Bey delayed claiming priority in order to attempt to maximize the value of the '154 Patent during pre-suit licensing negotiations and only attempted to correct the claim of priority once it became clear that the '154 Patent would be subject to serious invalidity attacks in litigation.

26.     When viewed in the context of Finjan's overarching pattern of repeated misrepresentations to the PTO regarding purportedly "unintentionally" delayed claims of priority, Ms. Bey's statement constitutes affirmative egregious misconduct that is per se material.

27.     Finjan has an unusually abundant history of petitioning for allegedly "unintentionally" delayed claims of priority, particularly after one of Finjan's patents is under examination and has been rejected over prior art that predates the filing of the patent but post-dates the belatedly claimed priority document.  In other words, on multiple occasions it appears that Finjan has waited to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date, and only when it becomes clear that the patent would

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   not be granted or validated does Finjan seek to "correct" its "unintentionally" delayed priority

2   claim in order to try to moot the asserted prior art.

3        28.     For example, Finjan also employed its strategy of submitting false declarations in

4   support of petitions for allegedly "unintentionally" delayed claims of priority with respect to the

5   '633 Patent and U.S. Patent No. 7,058,822, through which the '494 claims priority.  Check Point

6   incorporates by reference the allegations set forth in its Sixth and Tenth Defenses.  This

7   overarching pattern of repeated misrepresentations to the PTO regarding purportedly

8   "unintentionally" delayed claims of priority constitutes affirmative egregious misconduct and is

9   per se material.

10                **Tenth Defense: Inequitable Conduct re '494 Patent**

11       29.     The '494 Patent is unenforceable for inequitable conduct occurring during its

12   prosecution, including, among other misconduct, false statements made to the PTO regarding the

13   conception and inventorship of the '494 Patent.

14       30.     On November 7, 2011, patent attorney Dawn-Marie Bey filed a patent application

15   on behalf of Finjan that would ultimately mature into the '494 Patent.  The original application

16   for the '494 Patent contained in its specification a long chain of claimed priority, with the earliest

17   claim to priority of a non-provisional application to U.S. Patent No. 6,092,194 filed on November

18   6, 1997.

19       31.     Together with the filing of the application that issued as the '494 Patent, a

20   Declaration was submitted that stated "I hereby declare that . . . I believe the inventor(s) named

21   below to be the original and first inventor(s) of the subject matter which is claimed and for which

22   a patent is sought on the Invention entitled: MALICIOUS MOBILE CODE RUNTIME

23   MONITORING SYSTEM AND METHODS" filed on May 17, 2001, with application number

24   09/881,229.  That application eventually issued as U.S. Patent No. 7,058,822, and contains a

25   specification that is substantially identical to that of the '494 Patent.  The declaration was signed

26   by all four named inventors: Yigal Mordechai Edery; Nimrod Itzhak Vered; David R. Kroll; and

27   Shlomo Touboul.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2                                      - 20 -                CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

32.     On July 23, 2012, the Examiner from the PTO issued a non-final rejection finding all of the claims as anticipated by U.S. Patent No. 5,983,348 ("Ji").  The Ji reference was filed on September 10, 1997; therefore, Ji was prior art since the application's claim of priority only stretched back to November 6, 1997.

33.     On October 23, 2012, Ms. Bey, on behalf of Finjan, filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."  This petition sought to extend the chain of priority to include references to provisional U.S. application no. 60/030,639, filed on November 8, 1996, and U.S. Patent No. 6,167,520, filed on January 29, 1997.  Shlomo Touboul is the only inventor identified for the '639 application.

34.     In this petition, Ms. Bey represented that "the entire delay between the date the claim was due under 37 CFR § 1.78(a)(2)(ii) and the date the claim was filed was unintentional."  A representation that the entire delay in claiming priority was unintentional is required under 37 C.F.R. § 1.78(a).

35.     After a reasonable opportunity for investigation and discovery, evidence will likely show that, Ms. Bey's representation that the delayed priority claim was "unintentional" was false and intended to deceive the PTO.  Ms. Bey has an unusually abundant history of filing petitions to accept "unintentionally" delayed claims of priority, as set forth in Check Point's Sixth and Ninth Defenses and incorporated here by reference.

36.     On November 27, 2012, the Petition was denied for failure to comply with the formality of including the reference required to claim priority.

37.     On January 7, 2013, the PTO issued a Final Office Action rejecting all pending claims over U.S. Patent No. 5,983,348 to Ji.

