PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER B. KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: 3:18-cv-02621-WHO |
| Plaintiff, | **FINJAN, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, INC. SECOND, SIXTH, NINTH, AND TENTH AFFIRMATIVE DEFENSES** |
| v. | |
| CHECK POINT SOFTWARE TECHNOLOGIES, INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES Ltd., an Israeli Limited Company, | Date:           January 23, 2019<br>Time:           2:00 p.m.<br>Courtroom:   Courtroom 2, 17th Floor<br>Before:         Hon. William H. Orrick |
| Defendant. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.    Check Point Withdrew its Second Affirmative Defense on Standing .............................1

    II.    Check Point's Sixth Affirmative Defense of Prosecution Laches is Not Sufficiently Pled or Facially Plausible.................................................................................................2

    III.    Check Point's Ninth and Tenth Affirmative Defenses on Inequitable Conduct Are Facially Implausible.........................................................................................................4

        A.    The '154 Patent .....................................................................................................5

        B.    The '494 Patent .....................................................................................................7

    IV.    Check Point Should Not Be Granted Leave to Amend......................................................9

CONCLUSION...............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,
 625 F.3d 724 (Fed. Cir. 2010) ......................................................................................................... 2

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009) ....................................................................................................... 4

*Finjan, Inc. v. Cisco Sys., Inc.*,
 No. 17-CV-00072-BLF, 2018 WL 4361134 (N.D. Cal. Sept. 13, 2018) .......................................... 2

*Finjan, Inc. v. Juniper Network, Inc.*,
 No. C 17-05659 WHA, 2018 WL 5454318 (N.D. Cal. Oct. 29, 2018) ............................................ 2

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) .................................................................................................... 4, 7

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 No. CV-00-20905-RMW, 2007 WL 4209386 (N.D. Cal. Nov. 26, 2007) ....................................... 3

*Nomadix, Inc. v. Hosp. Core Servs. LLC*,
 No. CV 14-08256 DDP (VBKx), 2015 WL 3948804 (C.D. Cal. June 29, 2015) ........................ 3, 4

*Oracle Corp. v. ORG Structure Innovations LLC*,
 No. C 11-3549 SBA, 2012 WL 12951187 (N.D. Cal. Mar. 30, 2012) ............................................. 2

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006) ........................................................................................................... 2

*Symbol Techs, Inc. v. Lemelson Med., Educ. & Research Found.*, *LP*
 422 F.3d 1378 (Fed. Cir. 2005),
 amended on reh'g in part, 429 F.3d 1051 (Fed. Cir. 2005) .................................................... 2, 3, 4

**Federal Statutes**

35 U.S.C. § 255 .................................................................................................................................... 5

**Rules**

Federal Rules of Evidence 201(b) ........................................................................................................ 2

**Other Authorities**

Manual of Patent Examining Procedure § 1481.03 ......................................................................... 5, 7

**INTRODUCTION**

The Court should strike Check Point Software Technologies, Inc.'s ("Check Point") Second, Sixth, Ninth, and Tenth affirmative defenses set forth in Finjan, Inc.'s ("Finjan") Motion (Dkt. No. 49, "Motion") because Check Point fails to allege sufficient facts or state a plausible defense as required by law.

First, with respect to the Check Point's Second Affirmative Defense relating to standing, Check Point does not dispute that its allegation is factually insufficient, and does not oppose Finjan's motion to strike this Affirmative Defense.

Second, Check Point's Sixth Affirmative Defense of prosecution laches fails to allege facts from which an unreasonable and unexplained delay and prejudice based on the purported delay can be inferred.  The patents themselves, which are subject to judicial notice, show that any inference of delay is unwarranted because Finjan diligently prosecuted its various patent applications.  As such, this defense—which is seldom applied in patent cases—is not facially plausible and fails as a matter of law.

Third, with regard to Check Point's Ninth and Tenth Affirmative Defenses relating to inequitable conduct of the '494 and '154 Patents, Check Point fails to show that Finjan made any misrepresentations, let alone material misrepresentations, to the PTO with the intent to deceive and instead relies Finjan's prior litigations to support their inadequate factual allegations. As such, Check Point has not put forth plausible factual evidence to support its pleadings of inequitable conduct.

Therefore, the Court should dismiss Check Point's Second, Sixth, Ninth, and Tenth Affirmative Defenses.

