UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHECK POINT SOFTWARE TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No. 18-cv-02621-WHO <br><br> **ORDER GRANTING MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES IN PART AND DENYING IN PART** <br><br> Re: Dkt. No. 49 |

Plaintiff Finjan, Inc. ("Finjan") brings a patent infringement lawsuit against defendants Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. (collectively "Check Point") alleging infringement of seven of Finjan's patents related to cybersecurity. Finjan moves to strike Check Point's affirmative defenses for lack of standing, prosecution laches, and inequitable conduct.

I grant Finjan's motion in part and deny it in part. The motion to strike the prosecution laches affirmative defense is granted with leave to amend; the allegations contained in the answer are insufficient to raise an inference that Finjan's prosecution of the patents at issue was unreasonable. Finjan's motion to strike the affirmative defenses based on inequitable conduct is denied; the allegations in the answer are enough to survive dismissal. Finjan's motion to strike the affirmative defense for lack of standing is unopposed and granted.

## BACKGROUND[1]

Finjan holds a number of patents related to cybersecurity and is in the business of

---

[1] Finjan's request for judicial notice [Dkt. No. 50] is granted. The documents Finjan asks that I take notice of are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201).

developing and producing secure mobile products for the consumer market. Complaint [Dkt. No. 1] at ¶¶ 8-9. Check Point is also a cybersecurity company. *Id.* at ¶ 35. Finjan filed suit against Check Point alleging that Check Point directly and indirectly infringed on several of its patents: the direct infringement claims involve U.S. Patent No. 6,154,844 ("the '844 Patent"), U.S. Patent No. 6,965,968 ("the '968 Patent"), U.S. Patent No. 7,418,731 ("the '731 Patent"), U.S. Parent No. 7,647,633 ("the '633 Parent"), U.S. Patent No. 8,079,086 ("the '086 Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), and U.S. Patent No. 8,677,494 ("The '494 Patent"), and the indirect infringement claims relate to all of the above patents except the '154 Patent. *Id.*.

On November 21, 2018, Check Point filed an amended answer asserting twelve affirmative defenses. ("Answer") [Dkt. No. 46]. Finjan moves to strike the second affirmative defense for lack of standing related to the '154 Patent; the sixth affirmative defense for prosecution laches related to the '494 Patent, the '154 Patent, the '086 Patent, the '633 Patent, and the '731 Patent; the ninth affirmative defense for inequitable conduct related to the '154 Patent; and the tenth affirmative defense for inequitable conduct related to the '494 Patent. [Dkt. No. 49]. The motion to strike the prosecution laches defense and inequitable conduct defense appears to have been litigated in this district in several cases where Finjan was the plaintiff. See e.g. *Finjan, Inc. v. Juniper Network, Inc.*, No. 17-CV-05659-WHA, 2018 WL 5454318, at *1 (N.D. Cal. Oct. 29, 2018); *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-CV-00072-BLF, 2018 WL 4361134, at *1 (N.D. Cal. Sept. 13, 2018); *Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2018 WL 1811979, at *1 (N.D. Cal. Apr. 17, 2018).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike, however, "are generally disfavored [by courts] because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the

2

merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Employees' Ret. Sys. v. Berry*, 667 F.Supp.2d 1121, 1128 (N.D. Cal. 2009). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12—CV- 00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

**DISCUSSION**

**I.    PROSECUTION LACHES**

Finjan moves to strike Check Point's sixth affirmative defense of prosecution laches related to the '494 Patent, the '154 Patent, the '086 Patent, the '633 Patent, and the '731 Patent for failure to sufficiently plead that it engaged in unreasonable or unexplained delay or that Check Point was prejudiced by its conduct. Mot. at 9-12. In support of its motion, Finjan contends that neither its alleged strategy to limit the universe of prior art by claiming priority to early-filed applications nor Check Point's conclusory statements related to each of the above patent's priority and filling dates support an inference of unreasonable delay. *Id.* Additionally, Finjan contends that terminal disclaimers are irrelevant to prosecution laches and that Check Point has failed to show that it has been prejudiced. Finjan asks me to join my colleagues in this district who have granted similar motions in favor of Finjan. *Id.* (citing *Juniper*, 2018 WL 5454318, at *4-5; *Cisco*, 2018 WL 4361134, at *3-4.)

