UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02621-WHO<br><br>**ORDER GRANTING MOTION TO STRIKE IN PART; GRANTING MOTIONS TO SEAL; GRANTING MOTION TO AMEND CLAIM CONSTRUCTION SCHEDULE**<br><br>Re: Dkt. Nos. 54, 55, 58, 60, 69, 75 |

This is a patent infringement action. Plaintiff Finjan, Inc. ("Finjan") accuses defendant Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. (collectively "Check Point") of directly and indirectly infringing on several of its patents related to cyber security. Complaint at ¶¶ 8-9 [Dkt. No. 1]. Check Point moves to strike a number of Finjan's infringement contentions for violations of my Order Re Case Narrowing and Infringement Contentions (the "Narrowing Order") [Dkt. No. 29] and the Patent Local Rules. Check Point's Motion to Enforce Court Order and Strike Infringement Contentions ("Mot.") [Dkt. No. 55]. The motion to strike is granted in part and Finjan must amend its infringement contentions.

**BACKGROUND**

After receiving briefing from the parties on how to manage this litigation in compliance with Federal Rule of Civil Procedure 1's mandate of a "just, speedy, and inexpensive determination of this action," I ordered Finjan to serve its infringement contentions under specifications that largely follow the provisions of this Court's Patent Local Rules as well as the guidance provided in the 2013 Model Order. Narrowing Order. Finjan was instructed to "include pinpoint source code citations . . . accompanied by the document production required by Patent

Local Rule 3-2" and to also:
> (i) avoid open-ended citations to "exemplary" products and use of the terms "such as" and "for example"; (ii) set forth any infringement theories based on the doctrine of equivalents with limitation-by-limitation analyses; and (iii) for any indirect theories of infringement, identify the alleged direct infringement, the alleged acts of inducement or contribution to that infringement, and the relationship between them.

*Id.* at 2. On November 2, 2018, Finjan served its infringement contentions on Check Point. Mot. at 1.

The infringement contentions consist of a cover pleading, a list of every instrumentality that allegedly infringes, and thirty-four claim charts. The cover pleading provides information on Finjan's initial disclosure of asserted claims, infringement contentions, and document production pursuant to Patent Local Rules 3-1 and 3-2. Plaintiff Finjan, Inc.'s Initial Disclosure of Asserted Claims and Infringement Contentions and Document Production Pursuant to Patent Local Rules 3-1 and 3-2 (the "Initial Disclosures"), attached as Exhibit C to Declaration of Clement Roberts ("Roberts Decl.") [Dkt. No. 55-21]. The instrumentality list sets forth every instrumentality made by Check Point that allegedly infringes Finjan's patents, divided into five product categories: (1) Network Security Products, (2) Endpoint Enterprise Products, (3) Endpoint Consumer Products, (4) Mobile Products, and (5) Cloud Services Products. *Id.* at Ex. A. Within each product category, Finjan identified "Model/Product Identifiers" that include discrete software components and what Check Point alleges are marketing terms, product bundles, and packages. *Id.* It accuses 42 discrete blades, software, components, and services. Declaration of Tamir Zegman ("Zegman Decl.") at ¶ 18 [Dkt. No. 55-2].

Finjan produced seven sets of claim charts (34 total), with one set for each patent asserted in this case. Roberts Decl. at ¶¶ 9-10. Each set contains a chart for each allegedly infringing product category mentioned above. *Id.* Each chart identifies elements of the patent, provides some information about the location of that element within Check Point's products using materials found on Check Point's website, and then references Check Point's source code. Opposition at 3-4 [Dkt No. 60-4]. Check Point notes that the source code citations largely overlap across all the charts within a product category, regardless of which element or patent is being charted. Zegman

Decl. at ¶¶ 28-29.

Check Point moves to strike a number of Finjan's infringement contentions for violating the Narrowing Order and the Patent Local Rules because the contentions: (1) improperly combine multiple instrumentalities into a single claim chart; (2) fail to provide pinpoint source code citations to each accused instrumentality; (3) improperly use open-ended exemplary product definitions; (4) fail to provide its infringement theory with pinpoint citations sufficient to identify how each accused instrumentality infringes each claim element in each asserted patent; and (5) improperly accuse irrelevant instrumentalities and previously-unidentified instrumentalities without showing good cause. Mot. at 15-24. Taken together, Check Point contends that it is impossible to determine whether Finjan is accusing each product on a stand-alone basis or as part of a combination. *Id.* at 2-3. Check Point asks that I strike the 25 instrumentalities that lack source code citations and to require Finjan (i) to specify whether each remaining instrumentality is being accused alone or as part of a combination (and if so, to specify the combination) and (ii) to disclose its theories about how each source code citation satisfies each claim limitation for which it is cited. *Id.* at 16.

