Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

| | |
|---|---|
| FINJAN, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. C 18-2621 WHO |
| ) | |
| CHECK POINT SOFTWARE TECHNOLOGIES, ) | |
| INC. ) | |
| ) | San Francisco, California |
| Defendant. ) | Wednesday |
| ) | February 13, 2019 |
| ) | 2:00 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          KRAMER LEVIN NAFTALIS & FRANKEL LLP
                            990 Marsh Road
                            Menlo Park, CA 94025
                       BY:  **JAMES R. HANNAH, ESQ.**
                            **KRISTOPHER BENJAMIN KASTENS, ESQ.**


**For Defendant:**          ORRICK, HERRINGTON & SUTCLIFFE LLP
                            405 Howard Street
                            San Francisco, CA 94105
                       BY:  **CLEMENT S. ROBERTS, ESQ.**

                            ORRICK, HERRINGTON & SUTCLIFFE
                            1000 Marsh Road
                            Menlo Park, California  94025
                       BY:  **EVAN DAVID BREWER, ESQ.**


*Reported By:*   Debra L. Pas, CSR 11916, CRR, RMR, RPR
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

| | |
|---|---|
| 1 | **Wednesday - February 13, 2019**                              **2:14 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |

4   **THE CLERK:** Calling Civil Matter 18-2621, Finjan, Incorporated versus Check Point Software Technologies, Incorporated.

7   Counsel, please come forward and state your appearance.

8   **MR. ROBERTS:** Good morning, Your Honor. Clem Roberts from Orrick Herrington for the defendant Check Point Software Technologies.

11  **MR. HANNAH:** Good morning, Your Honor. James Hannah on behalf of Finjan, and with me is Chris Kastens. He will be handling the majority of the argument today.

14  **THE COURT:** Mr. Hannah, I've seen you before.

15  **MR. HANNAH:** Yes. Nice to see you, Your Honor.

16  **THE COURT:** Nice to see you. I hope that my comment at the first case management session was passed on to you.

18  **MR. HANNAH:** It was, Your Honor. And I have to say that at every subsequent trial I have made sure not to make any assumptions any more and definitely took it to heart. So thank you, your Honor.

22  **THE COURT:** All right. So let me tell you what I think about the motion. I'm inclined to grant in almost all ways the motion to strike.

25  Finjan needs to organize its infringement contentions by

1  the underlying instrumentalities to crystalize the contentions.
2  If the underlying instrumentalities infringe in combination,
3  the combination needs to be specified.  Pinpoint citations need
4  to be specific, particularly to where and how each limitation
5  of each asserted claim is found within the accused
6  instrumentality.
7      It's not sufficient to cite multiple sets of source code
8  under each claim limitation without explanation.  The public
9  information that's cited isn't sufficient to cure the problem.
10     And I don't think blaming Check Point is a useful way to
11 resolve this problem.  If there was a problem in getting
12 technical documents, you shouldn't have waited until the last
13 two days before the deadline to serve contentions.
14     And I think, Mr. Hannah, we had something similar in
15 that -- the trial before.  I think a similar kind of issue came
16 up.
17     In any event, regarding the open-ended contentions, Finjan
18 can't reserve any undisclosed theories of infringement.  It
19 needs to cite the relevant source code to crystallize its
20 claims.
21     So as long as Finjan corrects all of those things and
22 identifies the source code properly, I'm not going to strike
23 any new instrumentalities.  But everything has to be laid out
24 in a very clear manner, which it doesn't appear that it has
25 been.

1      So I'm happy to hear argument with respect to that.

2            **MR. KASTENS:**  Your Honor, I would just respectfully
3    request that we have an opportunity to depose their engineer,
4    who was the one who said that we didn't cite source code for
5    particular products.  Our understanding is that we did cite
6    source code for the products and anything that we had accused.
7    So we would like to determine the basis that they made that
8    representation.  A lot of his analysis was a black box where he
9    just said they didn't cite source code for these following
10   products without explaining.

