CLEMENT S. ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

VICKIE L. FEEMAN (STATE BAR NO. 177487)
vfeeman@orrick.com
FRANCES CHEEVER (STATE BAR NO. 287585)
fcheever@orrick.com
EVAN BREWER (State Bar No. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:   +1 650 614 7400
Facsimile:   +1 650 614 7401

*Attorneys for Defendants*
CHECK POINT SOFTWARE TECHNOLOGIES,
INC. and CHECK POINT SOFTWARE
TECHNOLOGIES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES, INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., an Israeli Limited Company,<br><br>　　　　　Defendant. | Case No. 3:18-cv-02621-WHO<br><br>**REPLY IN SUPPORT OF DEFENDANTS CHECK POINT SOFTWARE TECHNOLOGIES, INC. AND LTD.'S MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES**<br><br>Date:　　March 27, 2019<br>Time:　　2:00pm<br>Dept:　　Courtroom, 2, 17th Floor<br>Judge:　　Hon. William H. Orrick |

The Court's scheduling order does not include a deadline for amending pleadings, and none of Check Point's requested amendments will require modification of any other dates in the case schedule. Accordingly, granting Check Point leave to amend does not require modification of the schedule and Rule 15 governs Check Point's motion to amend. Under Rule 15, Check Point's motion should be granted because Finjan has not shown prejudice, undue delay, futility, or bad faith. Finjan cannot credibly argue prejudice because Check Point did not delay, and filed this motion while the case is still in its early stages. Finjan has not yet served adequate infringement contentions, so Check Point does not even know which products or product features are at issue in the case. There has been no claim construction briefing. There have been no depositions. Check Point Ltd. just served its responses to Finjan's first discovery requests. Discovery does not end until December 13, 2019, expert disclosures and discovery do not occur for another year, and trial is nearly two years away. Even the pleadings are not yet set as the Court recently granted Check Point leave to amend its prosecution laches defense. Given this schedule, Finjan has ample time to address the additional defenses. The few months Check Point took to sift through the mountain of evidence in this case to uncover the additional defenses, balanced against the complete lack of prejudice of adding those defenses at this early stage in the case, does not justify denying Check Point leave to amend.

**I.     CHECK POINT NEED NOT SHOW GOOD CAUSE.**

The Court should reject Finjan's effort to apply the "good cause" requirement of Rule 16 to Check Point's motion to amend. Rule 16 imposes a "good cause" requirement only for requests that would modify the case schedule. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"). Because the Court's scheduling order did not set a deadline to amend the pleadings, granting Check Point's motion for leave to amend does not require the Court to modify the case schedule. Accordingly, Check Point's motion should be governed by Rule 15, not Rule 16. *See Wroth v. City of Rohnert Park*, No. 17-CV-05339-JST, 2018 WL 6439120, at *2 (N.D. Cal. Dec. 7, 2018) ("The Court's scheduling order did not set a deadline to amend the pleadings. Accordingly, Federal Rule of Civil Procedure 15 applies to Plaintiffs' motion for leave to amend.") (internal citation omitted);

*California Envtl. Prot. Ass'n v. Sonoma Soil Builders*, LLC, No. 15-CV-04880-KAW, 2018 WL 1242252, at *2 (N.D. Cal. Mar. 9, 2018) ("Where, as here, the Court's scheduling orders do not set a deadline for amendments to the pleadings, a motion for leave to amend is evaluated under Federal Rule of Civil Procedure 15.") (quoting *Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2017 WL 2774382, at *2 (N.D. Cal. June 26, 2017)).  Rule 15 provides that the Court "should freely give leave when justice so requires" and does not require a showing of good cause. Fed. R. Civ. P. 15(a)(2).

Moreover, because Check Point's motion does not require modification to any other date in the current schedule, there is no reason to import the good cause requirement of Rule 16 into Rule 15.  *Cf.  James v. J2 Cloud Servs. Inc.*, No. 2:16-cv-05769-CAS(PJWx), 2019 WL 184330, at *3 (C.D. Cal. Jan. 14, 2019) ("Although the briefing schedule does not set a deadline for filing an amended complaint, some of plaintiff's proposed amendments would require modifications to the scheduling order. Accordingly, Rule 16(b) provides the applicable standard for plaintiff's proposed amendments that would require modifications to the scheduling order.")  Check Point merely seeks to include additional defenses in an answer *that it already has permission to file*. There is plenty of time under the current schedule for Finjan to respond to and conduct discovery on the additional defenses, the facts of which are entirely in its control.  *See* ECF No. 25. That is especially true because (a) Finjan has not yet even provided cognizable infringement contentions and (b) neither party has taken *any* depositions to date.  Put differently, this case is still in an early stage and trial is not set until January 25, 2021.