38.     In response, on May 5, 2013, Finjan submitted a declaration from one of the named inventors, Shlomo Touboul ("Touboul Declaration").  Under 37 C.F.R. 1.56, inventors owe a duty of candor to the PTO.  Mr. Touboul declared under penalty of perjury (emphases added):

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 21 -

4162-1982-9784.2

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

The declaration made herein is to establish that I had the ideas described in the patent application, and first developed a working system that is described in the patent in the patent application and in **claims 1, 3, 4-6, 9, 10, 12-15, and 18 pending as of the signing of this declaration (hereinafter sole invention) prior to September 10, 1997**, which is the filing date of U.S. Patent No. 5,983,348 to Ji ("the '348 patent"). I hereby declare that my sole invention was in my mind and developed by at least November 18, 1996. **The remaining pending dependent claims were co-invented by or with one or more of the listed inventors.**

39.     The then-pending claims 10, 14, and 15 were among those identified by Mr. Touboul as his "sole invention."  The then pending claims 10, 14, and 15 were identical to claims 10, 14, and 15 of the '494 Patent.

40.     Because of the Touboul Declaration, the Examiner allowed all of the then-pending claims stating "[t]he Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji, U.S. 5,983,348 reference."

41.     Mr. Touboul made false statements in the Touboul Declaration as to the conception date of the inventions claimed in the '494 Patent and as to his sole inventorship of those claims.  Those statements were material because they were the basis to swear behind prior art that had been used as a basis for rejection of the claims. Those statements were false because those claims were jointly invented with others, and the conception therefore could not have been at the date to which Mr. Touboul swore.

42.     Finjan's discovery responses in other cases demonstrate that statements made to the PTO in the Touboul Declaration were false.  For example, in *Finjan Inv. v. Symantec Corp.*, Case No. 4:14-cv-02998-HSG, Symantec served Interrogatory No. 1 asking Finjan, among other things, to "[s]tate the date and location of the first conception and reduction to practice, whether actual or constructive, of each asserted claim of the Asserted Patents… ."  *See* Plaintiff Finjan, Inc.'s Objections and Responses to Defendant Symantec Corp.'s First Set of Interrogatories (Nos. 1-11), filed in IPR2016-00151, as Ex. 1006.  Finjan's original answer to Symantec's interrogatory states: "The date of conception for the asserted claims of U.S. Patent No. 8,667,494 ("the '494 Patent") is November 9, 1996.  The date of reduction to practice of the asserted claims of the '494 Patent is November 8, 1996.  Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 22 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

of the '494 Patent." *Id.*, at 9.  At the time of that response, Finjan's "asserted claims" against Symantec included claims 1-6 and 10-15 of the '494 Patent.  Thereafter, on June 26, 2017, Finjan narrowed its asserted claims from the '494 Patent to only claims 10, 14, and 15.  *See Finjan Inc. v. Symantec Corp.*, Case No. 4:14-cv-02998-HSG, Dkt. No. 242 at 7:6-7.  Claim 10 is an independent claim and claims 14 and 15 depend from claim 10. These claims are claims that Mr. Touboul declared to the PTO in the Touboul Declaration that he invented alone and conceived of at least by November 1996.  Then, on July 26, 2017, Finjan served a fourth supplemental response to Symantec's Interrogatory No. 1.  *See* Plaintiff Finjan, Inc.'s Supplemental Responses to Defendant Symantec Corp.'s Interrogatories (Nos. 1 and 12), attached as Exhibit I to the Declaration of Kate E. Cassidy In Support of Symantec's Motion to Amend its Answer to Add an Inequitable Conduct Defense ("Cassidy Decl."), filed in *Finjan, Inc. v. Symantec Corp.*, Case No. 4:14-cv-02998-HSG (JSC), at Dkt. 242-10.  Finjan's supplemental answer to this interrogatory states that the "date of conception for the asserted claims of the U.S. Patent No. 8,667,494 ('the '494 Patent') began October 31, 1996 and continued through May 2000.  The date of constructive reduction of practice of the asserted claims of the '494 Patent is no later than November 7, 2011. Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice of the '494 patent." *Id.*, at 12:16-20; *see also* Plaintiff Finjan, Inc.'s Supplemental Responses to Defendant Symantec Corp.'s Interrogatories (No. 1), dated August 14, 201 attached as Exhibit J to the Cassidy Decl., (stating date of conception for "currently asserted claims of the '494 Patent is October 31, 1996" and identifying all four inventors as being "involved with" the conception).  These supplemental responses also identified "relevant documents" and "the deposition of David Kroll."  *See* Cassidy Decl., Exh. I, at 11:22-24; *see also id.*, Exh. J, at 15:6-8.  Finjan's counsel signed these interrogatory responses, pursuant to Federal Rule of Civil Procedure 26(g), certifying that this response was "complete and correct as of the time it is made."  *See* Cassidy Decl., Exh. I, at 21; *see also id.*, Exh. J, at 16.