**ARGUMENT**

Check Point fails to establish in is Opposition that its Second, Sixth, Ninth, and Tenth affirmative defenses allege sufficient facts to state a plausible defense, and they should therefore be stricken.

**I.     Check Point Withdrew its Second Affirmative Defense on Standing**

In response to Finjan's motion, Check Point agreed to withdraw is Second Affirmative Defense on standing, and as such, this issue is moot.  *See* Dkt. No. 53 ("Opp.") at 2.

**II.     Check Point's Sixth Affirmative Defense of Prosecution Laches is Not Sufficiently Pled or Facially Plausible**

Check Point's allegations of prosecution laches do not assert any delay that would be sufficient to form the basis for this defense, given that there has been no "unreasonable and unexplained" or any "egregious misuse of the statutory patent system" as required under the law. *See Symbol Techs, Inc. v. Lemelson Med., Educ. & Research Found., LP*, 422 F.3d 1378, 1384-85 (Fed. Cir. 2005), amended on reh'g in part, 429 F.3d 1051 (Fed. Cir. 2005); *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728-29 (Fed. Cir. 2010) (citation omitted).  Indeed, the Court in Finjan's other cases pending in this District have stricken similar allegations of prosecution laches. *See Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 5454318, at *4 (N.D. Cal. Oct. 29, 2018) (denying leave to amend allegations of prosecution laches) (*citing Cancer Research Tech.*, 625 F.3d at 729); *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-CV-00072-BLF, 2018 WL 4361134, at *2 (N.D. Cal. Sept. 13, 2018).

Check Point does not dispute the facts or explanations set forth in Finjan's Motion (based on the patents, which are subject to judicial notice)[1] that Finjan continuously and diligently filed various patents following the timely filing and issuance of its patents. *See* Motion at 9-10; Opp. at 1-5.  Nor does Check Point dispute that Finjan prosecuted its patents within the procedures permitted by the MPEP, which on its own is not a showing of unreasonable delay. *See* Opp. at 2.  As the Federal Circuit has explained, Finjan's "legitimate grounds for refiling a patent application [] should not normally be grounds for a holding of laches." *See* Motion at 9 (citing *Symbol Techs*, 422 F.3d at 1385).  Further, Check Point does not dispute that Finjan filed many continuation and continuation-in-part patents,

---

[1] The patents, file histories, court filings, and other documents which Finjan has introduced to demonstrate the facial implausibility of Check Point's allegations do not contain material that is subject to reasonable dispute, because their contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b); *Oracle Corp. v. ORG Structure Innovations LLC*, No. C 11-3549 SBA, 2012 WL 12951187, at *4 (N.D. Cal. Mar. 30, 2012) (granting judicial notice on a Rule 12(b)(6) motion because such notice is proper where the request pertains to court filings and other matters of public record) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). Contrary to Check Point's assertion, Finjan is not asking the Court to take judicial notice of entire documents but specific facts identified in the Finjan's Motion and this Reply. *See* Motion at 20; Opp. at 1, n.2.

2

FINJAN, INC.'S REPLY IN SUPPORT OF ITS MOTION          CASE NO.: 3:18-cv-02621-WHO
TO STRIKE AFFIRMATIVE DEFENSES

many of prosecutions overlapping, between the earliest filing date and the asserted patents that demonstrate Finjan's diligence is prosecuting its patents. *Id.* at 9-10.

Despite the foregoing, Check Point relies on its unrelated inequitable conduct allegations to claim that Finjan unreasonably delayed prosecution. Opp. at 2. Check Point's claims that Finjan's prosecution of its various patents somehow made Finjan's patent portfolio ambiguous is false, as Check Point had the general outline of Finjan's technology. *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP (VBKx), 2015 WL 3948804, at *11 (C.D. Cal. June 29, 2015) (stating that a parent patent permits the presumption that the industry was aware of the "general outline" of subsequent patent claims). Further, that Finjan's prosecution counsel, Ms. Bey, filed a petition to correct priority claims in the asserted patents has no relevance to prosecution laches because the routine act of correcting a priority claim does not establish that there was any unreasonable or unexplained delay in filing or prosecution the asserted patents. Motion at 10. Check Point does not cite a single case to refuse Finjan's position that correcting priority claims has no relevance to prosecution laches.