In opposition, Check Point argues that because the time period between the priority date and filing dates of each of the five patents "exceed[s] the average age for granted patent applications during the period of the five patents" and are for an improper purpose, they constitute unreasonable delay. Oppo. at 1-5. It alleges that by belatedly "claiming priority to early-filed applications, Finjan limited the universe of prior art considered by the examiner during the

3

prosecution of its patents." *Id.* (citing Answer at ¶ 18). It also argues that it sufficiently alleged prejudice by pleading that during Finjan's long prosecution periods, Check Point was unable to determine what was patented and what was not, and that in the interim it invested considerable resources on products and services that Finjan now accuses infringe upon the above patents. *Id.* at 4. Check Point urges that I follow the court's decision in *Finjan, Inc. v. ESET, LLC*, No. 17-CV-00183, 2017 WL 4358128, at *1 (S.D. Cal. Oct. 2, 2017), where it argues similar allegations by an opponent of Finjan's were sufficient and that in this pleading it has addressed the deficiencies identified in *Juniper* and *Cisco*. *Id.*

"The doctrine [of prosecution laches] 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (quoting *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385–86 (Fed. Cir. 2005)). It also requires a showing of prejudice, which in turn requires "evidence of intervening rights, i.e., that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Id.* at 729. "[T]here are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions. The matter is to be decided as a matter of equity, subject to the discretion of [the] district court...." *Symbol Techs.*, 422 F.3d at 1385.

I agree with Finjan that Check Point has failed to plead adequate facts to show unreasonable or unexplained delay in the prosecution of the above patents. Check Point's mere recitation of the number of years between Finjan's filing of its application for the parent patent and the applications for the five patents at issue here and the conclusory allegation that Finjan adopted a repetitious continuation strategy and limited the universe of prior art by claiming priority to early-filed applications, without more, fails to raise an inference that the delay was unreasonable or unexplained. *Id.* ("There are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated"). Although Check Point argues in its opposition that

4

the delays between the priority date and the filing date of the five patents at issue "far exceed the average age for granted patent applications during the period of the five patents at issue[,]" this allegation is not contained in the Amended Answer and may not properly be considered in this motion. Oppo. at 3; *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (finding that new allegations in an opposition motion are irrelevant for dismissal purposes). Additionally, Finjan has put forward an explanation for each delay. Mot. at 9-11.

This case is different from *ESET*, where the *ESET* defendant pleaded facts showing that the patents at issue were not entitled to earlier priority date. *See* ESET SPOL. S.R.O.'s Amended Answer, Affirmative Defenses and Counterclaims to Plaintiff's Original Complaint for Patent Infringement at ¶¶61-74, *ESET, LLC*, No. 17-CV-00183 (S.D. Cal. Aug. 14, 2017), ECF No. 143.[2] Here, Check Point fails to explain why Finjan's strategy is not a legitimate utilization of statutory provisions. This case is also distinguishable from *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-05-02298 RMW, 2007 WL 4209386, at *3 (N.D. Cal. Nov. 26, 2007), which Check Point cites to support its contention that long delays in issuing entire families of patents can lead to an inference of prosecution laches. Oppo. at 3. In *Hynix*, the court found that some evidence suggested that the patents-in-suit took longer to issue than 99.9% of similar patents and denied summary judgment on prosecution laches. 2007 WL 4209386, at *3. No such allegation is present here.

Although Check Point's allegations specifying the patents and the products that it invested in during the period of delay is sufficient to allege prejudice, Check Point has not sufficiently pleaded that the delay was unreasonable or unexplained. Answer at ¶ 19; *Cancer Research*, 625 F.3d at 729. Therefore, Finjan's motion to strike the sixth affirmative defense is granted with leave to amend.[3]

---

[2] I take judicial notice of the amended answer in *ESET* as it is a matter of public record. *Lee*, 250 F.3d at 689 (citing Fed. R. Evid. 201).