## LEGAL STANDARD

Patent Local Rule 3-1 requires:

> [A] party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions[]' . . . [which] shall contain the following information:
>
> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such

3

party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(d) For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

(e) Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality.

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods.*, No. 09-cv-01152-SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted). Patent Local Rule 3-1 is intended to require the plaintiff "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-1149-EMC, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). It "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, No. 01-cv-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002).

"[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)). The local rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

# DISCUSSION

## I. MOTION TO STRIKE

### A. Use of Group Charts

Check Point argues that Finjan's grouping of the instrumentalities into five groups of products was improper. Mot. at 6-10. Instead, Finjan should have charted the 36 instrumentalities identified by it in a communication to Check Point pursuant to the Narrowing Order because many of the products now contained in the Infringement Contentions are actually marketing terms, packages of products, or broad product categories. *Id.*; Finjan-Check Point – Identification Email ("Identification Email") attached as Ex. A to Roberts Decl. [Dkt. No. 55-19]. According to Check Point, rather than organize its charts to accuse the specific software or instrumentalities listed in the Identification Email, Finjan has instead added previously unidentified software, physical appliances, unspecified servers and devices that might interact with them, and a variety of overarching marketing terms and general "technologies" that it has then grouped to assert that some or all of these things infringe in one or more unspecified combinations. *Id.* at 8; Initial Disclosure.

Patent Local Rule 3-1(c) requires an accusing party to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L. R. 3-1(c). The accusing party "must compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920, at *2 (N.D. Cal. Apr. 2, 2015). While under certain circumstances a plaintiff may use a single chart to chart a number of representative products, plaintiff must still, at a minimum, "chart a single product against all elements." *Cap Co. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 4734951, at 2* (N.D. Cal. Aug. 10, 2015). A plaintiff does not satisfy this requirement by "mixing and matching between different accused products" in its claim charts, as "[i]nfringement cannot be shown by a muddled hash of elements from different products." *Id.* Combination claim charts (whereby the party asserting infringement describes how multiple products infringe the asserted patent(s) in a single chart) can provide the required specificity under Patent Local Rule 3–1(c), if

5

each accused product allegedly infringes in the same way. *See Creagri, Inc. v. Pinnaclife Inc.*, LLC, No. 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (finding a single claim chart for multiple accused products sufficient where the plaintiff specified that each product contained the same chemical compound, which plaintiff asserted was the infringing element of each of the identified products).

Using Check Point's Network Security group as an example, in its Identification Email Finjan accused eleven Network Security Blades. Mot. at 7; Identification Email. But in its Initial Disclosure and Infringement Contentions, Finjan identified what Check Point argues are eight products, two technologies used by the eight products, twelve blades, nearly 100 devices, types of devices, and "virtual devices" that allegedly use some unspecified combination of the above "technologies" and blades, and two open ended catch-all categories consisting of "all supporting servers, cloud infrastructure, feeds, or other component utilized for the above features" and "those releases supported by R76 and later." *Id.* at 7-8. Check Point's Senior Architect Tamir Zegman has submitted a declaration that the various network security blades are modular software programs that are sold in various bundles and marketed with names such as "Next Generation Threat Prevention" and "Threat Prevention & Sandblast." Zegman Decl. at ¶ 4. As the products named by Finjan are bundles and packages of specific blades (in the Network Security Products context) or other software, Check Point argues that it would crystalize Finjan's infringement contentions to organize its charts by the instrumentalities listed in its Initial Disclosure that allegedly infringe on its patents rather than the current mashup of instrumentalities, bundles, and packages represented by Check Point's marketing terms. Reply [Dkt. No. 69-4] at 1-2.