11         I think as we tried to lay out in our brief, they have
12   usually just one directory for all the source code.  They will
13   have one software package that they give to their customers.
14   The customers can then enable different features in that.  They
15   call those different features products and they rely on a lot
16   of source code that is within the same directory and is not
17   labeled as being related to any product.  So we would just ask
18   to have the opportunity to depose somebody, a 30(b)(6) witness,
19   regarding the structure of their source code and then we can
20   supplement within 45 days of that to address that.

21           **THE COURT:**  Mr. Roberts.

22           **MR. ROBERTS:**  Yeah.  So this is difficult for me
23   because the -- we addressed this at the very beginning of the
24   case, and we said we would like contentions that give us the
25   theories of the case.  Those are necessary, among other things,

```
 1   to prepare witnesses for deposition.
 2        I mean, saying you get nothing from us in this giant
 3   confusing mass and then we want to take the deposition where
 4   you have no way to prepare the guy to even know what the
 5   theories are, and then after I've taken your 30(b)(6)
 6   witness -- which, by the way, they only said they wanted the
 7   30(b)(6) for the first time yesterday.  That was the very first
 8   time.  This is now February, where they served an email -- by
 9   email, not even a notice -- where they said we want to take the
10   30(b)(6) depo.
11        So, I mean, on one hand, yeah, they ought to be able to
12   get some information about the products at some point, but the
13   initial contentions, what their theories are, I don't know that
14   they need to take the 30(b)(6) witness or the senior architect
15   in order to tell us what their infringement contentions are.
16   You always have good cause to amend if you disclose new things
17   afterwards.
18        But if they brought this case, they ought to be able to at
19   the outset say how we infringe and have some theory of it.
20   They've had months now with the source code.  They asked to
21   come back and see the source code on a Friday.  We said no
22   problem.  Then they came in and they saw it again on Monday.
23   That was two weeks ago.  Why are we now in February where all
24   of a sudden for the very first time, okay, now you got us.  Now
25   we want to take a whole bunch of discovery before we tell you
```

1   what our theories are.
2        So on one hand, Your Honor, I'm reluctant to say no, but
3   on the other hand, I sort of feel like they ought to give us
4   their theories and then take the deposition so I can adequately
5   prepare the witness.
6            **MR. KASTENS:**  Your Honor, I believe our theories are
7   what we -- our contentions for infringement are fully disclosed
8   within the charts.  If you're interested in something that is a
9   little bit more digestible and easier to understand, I think we
10  can abide by that, but what our contentions are is fully laid
11  out.
12       In their briefing, t hey just -- they completely ignore,
13  you know, the public information that we do where it points to
14  what we're accusing and then we follow with source code
15  citations to address those.
16       And then, you know, for the source code citations I would
17  just like to comment that we do identify specific files and
18  line numbers within those files.  A lot of time there is more
19  source code than multiple files that will enable certain
20  functionality or a component within the source code.  So that's
21  why we would have had laid it out like that to address.  I
22  don't think we did overarching source code citations.
23       I was at the case that you referenced for Mr. Hannah as
24  well.  I think the issue was there that we would cite whole
25  source code directories.  We have not done that.  We have cited

```
 1   specific source code files and had some narrative to describe
 2   what those files implement.
 3          MR. ROBERTS:  Can I respond to that as a factual
 4   matter, because I think it would be helpful.
 5          THE COURT:  Sure.
 6          MR. ROBERTS:  This is their Exhibit F, if I could
 7   hand this up.
 8          THE COURT:  Is this going to be meaningful to me,
 9   Mr. Roberts?
10          MR. ROBERTS:  I think so, I think so.
11      (Whereupon document was tendered to the Court.)
12          MR. ROBERTS:  So this is not an example I've chosen.
13   This is the example they chose in their opposition brief about
14   what they did that they thought was really good.  So this was
15   their cherry-picked example of the good job they did.
16      So if you turn to just page one, Your Honor, of Appendix
17   F-2, it lists by saying what the accused products are.  And you
18   can see it says, this is the second paragraph:
19          "For purposes of this chart Endpoint Enterprise
20       products include the following subscription services
21       or products."
22      And then there is a big long list of products.  "SandBlast
23   Agent package, Compliance package, Next Generation AV,
24   Protection package."  A whole bunch of other things.
25      And then it says it includes the following blades.  And
```