Because the Court's scheduling order did not set a deadline for amending pleadings, Finjan attempts to rely on a proposed deadline from the parties' joint case management statement. But Finjan admits that the Court did not adopt this proposed deadline.  Opp'n at 4; *see also* ECF No. 25.  The parties' proposal, therefore, does not provide a basis for applying the good cause requirement of Rule 16, which expressly governs modifications to an existing schedule. Moreover, the parties did *not* agree that good cause would be required for amendment after November 1, 2018—rather they agreed that *either* a showing of good cause *or* leave of Court would suffice.  *See* ECF No. 23 ¶ 5.  This later basis is in accord with Rule 15, which allows

- 3 -    CHECK POINT'S REPLY ISO MOT.
FOR LEAVE TO AMEND ANSWER
3:18-CV-02621-WHO

1  amendment if the Court grants leave.  *See* Fed. R. Civ. P. 15(a)(2).

## II.  JUSTICE REQUIRES LEAVE TO AMEND.

Finjan has not met its burden of demonstrating why the Court should not grant Check Point leave to amend under Rule 15.  *Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661, 666 (Fed. Cir. 1986) (because Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted).  Check Point's good faith and timely filing of this motion to add meritorious defenses will not prejudice Finjan.  Accordingly, the Court should grant Check Point leave to amend its answer so that this case can be decided on the merits.  *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) ("In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15 — to facilitate decision on the merits rather than on the pleadings or technicalities.'") (*quoting United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

### A.  Finjan Has Not Shown Prejudice.

As recognized in a case Finjan relies on, "[u]ltimately, prejudice is the critical factor in considering motions for leave to amend."  *Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 276 (N.D. Cal. 2011) (citing *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973)); *Eminence Capital, LLC*, 316 F.3d at 1052 ("it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Senza–Gel Corp.,* 803 F.2d at 666 ("The single most important factor is whether prejudice would result to the nonmovant.") (citing *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,* 668 F.2d 1014, 1053 n. 68 (9th Cir. 1981), *cert. denied,* 459 U.S. 825 (1982)).  "The party opposing the amendment bears the burden of showing prejudice."  *Alzheimer's Inst. of Am.*, 274 F.R.D. at 276 (citing *DCD Programs,* 833 F.2d at 190).  The *Alzheimer's* court found that the defendant had met its burden of showing that it would be prejudiced by assertion of a new patent because (1) the schedule would have to be amended so that the defendant could participate in claim construction on that patent, (2) the "horse had left the barn" on claim construction because the co-defendants had already presented their positions on claim construction and thus the defendant lost the opportunity to persuade them to adopt a different united front in claim construction, (3) the cost of additional claim construction

proceedings would be a significant burden on the non-profit defendant, and (4) prolonging the litigation would harm defendant and the public by "extending the chilling effect of the litigation on mice research on Alzheimer's disease." *Id.* at 276-277.

In contrast, Finjan has not met its burden of showing prejudice.  Finjan does not suggest that Check Point's additional defenses will delay or lengthen the proceedings.  Contrary to Finjan's assertion, this case is not at a "late stage."  The parties have many months of discovery ahead of them, including depositions, expert reports and expert discovery.  ECF No. 25.  Indeed, neither party has yet conducted any depositions.  And Check Point Ltd. just served responses to Finjan's initial discovery requests.  Even the pleadings are not yet set as Check Point currently has leave to amend its prosecution laches defense.  ECF No. 65.  Moreover, the Court just ordered Finjan to serve amended infringement contentions and extended claim construction proceedings by over six weeks.  ECF No. 84.  And trial will not occur until January 2021.

Nor has Finjan shown that the additional defenses will cause it undue burden.  As noted in Check Point's motion, the Court has already found Check Point's inequitable conduct allegations sufficient for two of five patents.  Check Point's allegations involve a pattern of conduct, i.e., Finjan's overarching prosecution strategy.  All of the allegations involve the same patent prosecution counsel, and the same type of conduct.  Mot. at 6.  And many of the file histories overlap.  The '494 Patent, for example, has a terminal disclaimer to the '086 Patent.  The file histories for the '086, '633, and '844 Patents, therefore, are already relevant to Check Point's existing defenses.  Indeed, Finjan acknowledges that the petitions to accept delayed claims of priorities addressed similar issues for the '633, '086, '844, and '494 Patents.  *See* Opp'n at 12.  In a case where it is asserting seven patents, it should not be burdensome for Finjan to produce discovery regarding the file histories for five of the asserted patents.  Furthermore, the prosecution histories of *all* the asserted patents are relevant for other reasons, including Check Point's prosecution laches defense and claim construction, and therefore likely to be the subject of discovery.  Any additional discovery not already covered by Check Point's pending defenses will be minimal.  Indeed, the facts surrounding the '086 patent's terminal disclaimer issue are contained within the prosecution history and thus that defense requires no discovery.