43.    Finjan's discovery responses in Symantec are consistent with other discovery responses in that case and in other cases.  *See, e.g.*,:

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 23 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

- Plaintiff Finjan, Inc.'s Objections and Responses to Defendant SonicWall Inc.'s First Set of Interrogatories (Nos. 1-8), dated April 30, 2018 stating "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to **the** conception and reduction to practice of the '494 Patent." *See Finjan, Inc. v. SonicWall, Inc.*, Case No. 5:17-cv-04467-BLF, Dkt. No. 74, at ¶ 255 (emphasis added)

- Plaintiff Finjan, Inc.'s Objections and Responses to Defendant Cisco Systems, Inc.'s First Set of Interrogatories (Nos. 1-13), dated July 14, 2017 (same). *See Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 5:17-cv-00072-BLF-SVK, Dkt. No. 147, at ¶ 169.

- Plaintiff Finjan, Inc.'s First Supplemental Responses to Defendant Sophos Inc.'s First Set of Interrogatories (Nos. 1, 2, 3, 4, 5, 7, and 8) served in *Finjan Inc. v. Sophos Inc.*, Case No. 14-v-1197-WHO (same). *See Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 5:17-cv-00072-BLF-SVK, Dkt. No. 147, at ¶ 169.

- Symantec's Request for Admissions seeking admissions that each of the four named inventors "contributed to the conception of the asserted independent claims of the '926 and '494 patents" and where on June 9, 2017, Finjan admitted these Requests, stating "Finjan admits that Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul collaborated as a group on the invention set forth in the '926 and '494 Patent." *See Finjan Inc. v. Symantec Corp.*, Case No. 4:14-cv-02998-HSG, Cassidy Decl. (Dkt. No. 242-2) ¶ 221.

44.     To summarize, in *Symantec*, Finjan narrowed its asserted claims for the '494 Patent to only claims 10, 14, and 15—claims that Mr. Touboul previously declared that he solely invented.  Finjan then served its supplemental interrogatory response stating that all four inventors conceived of these asserted claims.  The July 26, 2017 interrogatory response shows that Mr. Touboul's statement to the PTO in the Touboul Declaration and his statements regarding the date of conception are false.

45.     Inventor testimony also shows the falsity of Mr. Touboul's statements in the Touboul Declaration regarding the date of conception and his sole inventorship of claims of the '494 Patent.  After a reasonable opportunity for investigation and discovery, evidence will likely show that, except for Mr. Touboul, no named inventor of the '494 Patent was employed by or otherwise worked with Finjan before 1998.  Evidence confirms that other inventors contributed to the conception of the alleged inventions of the independent claims of the '494 Patent and were inventors.  For example, in their July 26, 2017 supplemental interrogatory response, Finjan cites

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 24 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1   to the deposition testimony of David Kroll.  David Kroll testified that he came up with the

2   concept that led to the '494 patent during the time of his employment at Finjan—and that his

3   employment at Finjan did not begin until February 1999.  *See Finjan, Inc. v. Cisco Systems, Inc.*,

4   Case No. 5:17-cv-00072-BLF-SVK, Dkt. No. 147, at ¶ 173 (citing the June 5, 2017 Deposition of

5   David Kroll given in Finjan Inc. v. Symantec Corp., Case No. 4:14-cv-02998-HSG).  Again, at

6   the time of that interrogatory response, the asserted claims included only claims that Mr. Touboul

7   had declared in the Touboul Declaration to have solely invented.

8          46.     In sum, Finjan's discovery responses in other cases reveal that Mr. Touboul's

9   statements in the Touboul Declaration submitted to the PTO were demonstrably false.  Mr.

10  Touboul was not the sole inventor of claims of the '494 Patent.  Given that Mr. Touboul could not

11  have completed conception of the asserted claims of the '494 Patent prior to the 1997 filing date

12  of U.S. Patent No. 5,983,348, to Ji as he claimed.  Rather, conception could not have been

13  complete until Mr. Kroll joined Finjan in 1999, at the earliest.