Check Point's attempts to distinguish its allegations from those that were rejected in the Juniper and Cisco actions ring hollow.[2] Check Point's affirmative defense of prosecution laches merely alleges that each of the patents-in-suit was subject to an unreasonable and unexplained delay in prosecution followed by a conclusory statement of prejudice suffered by Check Point. This simply cannot give rise to prosecution laches, which is invoked sparingly. *See Symbol Techs.*, 422 F.3d at 1385 (the doctrine of prosecution laches "should be used sparingly lest statutory provisions be unjustifiably vitiated.").

Further, all of the cases that Check Point relies on are inapposite, as none of them are factually similar to Finjan's practice of prosecuting its patents. Check Point's cases involve unexplained delays where the moving party was unable to provide any explanation for the delay. *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905-RMW, 2007 WL 4209386, at *3 (N.D. Cal. Nov. 26, 2007) (denying summary judgment as evidence was presented that the patents took longer to issue than 99.9%

---

[2] Check Point's reliance on the order in Eset are not a basis to deny Finjan's Motion to Strike considering two other courts in this District have already deemed such allegations as insufficient. *See* Opp. at 4-5.

3

FINJAN, INC.'S REPLY IN SUPPORT OF ITS MOTION    CASE NO.: 3:18-cv-02621-WHO
TO STRIKE AFFIRMATIVE DEFENSES

of similar patents and internal documents stated that continuations should be filed so that claims would encompass upcoming products); *see also Symbol Techs,*. 422 F.3d at 1382–86 (noting that the patents-in-suit occupied the top thirteen positions for longest prosecution from 1914 to 2001).  Additionally, none of the cases state or suggest that the act of correcting a priority claims is capable of raising issues of prosecution laches.  Finally, Check Point's reliance on *Reiffin v. Microsoft Corp.* is not persuasive because the patentee here did not attempt to limit public awareness of its inventions given that the public had a general outline of the invention disclosed in the parent application.  Opp. at 3; *Nomadix*, 2015 WL 3948804, at *11 (parent patent permits the presumption that the industry was aware of the "general outline" of subsequent patent claims).  Therefore, the Court should strike Check Point's sixth affirmative defense of prosecution laches.

### III. Check Point's Ninth and Tenth Affirmative Defenses on Inequitable Conduct Are Facially Implausible

Check Point's inequitable conduct allegations should be stricken because they are facially implausible because Check Point does not plead facts sufficient to establish a misrepresentation by Finjan, that such misrepresentation was material, or that Finjan intended to deceive the Patent Office. *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  Even if the Court does not accept the requirement that Check Point's allegations must be based on the "single most reasonable inference," Check Point's allegations still fail under *Exergen* because the Court need not accept unwarranted deductions of fact or unreasonable inferences as true.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  For instance, Check Point did not plead sufficient facts to show that Ms. Bey had the specific intent to deceive the PTO when she filed a Petition to correct priority claims because she disclosed that the '154 Patent was a divisional of the '289 patent in the Utility Patent Application Transmittal Form. *See* Motion at 14.  Additionally, Mr. Touboul, a named inventor on the '494 Patent, did not make a material misrepresentation when he submitted a declaration to the Patent Office only stating that he is the sole inventor for claims 1, 3, 4-6, 9, 10, 12-15, and 18 of the '494 Patent.  Motion at 18.

4

FINJAN, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES           CASE NO.: 3:18-cv-02621-WHO

While Check Point relies heavily on this Court's prior orders and claims its allegations are identical to those plead in other cases (Opp. at 5-6), Finjan's arguments are not the same as the arguments previously raised, and have thus not been considered by the Court.  As detailed below, Check Point's allegations must fail as Ms. Bey was simply correcting a clerical error on the first page of the printed patent where the priority claim was supposed to be printed.

### A.     The '154 Patent

Check Point cannot sufficiently plead that Ms. Bey made any misrepresentation, let alone a misrepresentation that was material, because she took the appropriate steps to correct priority claims on the face of the '154 Patent.  Opp. at 7-8.

Ms. Bey filed a "Petition to Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" on October 16, 2013 ("'154 Patent Petition") to seek to claim priority to the U.S. Patent No. 7,757,289 (the "'289 Patent").  Check Point's argument that filing this petition amounts to "a misrepresentation" is wrong because Ms. Bey identified the '289 Patents as the parent application of the '154 Patent in the Utility Patent Application Transmittal Form for the '154 Patent, and thus it is facially apparent that Ms. Bey intended to claim priority to the '289 at the time of filing.  *See* Motion at 13-14; Opp. at 7.  Check Point's argument, therefore, that Ms. Bey made any misrepresentation is facially implausible.