[3] Finjan correctly notes that insofar as the sixth affirmative defense is concerned, Check Point did not oppose nor cite any case to dispute Finjan's position that "correcting priority claims has no relevance to prosecution laches." Reply at 3.

5

## II. INEQUITABLE CONDUCT

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). Check Point alleges that Finjan engaged in inequitable conduct related to the '154 Patent and the '494 Patent by employing a strategy of submitting false declarations in support of petitions for allegedly "unintentionally" delayed claims of priority. Answer at ¶¶ 22-48. Finjan responds that Check Point's inequitable conduct affirmative defenses for the '154 and '494 Patents should be struck because Check Point cannot meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) and the Federal Circuit's decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). Mot. at 13-22. Finjan contends that Check Point's factual allegations fail to show any misrepresentation to or reliance by the Patent Office or specific intent to deceive the Patent Office. *Id.*

Inequitable conduct must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Exergen*, 575 F.3d at 1326. To plead inequitable conduct with the requisite particularity, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. To meet the intent prong, the pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

That said, courts disagree on the detail required to meet the pleading requirements for the affirmative defense of inequitable conduct. I agree with my colleagues in this district that it is inappropriate to impose a standard that requires more than that set forth in *Exergen* during a motion to strike an affirmative defense. See e.g. *Juniper*, 2018 WL 5454318, at *2 ("At the pleading stage, however, inference of deceptive intent need only be reasonable and drawn from a

pleading's allegations of underlying fact to satisfy Rule 9(b)") (internal quotation marks omitted); *iLife Techs. Inc v. AliphCom*, No. 14-CV-03345-WHO, 2015 WL 890347, at *4 (N.D. Cal. Feb. 19, 2015) (applying *Exergen* standard and not *Therasense* standard); *Nalco Co. v. Turner Designs, Inc.*, No. 13–CV–02727 NC, 2014 WL 645365, at *3 (N.D. Cal. Feb. 19, 2014) (same).

### A. The '154 Patent

On June 14, 2010, Finjan filed its application for the '154 Patent without making any claim of priority in the specification. Answer at ¶ 22. On March 20, 2012, the '154 Patent was issued without any claim of priority. *Id.* at ¶ 23. Check Point alleges that Finjan engaged in inequitable conduct when on October 16, 2013, its patent attorney filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" ("the '154 Petition") to claim priority to U.S. Patent No. 7,757,289 ("the '289 Patent"), which was filed on December 12, 2005. *Id.* Finjan's patent attorney at the time, Dawn-Marie Bey, represented that "the entire delay between the date the priority claim was due and the date that this petition with priority claim added to the specification is filed was unintentional." *Id.*

Check Point submits that discovery is likely to produce evidence showing that Bey misrepresented a material fact and violated her duty of candor to the PTO when she stated that the delay was unintentional. *Id.* at ¶ 24. Check Point notes that the '154 Petition to accept a significantly delayed claim of priority conspicuously coincided with a Finjan's commencement of litigation asserting the '154 Patent against Websense, Inc. on September 23, 2013 (Case No. 13-CV-04398-BLF, N.D. Cal.) and FireEye, Inc. on July 8, 2013 (Case No. 13-CV-03133-SBA, N.D. Cal.), and shortly before Finjan instigated other litigation asserting the '154 Patent against Proofpoint, Inc. on December 16, 2013 (Case No. 4:13-cv-05808-HSG, N.D. Cal.), and Palo Alto Networks, Inc. on November 4, 2014 (Case No. 4:14-cv-04908-PJH, N.D. Cal.). *Id.* Because claims entitled to an earlier priority date expire earlier, Finjan is incentivized to claim priority only to the extent necessary to overcome otherwise invalidating prior art. Check Point argues that the evidence will show that Finjan delayed claiming priority to maximize the value of the '154 Patent during pre-suit licensing negotiations and only attempted to correct its claim of priority once it

determined that the '154 Patent would be subject to invalidity attacks during litigation. *Id.* at ¶ 25.