In opposition, Finjan contends that its groupings are proper because the accused products contain common infringing components, such as common accused engines or features, and consequently infringe in the same way. Oppo. at 15. Finjan cites *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (N.D. Cal. Feb. 15, 2017) but as there was no written order in that case, it is of little persuasive value here. It argues that its groupings are warranted because Check Point groups its products differently on its website and at the source code level. *Id.* It also characterizes Check Point's arguments about the network blades as a red herring because they are bundled

6

together, share source code modules, and run on the same engine and that Check Point's citation to *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) and *Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1-2 are inapposite; while these two cases may not be factually analogous in a way that is helpful to Check Point's argument, neither do they support Finjan's current groupings.

I find that Check Point's request that Finjan organize its infringement contentions by the underlying instrumentalities will assist both the parties and me in determining precisely how Check Point's products do or do not infringe on Finjan's patents and will aid Finjan's efforts to provide specific source code citations. I expect that requiring the infringement contentions to be organized in this way will cure the source code citation deficiencies as identified by Check Point—as I discuss below, that the underlying instrumentalities might share source code modules or run on the same engine does not relieve Finjan of its duty to cite to the source code with specificity. Appendix A to Mot. [Dkt. No. 55-1]. If Finjan believes that Check Point's underlying instrumentalities infringe in combination, Finjan must specify the combination. It may be true that Check Point sells its products to consumers in bundles, but it will streamline this litigation to determine which components of each bundle infringe.

This direction does not prejudice Finjan. If one of Check Point's instrumentalities is found to be infringing, it should be relatively simple to determine what products and bundles the instrumentality was included in and to calculate damages from there. This approach is consistent with the purpose of Patent Local Rules to make the litigation process more efficient and discovery more streamlined. *Maxim Integrated Prods.*, 2010 WL 1135762, at *2; *Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1.

### B. Pinpoint Source Code Citations

Pursuant to my Narrowing Order, Finjan is required to serve its Infringement Contentions with pinpoint source code citations. Narrowing Order at 2. Check Point complains that Finjan's source code citations are inadequate and violate my Narrowing Order and the Patent Local Rules. Mot. at 16-18, 19-23. In particular, Check Point contends that Finjan fails to provide source code citations for 25 out of 42 accused instrumentalities, cites to sets of source code

organized under vague functional headers that could point to multiple instrumentalities, provides no information or explanation as to how the code relates to specific limitation language, and cites the same sets of source code repeatedly across different asserted claims and patents. *Id.* Because of these deficiencies, Check Point argues, it is impossible to tell what Finjan's infringement theory is or which citations Finjan intends to rely on for each limitation. *Id.* at 19-20.

In opposition, Finjan contends that its infringement contentions are sufficient to disclose its infringement theories because it provides an overall infringement analysis that includes both source code citations and public information, such as marketing literature and website screenshots that explain how Check Point's products work. Oppo. at 16-23. Finjan states that the structure and organization of Check Point's source code appears to limit Finjan's ability to map source code packages to specific instrumentalities. *Id.* It argues that it has provided the required source code, that Check Point's argument has no basis, and that it is not required to provide source code citations for every single feature of every claim element. *Id.* Finally, Finjan explains that the same source code is cited across multiple charts because of similarities in the claim language, accused technologies and underlying source code. *Id.*

Patent Local Rule 3-1(c) requires plaintiff to provide a chart "identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality[.]" The purpose of Rule 3-1 is "to require a plaintiff to crystalize its theory of the case and patent claims." *InterTrust Tech. Corp. v. Microsoft Corp.*, 2003 WL 23120174, at *8 (C.D. Cal. Dec. 1, 2003*).* "At the Patent Local Rule 3-1 Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *Id.* at *3. This burden cannot be met simply by parroting claim language or through reference screenshots or website content. *See Digital Reg of Texas, LLC v. Adobe Systems Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 3361241, *4 (N.D. Cal. Jul. 3, 2013) (infringement contentions that "parrot" claim language and "incorporate [] screen slots in lieu of explanatory text" are improper because they leave defendants "to guess what particular system (or aspect of a particular system) [the patentee] is accusing of meeting each limitation."). Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee

8

must provide "pinpoint citations" to the code identifying the location of each limitation. *See Big Baboon Corp. v. Dell, Inc.*, 723 F.Supp.2d 1224, 1228 (C.D. Cal. 2010).