1  there is one, two, three, four, five, six, seven, eight, nine,
2  ten -- 12, 13 blades.
3      And then it says, it also is accusing:
4          "The use of cloud services which provide threat
5      intelligence feeds to Endpoint Enterprise products" --
6      so now we have a category of technology -- "and a
7      download or browser protection feature or similar
8      feature which blocks files before they are downloaded
9      to the end-user computer."
10     And then below that it says:
11         "As identified and described element by element
12     below Endpoint Enterprise products individually or in
13     combination with Check Point's cloud services,
14     footnote two, infringe the following claims."
15     And the footnote says that the cloud services, which is an
16 entire other chart with another 50 products in it, is
17 incorporated entirely by reference into this.
18     So the point here, Your Honor, is that just at the
19 beginning what we have is an amalgamation of products and an
20 amalgamation of charts.
21     If you look at the -- I think it's *GeoVector* case that
22 Your Honor, I'm sure, is familiar with, in that case -- this is
23 the exact same thing, but it's worse because they are
24 amalgamating a huge amount of products.
25     Now, opposing counsel said, well, we gave them specific

1  source code citations.  If I could ask Your Honor to look down
2  in this, starting at -- I want to start at limitation B-1,
3  because this is the one that was used.  This is Page 10 of this
4  first thing.  This is "receiving by an inspector a
5  downloadable," starting on Page 10.
6      And then if you look down, the source code citations begin
7  on Page 19.  And you will see the source code citations take up
8  19, 20, 21, 22, 23, 24, 25, 26 and half of 27.
9      And what they said in their brief, in their opposition, is
10 that if you turn to Page 25, in the middle of the page there is
11 a statement that says "This file implements a Chrome extension
12 manager" and it cites the file.  And they say voila, pinpoint
13 source code citation.
14     What they've done is they have given me literally 90
15 citations and then in the brief they said, oh, you should have
16 known that this was the needle we were pointing at.  But that's
17 impossible because, among other things, all 90 of these are
18 copied into every single limitation of every single claim,
19 including the one that they now point to.
20     So when opposing counsel says, we gave them very clear
21 descriptions of what the source code was, we weren't citing to
22 whole directories.  They cited to 90 entire files and then they
23 cited those same 90 files for every limitation.  There is no
24 way for me to know what they pointed to.
25     And how am I supposed to prepare Mr. Zegman.  This is

1  millions of lines of code; right?  How am I supposed to prepare
2  anyone to testify about this stuff?  Unless we have some
3  reasonably cognizable infringement theory, I don't know how I
4  prepare a witness.
5           **MR. KASTENS:**  Can I respond, Your Honor?
6           **THE COURT:**  Please.  Because I don't know either.
7           **MR. KASTENS:**  So, your Honor, what we've asked is
8  their -- what their witnesses already claim to know, which is
9  these products -- like, what we're contending in our products
10 mapped to, like, are within the source code directories.  He's
11 already submitted a declaration saying, hey, what you've cited
12 don't correspond to what we're saying are these specific
13 products.
14      That's the deposition that we would take, is give us the
15 basis for why you're saying that.  Because we spent a lot of
16 time to put these together and we've gone through the source
17 code, gone through the public documents.  We organized it, how
18 they represent this stuff to their customers and it matches
19 with how it's organized within the source code.
20      So that's what we would request, is just the basis of
21 these tables that he puts in here where he says, oh, you don't
22 have these four things, but you have these five things, and he
23 doesn't actually say why.  He just says that these aren't --
24 the source code for these aren't cited.  That's it.
25      So I don't see why -- he's already declared that, so I