### B. Check Point's Previous Amendment Does Not Preclude Amendment Here.

Finjan's representations that this amendment would be a "fourth opportunity" for Check Point to assert defenses is misleading at best. This is only the second time Check Point has sought leave under Rule 15 to amend its answer.[1] The only other answer filed by the defendants was Check Point Ltd.'s original answer, which was identical in substance to Check Point Inc.'s First Amended Answer.[2] If permitted by the Court, this would be the second amendment for Check Point Inc. and the first for Check Point Ltd.—it is not a third amendment for either party.[3]

Unlike the plaintiffs in *Western States*, Check Point did not wait "until after this Court granted summary judgment" on some of its defenses to "add a new theory" of which it had "been aware since the inception of this suit." *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), *aff'd on other grounds sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). Indeed, Check Point did not bring this case and had no reason to investigate possible defenses until it was sued. Nor is Check Point "alleging and re-alleging the same theories in an attempt to cure pre-existing deficiencies." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (finding abuse of discretion where district court denied leave to amend). The only defense Check Point is re-alleging is prosecution laches, which the Court permitted. ECF No. 65. Check Point's prior amendment is not a basis for denying leave to add new defenses.

### C. Check Point Has Not Unduly Delayed.

Nor has Finjan made a strong showing of unjust delay. Finjan's main argument is that

---

[1] Finjan also incorrectly states that Check Point requested leave to amend on November 21, 2018. Check Point filed its motion for leave to amend on November 1, 2018. ECF No. 36. Check Point sought leave under Rule 15 as the Court had not adopted the parties' proposed schedule allowing the parties to file amendments by that date. Finjan filed a Statement of Non-Opposition, and the Court granted the motion on November 21, 2018. See ECF Nos. 45, 46.

[2] Finjan's motion to strike Check Point Inc.'s affirmative defenses was pending when Check Point Ltd. filed its answer.

[3] Notably, Finjan is wielding Check Point Inc.'s previous amendment as both a sword and a shield. The deadline for Finjan to move to dismiss Check Point's original affirmative defenses—including its original prosecution laches defense—had expired by the time Check Point first amended to add more detailed allegations and other defenses. Having used that amendment to take a second bite at striking Check Point's prosecution laches defense, Finjan now argues that it should preclude any future amendment by Check Point.

1   Check Point had access to the file histories for the patents-in-suit since August 2018, and thus
2   should have asserted the additional defenses when if filed its Amended Answer in November
3   2018.  But the Ninth Circuit has repeatedly held that delay alone is not sufficient to justify the
4   denial of a motion requesting leave to amend.  *See, e.g.*, *DCD Programs,* 833 F.2d at 186-187;
5   *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *Hurn v. Ret. Fund Tr. of Plumbing*, 648
6   F.2d 1252, 1254 (9th Cir. 1981).  In its Motion, Check Point explained that the reason for its two
7   and a half month delay in asserting the additional defenses was because it had only recently
8   uncovered the specific facts underlying its proposed defenses.  Motion at 2-4.  As explained in
9   that motion, the materials related to this case are immense, including the files from over 20
10  district court cases and 33 IPR petitions.  The file histories for the seven asserted patents alone
11  comprise nearly 4000 pages.  Moreover, those patents incorporate by reference numerous other
12  patents, each with their own voluminous file histories.  Check Point diligent review of those
13  materials only recently uncovered that during prosecution of the '086 patent Finjan submitted a
14  terminal disclaimer with respect to a patent that it has never owned.  Check Point also only
15  recently completed an analysis showing that the asserted claims of the '086, '633 and '844
16  patents are not entitled to the earlier priority dates asserted by Ms. Bey and thus that the claims of
17  earlier priority are affirmative misrepresentations.  Essentially, Check Point found a needle in a
18  haystack and Finjan's only argument is that Check Point should have found it quicker because it
19  had access to the entire haystack.  But that does not show a lack of diligence; it shows that Check
20  Point been going through the haystack quite diligently.  In light of the lack of any prejudice to
21  Finjan, the couple of months Check Point took to uncover these facts does not justify denying
22  leave to amend.  *See Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989)
23  (granting plaintiff's motion to add declaratory judgment claim based on inequitable conduct
24  where motion was filed more than a year after original complaint).
25       The cases cited by Finjan are readily distinguishable because they all involve far more
26  than just delay.  As described above, the *Alzheimer's* court found evidence of significant
27  prejudice to the non-moving party, the most important factor in determining whether to deny
28  amendment.  *Alzheimer's Inst. of Am.*, 274 F.R.D. at 277.  The *Chodos* court also found prejudice,