14         47.     Mr. Touboul's false statements during prosecution of the '494 Patent were

15  material to patentability as the Examiner stated that the rejection was withdrawn in reliance on

16  Mr. Touboul's representation that he was the sole inventor of certain claims, and that the

17  conception of those claims, which are asserted in his case, occurred before September 10, 1997.

18  Had Mr. Touboul told the truth, the Examiner would not have withdrawn the rejection over U.S.

19  Patent No. 5,983,348 to Ji.  Mr. Touboul's misrepresentations were also material because they

20  constitute unmistakably false affidavits.

21         48.     After a reasonable opportunity for investigation and discovery, evidence will likely

22  show that Mr. Touboul made these false statements with the specific intent to deceive the PTO,

23  knowing the Examiner would credit those statements Inventors owe a duty of candor to the PTO

24  and the PTO cannot verify the technical accuracy of the representations made by Inventors.  As

25  stated by Finjan, "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul" were involved

26  with, and may have knowledge related to the conception and reduction to practice" of claims that

27  Mr. Touboul claimed to have solely invented.  Therefore, Mr. Touboul knew, or should have

28  known, that his representation that he was the sole inventor of the subject matter of the asserted

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 25 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

1    claims of the '494 Patent, and his representation regarding the date of conception of that

2    invention, were false.

3                              **Eleventh Defense: Ensnarement**

4          49.    Plaintiff's claims of infringement under the doctrine of equivalents are barred by

5    the doctrine of ensnarement.  Plaintiff claims of infringement under the doctrine of equivalents

6    for each Asserted Patent, but Plaintiff's infringement theories encompass or "ensnare" the prior

7    art, including the prior art that other defendants (such as Cisco, SonicWall, and Zscaler) have

8    asserted in their invalidity contentions.

9          50.    For example, to the extent that Plaintiff alleges that the '844 Patent is broad

10   enough to cover "gateway security to end users," where "incoming downloadables" are received

11   by the Accused Products, Finjan's theory is precluded by the doctrine of ensnarement because

12   prior art—including at least U.S. Patent No. 5,983,348 to Ji—teaches the claimed functionality on

13   a network gateway device.

14         51.    To the extent Plaintiff alleges that the claims of the '633 Patent are broad enough

15   to cover transmission of a received downloadable to a sandbox or emulator environment for

16   evaluation, Plaintiff's infringement theory ensnares prior art such as the IBM and Symantic

17   Digital Immune System; Dahlia Malkhi et al., "Secure Execution of Java Applets using a Remote

18   Playground", 1998 Symposium on Security and Privacy Proceedings (May 1998); U.S. Patent

19   No. 6,065,118 to Bull; and the prior art sandbox and emulator environments discussed in Cisco's

20   and SonicWall's Invalidity Contentions.

21         52.    To the extent Finjan asserts that Check Point infringes the "content processor

22   for…" limitation of Claim 1 of the '154 Patent under the doctrine of equivalents when the second

23   function allegedly invoked by the accused products is the same function as the first function

24   (rather than being a substitute function that is different from the original, first function), Finjan's

25   theory is precluded by the doctrine of ensnarement because prior art, including, for example, U.S.

26   Patent Application No. 11/281,839 to Robert Ross, teach invoking a second function that is the

27   same as the first function.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 26 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO

53.     In yet another example, if Finjan alleges that claims of the '494 Patent are broad enough to cover storage solutions that are not databases, Finjan's allegations ensnare prior art, including at least Dynamic Detection And Classification of Computer Viruses Using General Behaviour Patterns" by Morton Swimmer *et al.*

### Twelfth Defense: Government Sales

54.     Finjan's claims are barred, in whole or in part, to the extent that Finjan accuses products or services that are used by or manufactured for the government of the U.S., pursuant to 28 U.S.C. § 1498.  There is no jurisdiction over such claims outside of the U.S. Court of Federal Claims.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Check Point hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Check Point prays for relief as follows:

A.     Judgment in favor of defendant Check Point, and against plaintiff Finjan;

B.     A judgment that this is an "exceptional case" and an aware of reasonable attorney's fees, expenses, and costs under 35 U.S.C. § 285;

C.     An award of costs and reasonable attorney's fees; and

D.     An award of such other relief as the Court may deem appropriate.

Dated: November 1, 2018

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:     */s/ Clement S. Roberts*
Clement S. Roberts
Attorneys for Defendants
CHECK POINT SOFTWARE
TECHNOLOGIES, INC.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4162-1982-9784.2

- 27 -

CHECK POINT'S AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
5:18-CV-02621-WHO