Moreover, the Petition which Ms. Bey filed to correct the priority claim, is a certificate of correction, which the Patent Office only grants if it is used to correct clerical mistakes after a patent is issued.  35 U.S.C. § 255.  Accordingly, the Patent Office recognized that it was clear from the record of the '154 Patent file history that priority was appropriate.  *See* Manual of Patent Examining Procedure ("M.P.E.P.") § 1481.03 at § II.A.1.(B). ("it must be clear from the record of the patent and the parent application(s) that priority is appropriate.").

In fact, Check Point does not dispute that the '154 Patent was a divisional of the '289 Patent. *See* Opp. at 7-8.  Nor does Check Point dispute that the Patent Office subsequently acknowledged that the patent application was divisional of the '289 Patent in a filing receipt mailed to Ms. Bey.  Motion at 14; *see also* Dkt. No. 49-1, Declaration of Kristopher Kastens, ("Kastens Decl." hereinafter), Ex. 25,

FINJAN-CP 002501-03 at 2501[3] (which shows that the '154 Patent claims priority to the '289 Patent under the domestic priority date as claimed by applicant section). Rather, Check Point argues that "Ms. Bey misrepresented a material fact to the PTO" when "she represented that the delayed claim of priority in the '154 Patent was 'unintentional.'" Opp. at 7. However, Check Point's allegation that Ms. Bey made any misrepresentation is an unwarranted deduction that the Court need not accept as true given that the '154 Patent was a divisional of the '289 Patent, and divisional applications always claim priority to their parent applications. Further, it would require that the Court accept Check Point's argument that Ms. Bey intentionally did not claim priority to the '289 patent and misrepresented that the flawed priority claim was unintentional as a "tactic" to reap benefits in future litigations, which is another unwarranted deduction. Dkt. No. 46 at 19.

Check Point also does not sufficiently argue that if Ms. Bey did make a misrepresentation, which she did not, that the representation was material. Instead, Check Point vaguely argues that the alleged misrepresentation is material when "viewed in the context of Finjan's overarching pattern of repeated misrepresentations to the PTO regarding purportedly 'unintentionally' delayed claims of priority." Opp. at 7-8. Check Point, however, fails to dispute that each of Finjan's petitions in correcting priority claims in the '494, '086, '633, and '822 Patents all corrected the *same issue* of perfecting the priority claim chain related to their common parent, such that the patents in Finjan's patent portfolio maintain consistent priority claims. Motion at 16. Accordingly, there is no material misrepresentation and Check Point's claim that Finjan "only attempted to correct the claim of priority once it became clear that the '154 Patent would be subject to serious invalidity attacks in litigation" is wrong, and any purported prior art was presumably available to the Patent Office based on the original filing receipt. Dkt. No. 46 at 19.

Further, Check Point's allegations of specific intent must also fail, as there are no facts alleged that indicate that Ms. Bey was doing anything but correcting a simple clerical error based on

---

[3] All Exhibits are attached to the Declaration of Kristopher Kastens in Support of Finjan, Inc.'s Motion to Strike Defendants Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd.'s Second, Sixth, Ninth, and Tenth Affirmative Defenses, filed as Dkt. No. 49-1.

information that was previously disclosed.  Therefore, the Court should strike Check Point's affirmative defense of inequitable conduct with regard to the '154 Patent.

### B. The '494 Patent

Check Point's affirmative defense of inequitable conduct for the '494 Patent should be stricken because it is facially implausible.  As a preliminary matter, Check Point seemingly has abandoned its allegations regarding inequitable conduct regarding inequitable conduct with respect to Ms. Bey.  *Compare* Motion at 17 *with* Opp. at 8-9.  Further, Check Point fails to show that there was a material misrepresentation because the Patent Office maintained the earlier rejection based on the Ji reference in January 7, 2013, after Ms. Bey submitted the Petition in October 2012.  *See* Kastens Decl., Ex. 3, FINJAN-CP 003737-43 at 3737.  Thus, the Petition was not a misrepresentation, much less a material misrepresentation, and cannot be a basis for an inequitable conduct allegation.  Motion at 18.  Indeed, Ms. Bey merely perfected the priority claim to which the '494 Patent was originally entitled in accordance with MPEP procedures.  M.P.E.P. § 1481.03 at § II.A.1.(C) (which requires the filing of a grantable petition to accept an unintentionally delayed claim to correct a priority claim via a certificate of correction).