Check Point contends that the '154 Petition constitutes material affirmative egregious misconduct when viewed in the context of Finjan's allegedly overarching pattern of repeated misrepresentations to the PTO of unintentionally delayed claims of priority involving the '154 Patent, the '494 Patent, the '086 Patent, and the '633 Patent. *Id.* at ¶¶ 12-16, 26. Further, Finjan is alleged to have an unusually abundant history of petitioning for unintentionally delayed claims of priority to wait and see if a patent would be granted or validated with a later priority date; only when it becomes clear that it would not does Finjan seek to "correct" its "unintentionally" delayed priority claim to moot asserted prior art. *Id.* at ¶ 27.

Finjan responds that there could be no material representation because the '289 Patent was already identified as part of the file record when the '154 Patent was filed and the PTO granted the certificate of correction. Mot. at 13-14. The '154 Petition was submitted because the priority claim of the '289 Patent was not reflected in the printed patent as it should have been; the petition constituted a simple correction. *Id.* Further, Finjan contends that Check Point failed to plead facts showing that Bey intended to deceive the PTO and that the publicly available file history of the '154 patent would show that the priority claim to the '289 Patent had been made when the '154 patent was filed. *Id.* at 14-15. Finjan also argues that the PTO acknowledged Finjan's priority claim to the '289 Patent around the time the '154 Patent was filed, so it must have considered prior art in view of the earlier priority date. *Id.* Finally, Finjan asserts that Check Point fails to allege any but-for materiality because there is no "unusually abundant history of petitioning" for correcting priority claims. *Id.* at 15-17.

Check Point sufficiently alleges the who, what, when, where, and how of the alleged inequitable conduct by stating that in filling the '154 Petition on October 16, 2013, Bey misrepresented that Finjan's delay between the priority date claim and the date the '154 Petition was filed was unintentional. *Exergen*, 575 F.3d at 1328. Construing the Answer's allegations in a light most favorable to Check Point and considering the four separate patents owned by Finjan for which it filed petitions of delayed claims of priority, I find that Check Point has sufficiently stated a pattern of inequitable conduct through the repeated filing of petitions to accept purportedly

unintentionally delayed claims of priority. Answer at ¶¶ 12-15. This is sufficient to support a reasonable inference that Bey intentionally delayed filing the petition for the '154 Patent in order to maximize the value of the '154 patent during pre-suit licensing negotiations and only filed its petition to correct the claim of priority once it realized that the '154 Patent would be subject to invalidity attacks in litigation. *Juniper*, 2018 WL 5454318, at *3 (citing *Exergen*, 575 F.3d at 1330). The alleged misrepresentation by Bey, as contained in the '154 Petition, is per se material. *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1294 (Fed. Cir. 2012) ("[W]here the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material.") (internal citation omitted). Further, the submission of the allegedly false '154 Petition raises a strong inference of intent to deceive the PTO. *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013) (holding that the submission of an affidavit containing fabricated examples in order to overcome a prior art reference raises a strong inference of intent to deceive).

Finjan's arguments address only whether it was allowed to file the '154 Petition, not whether Bey misrepresented the delay as unintentional. Compliance is not determinative of reasonableness. *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1155 (N.D. Cal. 2003) (in considering conduct related to a prosecution laches claim). Similarly, the PTO's grant of the petition is not relevant to Bey's alleged state of mind or Finjan's intent when she filed the '154 Petition. Check Point has sufficiently alleged inequitable conduct with respect to the '154 Petition and the '154 Patent for pleading purposes. Finjan's motion to strike the ninth affirmative defense is denied.

### B. The '494 Patent

On May 17, 2001, Finjan submitted a declaration with the application that would lead to the issuance of the '494 Patent identifying Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul as the inventors. Answer at ¶ 31. On July 23, 2012, the PTO issued a non-final rejection finding all of the claims as anticipated by U.S. Parent No. 5,983,348 ("the Ji Patent"). *Id.* at ¶ 32. The Ji Patent was filed on September 10, 1997 and was prior art since the claim of priority started on November 6, 1997. *Id.* Check Point states that Finjan

9

engaged in inequitable conduct by submitting an allegedly false declaration by Shlomo Touboul (the "Touboul Declaration") stating that Touboul was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 and that he had conceived of and developed them by at least November 18, 1996. *Id.* at ¶¶ 38-41. Check Point supports its argument by citing to Finjan's discovery responses in other cases to show that Touboul was not the sole inventor of the above claims and that he did not conceive of them before the Ji Patent. *Id.* at ¶¶ 42-45. Check Point contends that the false statement in the Touboul Declaration was material because the PTO allowed all of the then-pending claims, stating "[t]he Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji, U.S. 5,983,348 reference." *Id.* at ¶ 40.