Finjan's pinpoint source code citations, even viewed along with the public information cited, do not meet the required level of specificity, particularly to "where and how each limitation of each asserted claim is found within each Accused Instrumentality" as required by the Patent Local Rules. Check Point correctly notes that under each claim limitation, Finjan cites multiple sets of source code, often with little or no explanation for which set of citations relate to the relevant claim limitation. For example, in Finjan's claim chart for the U.S. 7,418,731 Patent ("'731 patent") against the "Network Security Products", Finjan cites to anywhere between 12-38 sets of source code for each claim limitation. Zegman Decl. at ¶ 28; Roberts Decl. Ex. G. Each set has only a vague functional header, such as "[t]hese files implement a Database schema manager." Roberts Decl. Ex. G, at 198-211. Most (if not all) of the set headers are not tethered to the actual language used in the claim limitation and do not explain how any particular set of source code practices the asserted claim limitation. *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, No. 14-cv-03009, 2016 WL 6762573, at *3 (C.D. Cal. June 15, 2016) (requiring citation to source code that practices claim element).

Contrary to Finjan's assertions, the public information does not help map Finjan's source code citations to a claim limitation nor assist the reader in understanding Finjan's infringement theories. The public information is largely comprised of generic marketing materials and screenshots of the type routinely rejected by courts in this district. *Proofpoint*, 2015 WL 1517920, at *6 (finding generic marketing literature and screenshots with no explanation do not meet the level of specificity required by the Patent Local Rules). Further, Finjan simply parrots claim language without identifying any particular supporting language in its sources or linking the cited sources to particular source code. For example, Finjan cites twenty pages of screenshots and asserts that virtually every product in each screenshot meets the claim limitation. Roberts Decl. Ex. G. at 179-198. This does not rise to the specificity required by the Patent Local Rules. *See* Pat. L.R. 3-1(c) (requiring the patentee to identify "the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function); *see also Digital Reg of Texas*, 2013

WL 3361241 at *4. If the cited materials contain information necessary to understand Finjan's infringement theories, Finjan must identify the particular supporting language in those sources and explain how that language fits into Finjan's theory of infringement. *Proofpoint*, 2015 WL 1517920 at *6.

The Claim Chart for limitation 1b of the '731 Patent on Check Point's "Network Security Products" is illustrative. It discloses:

> [A] scanner for scanning incoming files from the Internet and deriving security profiles for the incoming files, wherein each of the security profiles comprises a list of computer commands that a corresponding one of the incoming files is programmed to perform.

Roberts Decl. Ex. G at 28.

To satisfy my Narrowing Order and Patent Local Rule 3-1(c), Finjan was required to identify what structure, act, or material in the "Network Security Products" infringes each claim limitation and to provide pinpoint source code citations that practice the claim limitation. Finjan states that Claim 1b requires multiple components to practice its scanning function, such as "obtaining files," "analyzing files," and "generating reports or security profiles." Oppo. at 21-22. Assuming this is true, Finjan would be required to identify what source code is "obtaining files," "analyzing files," and "generating reports or security profiles" in the allegedly infringing Network Security Products, yet Finjan's chart identifies none of these things. The words "obtaining files," "analyzing files," and "generating reports or security profiles" do not appear at all. Roberts Decl. Ex. G at 59-72. The marketing materials and screenshots Finjan cites only describe how the Network Security Products work in a general sense and virtually "parrot" the claim language, without tying it to any source code citations or specific information in those screenshots that match the specific claim components identified in Claim 1b[1]. *Id.* at 28-59.

Finjan's theory of infringement as to each specific component of Claim 1b may be hidden

---

[1] For example, Finjan's public information recites: "The images below show that the Anti-Spam & Email Security software blade also checks for malwares which involves scanning incoming files from the Internet and deriving security profiles for the incoming files, wherein each of the security profiles comprises a list of computer commands." Roberts Decl. Ex. G at 45. (internal quotation marks omitted).

10

somewhere in those screenshots and sets of source code, but it is not readily apparent it its current state.  It is Finjan's obligation to identify the particular claim components in each claim, map those components onto the features of the allegedly infringing products, and pinpoint cite source code that practices that component.  *See Shared Memory Graphics*, 821 F. Supp. 2d at 1025; *Proofpoint*, 2015 WL 1517920 at *7; *Kinglite Holdings*, 2016 WL 6762573, at *3.[2]

Even more troublingly, many of the same sets of source code within the same product category are cited across different claims of different patents.  Finjan explains that the same source code is cited across multiple charts because the accused technologies and the underlying source code are the same and the claim languages are similar.  Oppo. at 16-23.  This does not help.  Finjan cites to the same sets of source code for different claims.  It is not clear how source code to "implement a TE add file tool" meets both claim limitations as a "computer gateway for an intranet of computers" and "retrieving a requested file from the Internet."  Roberts Decl. Ex. G at 1-27, 178-211.  Moreover, if Finjan believes that the shared source code meets the claim limitation, it is obligated to say so explicitly in its infringement contentions.  Neither Check Point nor I should be required to guess which part of the source code citations (either shared or not shared) allegedly infringe each claim element.  *See Digital Reg of Texas*, 2013 WL 3361241 at *4.