1  don't see any reason that he wouldn't be able to explain how he
2  reached those conclusions in a deposition.
3              **THE COURT:**  So the problem that I see with this --
4  and I'm not sure whether it's an actual problem or not, so you
5  have can tell me that -- is the cart before the horse problem.
6  You've got to lay out your contentions and, and it's not up to
7  Check Point to educate you in a way that will help you build
8  your case at the outset unless, you know, in the course of
9  discovery and for good cause and things could change.
10        So I am sympathetic to needing some sort of factual
11 background so that you can clarify your claims, but I'm not
12 interested in sort of substantive discovery.  And I don't know
13 how to draw that line.
14             **MR. ROBERTS:**  We gave them -- I mean, your Honor,
15 they have the code, which I believe a person of ordinary skill
16 in the art spending a bunch of time ought to be able to read.
17 We gave them all of the manuals for the product.  There is a
18 thousand confidential documents that are on there that are
19 responsive.  They have said, oh, we need more documents, but
20 they never said specifically what documents they need.  Like, I
21 still don't know what additional documents they claim to need.
22         So I don't -- I mean, my problem is I worry that this is
23 all just a smoke screen.  And the reason I have that concern is
24 that we see the same pattern in every Finjan case.  We put in a
25 supplemental authority, the decision from Judge Tigar, they are

1  on their third set of contentions and they still don't know
2  what they're talking about.  And here we are, like, heading
3  into claim construction.  I have to pick the five terms that
4  are most important to me and I don't even know what the
5  theories are.  How am I supposed to pick those five terms and
6  then come to court and say, yeah, these are what the
7  constructions ought to be, because I don't even know.
8          **THE COURT:**  Okay.  So what's your proposal to help
9  get past this place, Mr. Roberts?
10         **MR. ROBERTS:**  My proposal is that -- is exactly the
11 order that Your Honor read at the outset, which is that they
12 give us adequate infringement contentions that satisfy the
13 local rules in the ways that you said.
14     After that, if they want to take a deposition and they
15 believe that they have good cause to amend because now they
16 know something that they didn't know before, fine.  Fine.
17 That's -- that's the way it's supposed to work.
18     They have had -- before doing their initial infringement
19 contentions in the case they had the source code.  That's not
20 usually the case.  Usually you have to do your infringement
21 contentions without the source code.  But here we gave them all
22 of the source code.  I gave them a list of products.  I pointed
23 them to the price list on the website and said here are the
24 products.  Here is what we think could possibly be at issue in
25 the case.  That's not every product we made.  But I said, here

```
 1  is what we think are possibility at issue in the case.
 2       I have been trying to help them in exactly this way.  I
 3  mean. not too much.  We're opposing counsel, but I have been
 4  trying to remove the excuse --
 5           THE COURT:  You have been very helpful throughout
 6  this entire procedure.
 7           MR. ROBERTS:  I mean, I have been trying to remove
 8  the excuses; right?  I have been trying to say:  Here, have the
 9  source code.  Take the time you need.  Here is what we think is
10  at issue.  If you disagree, if there are other things, let us
11  know.
12       So I have been trying to be favor about it, is what I
13  would say.
14           THE COURT:  Mr. Kastens.
15           MR. KASTENS:  Your Honor, I think what we're asking
16  for is pretty clear.  We just -- we want a deposition where
17  their person will say, okay, here are -- what we say in
18  marketing are different products that we sell.  And here in
19  this source code that's one folder where -- that is not labeled
20  by any of the products names that they sell, where the source
21  code is for those products.  That shouldn't -- I mean, that
22  doesn't require anything regarding our contentions to identify.
23  He's already done that in his declaration.
24       He submitted a declaration which he said, you didn't
25  identify source code for these products.  We think we did.  So
```