1  as well as evidence that the motion to amend was a dilatory tactic.  *See Chodos v. W. Publ'g Co.*,
2  292 F.3d 992, 1003 (9th Cir. 2002).  Likewise, the *Acri* court found prejudice and that the motion
3  was brought for tactical reasons, specifically to avoid the possibility of an adverse summary
4  judgment ruling.  *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99
5  (9th Cir. 1986).  And in the *Edwards* case, the court found that defendants' delay in asserting
6  their claim after the close of discovery would have required the court to reopen deadlines and
7  forced the plaintiffs to incur additional legal costs that could have been prevented if the claim had
8  been asserted earlier.  *Edwards Lifesciences LLC v. Cook Inc.*, No. C 03-03817 JSW, 2008 WL
9  913328 *3 (N.D. Cal. Apr. 2, 2008).

### D. Check Point's Defenses Are Not Futile.

With respect to the proposed inequitable conduct defenses, Finjan repeats the same arguments on the merits that it made in its motion to strike Check Point's other inequitable conduct defenses.  The Court denied Finjan's motion to strike, and should permit Check Point to add the additional inequitable conduct defenses for the same reasons.  Check Point's allegations "if proven," are "sufficient to establish a prima facie case" of inequitable conduct.  *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018); *see also Edwards*, 2008 WL 913328, at *4 (finding that futility factor weighted "in favor of granting leave to amend" where defendant alleged "facts that, if true, could support a claim for inequitable conduct").  Questions of fact—such as the materiality of the alleged misstatements and whether claims are entitled to a particular priority date—are not properly considered at the pleading stage.

With respect to the '086 terminal disclaimer defense, Finjan concludes that the patent is legally enforceable because Check Point's defense relies on a "small typographical error."  Opp'n at 10.  As explained in Check Point's motion, however, the PTO does permit correction of a mistake in the filing of terminal disclaimers.  *See* MPEP 1490.VIII.B.  "[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"  *Barahona*, 881 F.3d at 1134 (citations omitted).  Here, Check Point's allegation are proven by the face of the terminal disclaimer.

### E. Finjan Has No Credible Claim of Bad Faith.

Finjan's allegations of bad faith boil down to the assertion that Check Point should have figured out all of this sooner. That would have made the pleadings simpler in this case, but Check Point's developing understanding of the asserted patents and their prosecution histories does not amount to bad faith. Check Point "ought to be afforded an opportunity to test [its affirmative defenses] on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. EVEN UNDER RULE 16, CHECK POINT SHOULD BE GRANTED LEAVE TO AMEND.

Check Point has good cause for amending its affirmative defenses. As described above, Check Point only recently uncovered specific facts supporting these defenses. Contrary to Finjan's contention, Check Point did not sit on any information. The patent file histories in this case are lengthy and complex, and Check Point has been diligent in investigating and developing its defenses. Indeed, if Finjan and all of its attorneys missed the fact that the terminal disclaimer of the '086 Patent recites a patent that Finjan has never owned, despite having asserted the patent against at least 8 defendants over the last five years, it is hardly surprising that Check Point did not notice it immediately.

"[T]he underlying purpose of Rule 16(b) is to assure that modifications to a scheduling order do not 'create meaningful case management issues' or 'infringe on the efficient adjudication of the action.'" *Romero v. Cty. of Santa Clara*, No. 11-CV-04812-WHO, 2013 WL 5340531, at *2 (N.D. Cal. Sept. 24, 2013) (quoting *C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1197 (C.D. Cal. 2009)). Here, there is no evidence that the proposed amendments create any case management issues or impact efficient adjudication of the case. Even if Check Point could have added these defenses two months earlier (when Finjan did not oppose Check Point's requested amendment to add similar defenses), Check Point should not be denied the opportunity to try these defenses on the merits. *See Romero*, 2013 WL 5340531, at *2 (granting motion to amend under Rule 16 where defendants would not be prejudiced and current pretrial schedule would be unaffected).

Dated: March 5, 2019

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Vickie L. Feeman_
VICKIE L. FEEMAN
Attorneys for Defendants
CHECK POINT SOFTWARE TECHNOLOGIES, INC. and CHECK POINT SOFTWARE TECHNOLOGIES LTD.