Additionally, Mr. Touboul's declaration is not a misrepresentation because there are no facts supporting that it is inaccurate.  Motion at 18-19.  Check Point cannot allege this conclusion without support and force the Court to accept it, because it cannot be reasonably inferred based on the content of documents subject to judicial notice.  Indeed, the Court should not accept allegations that are "unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055 (citation omitted).  Here, Check Point cannot dispute that Mr. Touboul only stated that he is the sole inventor of *some* of the claims of the '494 Patent and that "[t]he remaining pending dependent claims were co-invented by or with one or more of the listed inventors":

> The declaration made herein is to establish that I had the ideas described in the patent application, and first developed a working system that is described in the patent application and in claims 1, 3, 4-6, 9, 10, 12-15, and 18 pending as of the signing of this declaration (hereinafter sole invention) prior to September 10, 1997, which is the filing date of U.S. Patent No. 5,983,348 to Ji ("the '348 patent"). I hereby declare that my sole invention was in my mind and developed by at least November 18, 1996. ***The remaining***

7

*pending dependent claims were co-invented by or with one or more of the listed inventors.*

Kastens Decl., Ex. 5 (Touboul Decl.) at FINJAN-CP 003214-15 (emphasis added).  This statement is consistent with statements Finjan made in a prior litigation that others were involved in conception of some claims of the '494 Patent.  Motion at 18-20.  Thus, based on the lack of conflict between Mr. Touboul's statement and statements made by Finjan during litigation, it would not be reasonable to infer any misrepresentation.

Further, Finjan's discovery responses are consistent with Mr. Touboul's declaration and do not establish a misrepresentation or a specific intent to deceive. Check Point is attempting to contort the statement that the named inventors "were involved with, and may have knowledge related to the conception and reduction to practice of the '494 Patent" to mean that Finjan asserted that all of the named inventors invented every claim of the '494 Patent.  *See* Motion at 19; Dkt. No. 46 at 22–24; Kastens Decl., Ex. 9 (Finjan's Supp. Responses to Symantec's Interrogatory No. 1) at 6, 8, 10, 12, and 15.  This is not what the response says and is an unreasonable inference.  As discussed above, Mr. Touboul was the sole inventor on some, but not all, claims of the '494 Patent.  The remaining co-inventors of the '494 Patent do have knowledge relating to the conception and reduction to practice of the '494 to the degree to which they contributed to the claims where they are co-inventors.  Finjan's interrogatory responses do not raise a suspicion of material misrepresentation.

Moreover, Mr. Kroll, a co-inventor of certain claims on the '494 Patent's testimony that he is an inventor of claim 10 over ten years after the priority date of the '494 Patent is entitled to, and two years after the filing date of the '494 Patent is not an indicator of Mr. Touboul's intent to deceive.  Motion at 22.  Another individual's statements regarding the invention of a claim in the '494 Patent cannot establish ***Mr. Touboul's belief*** when Mr. Touboul submitted his declaration a decade earlier.  Check Point fails to allege any facts showing that Mr. Touboul knew his statements were false (which they were not) at the time he submitted his declaration.

Accordingly, Check Point's affirmative defense of inequitable conduct on the '494 Patent should be stricken.

8

FINJAN, INC.'S REPLY IN SUPPORT OF ITS MOTION   CASE NO.: 3:18-cv-02621-WHO
TO STRIKE AFFIRMATIVE DEFENSES

### IV. Check Point Should Not Be Granted Leave to Amend

Because Check Point cannot possibly plead other facts consistent with their allegations to cure the deficiencies set forth above, Check Point should not be permitted to amend. Check Point's Sixth, Ninth, and Tenth Affirmative Defenses are incurably flawed and should be stricken with prejudice.

### CONCLUSION

For the foregoing reasons, the Court should strike Check Point's Second, Sixth, Ninth, and Tenth Affirmative Defenses for prosecution laches and inequitable conduct relating to the '154 Patent and '494 Patents.

Respectfully submitted,

Dated: January 8, 2019

By: */s/ Kristopher Kastens*
Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.