To support its argument that the Touboul Declaration was false, Check Point identifies several statements identifying Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul as having knowledge related to the conception and reduction to practice of some of the same claims at issue in the '494 Patent. *Id.* at ¶ 42. Check Point also points to statements made by David Kroll in a deposition that he helped conceive of the '494 Patent and that he did not begin working at Finjan until 1999, three years after Touboul's asserted priority date. *Id.* at ¶¶ 42-46.

Finjan argues that its discovery responses do not show that Touboul deceived the PTO and that the statement that the other inventors may have knowledge about the conception and reduction to practice of the asserted claims does not contradict Touboul. Mot. at 18. It also contends that its discovery statements were made in response to a very broad interrogatory asking about many aspects of conception and reduction to practice and that its later supplemental responses clarified that Touboul invented claims 10, 14, and 15 individually. *Id.* at 19-20. Finally, Finjan asserts that Check Point has not alleged facts to show materiality or specific intent. *Id.* at 20-22.

Check Point sufficiently alleges the who, what, when, where, and how of the alleged inequitable conduct by stating that in the Touboul Declaration, Finjan misrepresented that Touboul was the sole inventor of the asserted claims and that he invented them before the Ji Patent's priority date. *Exergen*, 575 F.3d at 1328. Construing the Answer's allegations in a light most favorable to Check Point and accepting the allegations related to the falsity of the Touboul Declaration as true, Kroll's deposition statement and Finjan's discovery responses together are

sufficient to support a reasonable inference that Touboul made material affirmative misrepresentations with the intent to deceive the PTO in order to backdate the otherwise invalidating Ji Patent. *Travel Caddy*, 695 F.3d at 1294; *Intellect Wireless*, 732 F.3d at 1345. Finjan's counterarguments speak to the weight of the evidence and are not appropriate or persuasive at this stage in the litigation. In reaching this decision, I am in agreement with several of my colleagues in this district who have come to the same conclusion. See e.g. *Juniper*, 2018 WL 5454318, at *2; *Cisco Sys.*, 2018 WL 4361134, at *4-5; *Bitdefender*, 2018 WL 1811979, at *2-3. Finjan's motion to strike the tenth affirmative defense is denied.[4]

### III. LACK OF STANDING AND THE '154 PATENT

Check Point asserts a second affirmative defense based on lack of standing, arguing that Finjan does not have full ownership of the '154 Patent. Answer at 13. Finjan moved to strike this defense and Check Point did not oppose it. I grant Finjan's motion to strike the second affirmative defense based on lack of standing.

### CONCLUSION

Finjan's motion to strike the sixth affirmative defense for prosecution laches related to the '494 Patent, the '154 Patent, the '086 Patent, the '633 Patent, and the '731 Patent is granted with leave to amend.

Finjan's motion to strike the ninth and tenth affirmative defenses related to the '154 and '494 Patents, respectively, is denied.

---

[4] Finjan correctly notes that insofar as the tenth affirmative defense is concerned, Check Point did not oppose the motion to strike on the grounds that Bey's filing of a petition to accept unintentionally delayed claim of priority for the '494 Patent constituted inequitable conduct on its own. Reply at 7. Unlike Check Point's ninth affirmative defense, Check Point did not provide further corroborating facts to support an inference that this particular petition, on its own, contained a misrepresentation.

11

I also grant Finjan's unopposed motion to strike the second affirmative defense for lack of standing with regards to the '154 Patent.

**IT IS SO ORDERED.**

Dated: January 25, 2019


William H. Orrick
United States District Judge