Finjan argues that Check Point failed to produce internal technical documents which limited its ability to map source code packages to specific instrumentality.  Oppo. at 17-18.  The argument is not well-taken.  On October 29, 2018, two days before the deadline to serve its infringement contentions, Finjan requested production of documents it identified on Check Point's source code computer.  Roberts Decl. Ex. B.  While it is not clear whether Finjan had access to those technical documents on the source code computer, Finjan did not move to compel or ask for additional time to prepare its infringement contentions.  If the technical documents are critical for Finjan to provide adequate pinpoint source code citations, it should not have waited so long to request them.  Finjan had raised the same argument in other cases in this district to excuse its failure to serve compliant infringement contentions.  *See Finjan Inc. v. Sophos, Inc.*, No. 14-cv-

---

[2] Finjan also attempts to bolster its contentions by citing to the claim chart for Claim 1b of Patent No. 6,154,844.  That claim chart is deficient for the same reason.

11

01197-WHO, 2015 WL 5012679, at *2 (N.D. Cal. Aug. 24, 2015); *Proofpoint*, 2015 WL 1517920 at *5. This raises doubts as to whether the requested technical documents would allow Finjan to provide adequate source code citations. To the extent that this is in actuality a discovery dispute, Finjan should have followed the procedures outlined in my Standing Order for Civil Cases.

Next, Finjan contends that it has complied with Patent Local Rules because it made a good faith effort to provide the most relevant citations possible given the information that was available to it and it is not required to provide source code citations of every single feature for every claim element. Oppo. at 19-20. To support its position, Finjan cites to *Adobe Systems Incorporated v. Wowza Media Systems*, No. 11-cv-02243-JST, 2014 WL 709865, at *16 (N.D. Cal. Feb. 23, 2014). *Adobe* is clearly distinguishable as in that case the court held that the plaintiff was not required to "list every bit of WMS source code that supports it" because the plaintiff had already adequately disclosed its infringement theory. *Id.* Here, Finjan has not yet adequately disclosed its infringement theories. I agree with Check Point that the way Finjan frames its source code citations creates incalculable alternatives of infringement theories and it is next to impossible to know what its infringement theories are. *See* Order Granting Motion to Enforce Order on Motion to Compel; Vacating Order to Show Cause; and Granting Motion to Enlarge Deadlines at 4, *Finjan Inc. v. Zscaler, Inc.*, No.17-cv-06946-JST (N.D. Cal. Jan. 28, 2019) (ECF. No. 110) (finding Finjan failed to crystallize its theories when its infringement contentions set forth an incalculable combination of infringement theories).

Finjan must provide pinpoint source code citations that show the "where and how each limitation of each asserted claim is found within each Accused Instrumentality" as required by the Patent Local Rules.

### C. Open-Ended Contentions

Check Point argues that Finjan's Infringement Contentions contain open-ended citations to exemplary products in violation of my Narrowing Order. Mot. at 18. As an example, Check Point cites to a statement from Finjan's Initial Disclosure that the accused products include "all supporting servers, cloud infrastructure, feeds, or other component [sic] utilized for the above features," "those releases supported by R76 and later (including R76, R77, R78, R79, R80)." *Id.*

12

citing Initial Disclosures at 4-5, Ex. A. Check Point also cites to the following paragraph:

> The Appendices are incorporated by reference as if fully set forth herein. Any citations included in the Appendices are exemplary. In the attached Appendices, Finjan has subdivided each Asserted Claim to explain where the respective Accused Instrumentalities and other products/services meet each claim element. The subdivisions in the Appendices are not to be taken as an indication of the boundaries of claim elements with respect to doctrine of equivalents, or any other issue. Additionally, the Accused Instrumentalities and Defendant's other products/services may infringe the Asserted Claims in multiple ways.