*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

1  he doesn't say why he says that.  He just said we didn't.  And
2  so we're just going to go through and have him explain, okay,
3  where are you saying the source code for this product is?  You
4  know, it's -- you know, you say it wasn't cited in here.  Can
5  you identify where it is?
6              **THE COURT:**  Here is what we're going to do.  I'm
7  going to stick with my tentative and have you amend in the best
8  way that you can given the information you have.
9              Then I want you to meet-and-confer with Mr. Roberts and
10 see whether you can agree on anything that will provide -- if
11 Mr. Roberts still claims that the contentions are insufficient,
12 what it is that can happen in order to get over the -- this
13 particular hurdle.  If you're unsuccessful, then I want you to
14 send -- send me a five page joint letter and append to it the
15 questions that you would like to ask a 30(b)(6) witness.  And
16 then -- or the places where you're in disagreement, and I'll
17 decide that.
18             **MR. ROBERTS:**  Very good.  May I address one final
19 point, Your Honor, which is for the products that were not
20 cited, meaning they provided no source code citations for them,
21 are those products in the case or not in the case?  Can they
22 amend and accuse and expand and add a whole bunch of new
23 products to the case if they haven't given us any citations to
24 the source code here?
25             **THE COURT:**  Well, you just told me you didn't know

1  what they had given you.  So the answer is, if they give you --
2  if they can specify what this case is about and what they are
3  going after, that's okay this time around.
4          **MR. ROBERTS:**  Okay.
5          **THE COURT:**  Okay.  So how quickly can you amend?
6          **MR. KASTENS:**  Your Honor, we've served
7  interrogatories requesting that they, a couple weeks ago, match
8  the source code to the products that are accused in this case.
9  We can do it within 45 days of getting a response where we
10 could respond to that discovery, I believe.
11         **MR. ROBERTS:**  That's extraordinary, because what he's
12 just saying is they can't even give infringement contentions
13 that meet the local rules or that satisfy the Court's order
14 until we answer discovery and map all of the code to all of the
15 products for them.  That's extraordinary.
16         **MR. KASTENS:**  We're just --
17         **MR. ROBERTS:**  Why is it that -- I apologize.  I don't
18 mean to interrupt you.
19      Why is it -- why is it that I have to do all of this work
20 for them before I even know what it is I'm accused of
21 infringing?
22         **THE COURT:**  Well, you're in litigation.  That's one
23 reason.
24         **MR. KASTENS:**  I think he keeps kind of doing a straw
25 man argument of what I'm requesting.

1  So they say they have these 40 -- they say they have these
2  different products, okay.  What they are -- what we tried to
3  explain in our briefing is their source code directory where
4  they say are 40 products is one directory.  None of them are
5  labeled as a specific product.  We understand, based on the
6  functionality that they disclosed within their public
7  documents, that we've identified the source code corresponding
8  to those particular marketing names of their products, which
9  they are asking us to organize by.
10  So, but they -- all we're asking is you've said -- you've
11  already said that these source -- that you know which source
12  code matches up to allegedly which of these, you know,
13  different ways that you say that are products.  So just give us
14  that information.  That's all we ask for.
15  It's not asking for any analysis.  It's just why are you
16  saying that this source code, which looks like it, provides the
17  functionality for this product that you market under this
18  marketing name, why are you saying that the source code doesn't
19  actually go to that product.
20        **MR. ROBERTS:**  Right.  Teach me how the source code
21  works.
22        **MR. KASTENS:**  That's not how what I'm asking, Your
23  Honor.
24        **THE COURT:**  All right.  Mr. Roberts, what is your
25  proposal for how long Finjan gets?  Because what I'm going to

1  do is stop listening to both of you and send you out -- and
2  I'll send something out.
3          **MR. ROBERTS:**  I don't have a problem with 45 days.
4  My only problem really is the calendar.  And so what we had
5  done is submitted a motion suggesting that the claim
6  construction dates be pushed off.
7     So what I would propose is we actually just put a
8  tentative like pin, pause.  If they need 45 days, that's fine.
9  But let's just push the dates off by 45 days so that we're not
10 trying to make decisions without the information.
11         **THE COURT:**  I will grant that, that we're going to
12 get -- we've got to get over this hurdle.  And I'm going to
13 force you over the hurdle one way or another.
14         **MR. ROBERTS:**  Lovely.
15         **THE COURT:**  Okay.  Thanks for coming in.
16         **MR. ROBERTS:**  Thanks so much.
17         **MR. HANNAH:**  Thank you, Your Honor.
18      (Proceedings adjourned.)

**CERTIFICATE OF OFFICIAL REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, March 1, 2019