Reply citing Initial Disclosures at 4-5. Check Point contends that this paragraph shows that Finjan is stating that the infringement theories in its contentions are exemplary and non-limiting *Id.*

Finjan responds that Check Point mischaracterizes its Initial Disclosures and that it has identified a finite list of products which leaves no room for ambiguity. Oppo. at 11-13. It argues that Check Point's example on the different releases (R76, R77, etc.) is not open ended because it shows that all versions of the product, from R76 on, include the accused functionality and that the "all supporting servers" language is not a place holder for additional products but rather serves as a clarification that the accused product includes functionality that utilizes Check Point's cloud services. *Id.* For example, Finjan states, Check Point's products may send files to its servers in the cloud for scanning as part of the product's built-in functionality, and that these servers are properly understood to be part of the product. *Id.* Finjan also contends that the above paragraph speaks only to how the claim language is divided into different rows in the charts, and that this division is not an admission as to how an element must be divided. *Id.* It asserts that its statement that "[a]ny citations in the Appendices are exemplary" means only that Finjan is not citing every piece of evidence that could support its position. *Id.*

Check Point is correct that the portions of the Initial disclosures that refer to the release versions are ambiguous. It is unclear which releases apply to which products given the voluminous lists provided by Finjan. Initial Disclosures Ex. A. I am less concerned though, with the language in the definition on the "supporting servers, cloud infrastructure, feeds, or other component" because Finjan is required to point to the relevant source code that would allow the allegedly infringing product to, as in Finjan's example, send files to the cloud. While this

13

language could be more specific, it does not lessen Finjan's responsibilities to cite to the relevant source code with specificity in order to crystalize its claims under the Patent Local Rules and my Narrowing Order. With regard to Finjan's explanation for the above quoted paragraph, Finjan will be held to its statement that it does not interpret this language to reserve any otherwise undisclosed theories of infringement.

### D. Previously-Unidentified Instrumentalities

Check Point argues that Finjan has added 16 instrumentalities to its infringement contentions that violate my Narrowing Order because they were not initially listed in Finjan's Identification Email. Mot. at 24-25. The Narrowing Order states that "Finjan may, after substantive discovery commences, amend the Identification to allege infringement by additional Check Point products for good cause shown." Narrowing Order at 1. The Identification Email identified 36 products but of those 36, only 26 were accused in Finjan's Infringement Contentions. Identification Email at 1-2; Initial Disclosures Ex. A; Roberts Decl. at ¶ 8. To the 26 previously accused instrumentalities, Finjan has added 16 previously-unidentified instrumentalities. *Id.* Check Point states that Finjan has failed to cite to source code for 14 of the 16 previously-unidentified instrumentalities even though Check Point produced the source code for all 16 of them. Zegman Decl. at ¶ 8. Check Point asks that I strike the infringement contentions that lack adequate source code. Mot. at 16. Finjan states that it relied on an incomplete list provided by Check Point, and that these products are combinations of the products that Check Point had already identified. Oppo. at 14 n.4.

Finjan failed to comply with my Narrowing Order by not showing good cause for the addition of the previously-unidentified instrumentalities in its Identification Email. However, it may add the previously-unidentified instrumentalities to the extent that they are consistent with this order's guidance on how Finjan must structure its claim charts and with the required pinpoint source code citations.

## II. RELIEF SOUGHT

### E. Motion to Strike

In this district, motions to strike initial infringement contentions are frequently treated as

motions to compel amendment of the infringement contentions. *FusionArc, Inc. v. Solidus Networks, Inc.*, No. 06-cv-06760 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) ("Case precedent recognizes such 'motions to strike' as requests that plaintiffs be compelled to *amend* their preliminary contentions to provide additional information."); *Blue Spike v. Adobe Sys.*, 14-cv-01647-YGR (JSC), 2015 WL 335842, at *4 (N.D. Cal. Jan. 26, 2015) ("Where appropriate, courts treat a motion to strike as a motion to compel amendment to include additional information infringement contentions."). Here, Check Point seeks to strike Finjan's infringement contentions that violate the Narrowing Order and Patent Local Rules and to allow Finjan to amend only the 17 instrumentalities for which it provided source code. Mot. at 16, 25.

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Proofpoint*, 2015 WL 1517920 at *12. While some courts have required a party asserting infringement to show good cause before being granted leave to amend initial contentions, many simply compel the asserting party to file compliant infringement contentions. *Compare Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012) (striking infringement contentions without leave where asserting party made only vague allegations "on information and belief" and implicitly conceded that it did not have any additional factual support for its claims), *with Bender v. Maxim Integrated Prods.*, 2010 WL 1135762, at *1 (denying motion to strike and granting motion to compel infringement contentions that comply with Patent Local Rule 3-1). This is the first time Check Point has moved to strike Finjan's infringement contentions, and although the contentions are clearly deficient, it appears that Finjan may be able to remedy many of the identified issues with amendment. Striking Finjan's infringement contentions with prejudice is not warranted at this time.

Finjan is ordered to serve Amended Infringement Contentions, subject to the guidance of this order and in compliance with the Patent Local Rules by April 1, 2019.

### F. Amendment of Claim Construction Schedule

Check Point has moved to amend the claim construction schedule and extend the deadlines previously set in my Narrowing Order by 60 days. [Dkt. No. 58]. Check Point argues that the

15

complexity of claim construction will be reduced if its Motion to Strike is granted. Finjan opposes, stating that Check Point cannot show any deficiencies because its motion to strike has not been heard, the motion to strike lacks merit, and that delay would prejudice Finjan. [Dkt. No. 59].

As the Check Point's motion to strike has been heard and granted in part, I also grant its motion to amend the claim construction schedule. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-cv-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998) (requiring a party to produce infringement contentions is designed specifically "to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction.") (internal quotation marks omitted). As discussed at the hearing, the claim construction schedule is extended by 45 days.

The former claim construction schedule and the amended schedule is listed below.

| Event | Former Deadline | Amended Deadline |
|---|---|---|
| Date to Serve Amended Infringement Contentions | N/A | April 1, 2019 |
| Responsive Damage Contentions | No later than 30 days after service of the Damages Contentions | April 15, 2019 |
| Claim Construction Discovery Cut-Off | March 11, 2019 | April 25, 2019 |
| Plaintiff's Opening Claim Construction Brief | March 25, 2019 | May 9, 2019 |
| Defendants' Responsive Claim Construction Brief | April 8, 2019 | May 23, 2019 |
| Plaintiff's Reply Claim Construction Brief | April 15, 2019 | May 30, 2019 |
| Tutorial | April 26, 2019, at 10:00 a.m. | June 14, 2019 at 10:00 a.m. |
| Claim Construction Hearing | May 3, 2019, at 10:00 a.m. | June 21, 2019 at 10:00 a.m. |

### III. ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL

The parties filed four administrative motions to file under seal in conjunction with the motion to strike. [Dkt. Nos. 54, 60, 69, 75].

16

On January 3, 2019, Check Point moved to seal a number of attachments to its motion to strike reflecting and related to its "highly-confidential, commercially-sensitive, and proprietary trade secret source code that is not publicly-known and would cause Check Point significant competitive harm should it be made public." [Dkt. No. 54]. Check Point also states that "given the nature of the products at issue (network and computer security products), disclosure of the information in these documents could compromise the security of computers and networks protected by such products." *Id.* at 2. On January 17, 2019, Finjan moved to seal portions of its Opposition and the Declaration of Linjun Xu, as well as the exhibits constituting the infringement contention tables pursuant to Check Point's identification of its confidential source code. [Dkt. No. 60]. Check Point then moved to file portions of its Reply, Amended Reply, and the Supplemental Declaration of Tamir Zegman filed in support of Check Point's Reply for the same reasons as above. [Dkt. Nos. 69, 75].

Records attached to non-dispositive motions are not subject to the strong presumption of access. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). Because the documents attached to non-dispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of the Federal Rules of Civil Procedure Rule 26(c). *Id.* (internal quotation marks omitted). The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (internal quotation marks omitted); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

I find that the parties have shown good cause to file the requested documents under seal and have narrowly tailored their requests to confidential information.

**CONCLUSION**

Check Point's motion to strike is granted in part. Finjan must amend its infringement contentions as described in this Order and organize its claim charts around the underlying

17

instrumentalities, rather than the products and bundles constituted by said instrumentalities. Finjan is also required to provide pinpoint source code citations that show the "where" and "how" each limitation of each asserted claim is found within each underlying instrumentality.

Check Point's motion to amend the claim construction schedule is granted and the dates are changed as described above.

The parties' motions to seal are granted.

**IT IS SO ORDERED.**

Dated: February 27, 2019



William H. Orrick
United States District Judge