UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

          Plaintiff,

    v.

CHECK POINT SOFTWARE
TECHNOLOGIES, INC., et al.,

          Defendants.

Case No. 18-cv-02621-WHO

**ORDER GRANTING MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES**

Re: Dkt. No. 78

Plaintiff Finjan, Inc. ("Finjan") accuses defendants Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. of directly and indirectly infringing on seven of its patents related to cyber security technology. Complaint at ¶¶ 54-55 [Dkt. No. 1].[1] On January 25, 2019, I granted Finjan's motion to strike Check Point's affirmative defense for prosecution laches related to five of its patents, with leave to amend. Order Granting Motion to Strike Defendants' Affirmative Defenses in Part and Denying in Part ("Affirmative Defenses Order") [Dkt. No. 65]. In addition to amendment of its prosecution laches affirmative defense, Check Point also seeks leave to add (i) inequitable conduct defenses to three of Finjan's patents and (ii) an unenforceability defense to one patent based on its terminal disclaimer. Check Point's Motion for Leave to Amend Answer and Affirmative Defenses ("Mot") [Dkt. No. 78]. Amendment is appropriate under Rule 15(a), and Check Point's motion for leave to amend its answer and affirmative defenses is granted.

---

[1] Check Point Software Technologies Ltd. is the Israeli parent company of Check Point Software Technologies, Inc., a Delaware corporation headquartered in San Carlos, California. Once I deemed the parent company served, the parent company filed a separate answer that was virtually identical to the subsidiary's answer. The two companies now file joint pleadings. To avoid confusion, unless otherwise indicated I will refer to both companies as "Check Point.".

**BACKGROUND**

On May 3, 2018, Finjan filed this suit alleging that Check Point infringed upon U.S. Patent No. 6,154,844 ("the '844 Patent"), U.S. Patent No. 6,965,968 ("the '968 Patent"), U.S. Patent No. 7,418,731 ("the '731 Patent"), U.S. Parent No. 7,647,633 ("the '633 Parent"), U.S. Patent No. 8,079,086 ("the '086 Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), and U.S. Patent No. 8,677,494 ("The '494 Patent"). Compl. at ¶¶ 10-31, 54-55.

On July 16, 2018, Check Point filed an answer asserting eight affirmative defenses. Check Point Inc.'s Answer and Affirmative Defenses to Complaint [Dkt. No. 19]. Specifically, it asserted prosecution history estoppel defenses related to the '844, '968, '731, '633, '086, and '154 Patents and prosecution laches defenses related to the '731, '633, '086, '154 and '494 Patents based on the file histories of those patents. *Id.* at ¶¶ 4-5, 11-18.

On August 7, 2018, the parties submitted a joint case management statement and stipulated that the deadline for joining parties and amending the pleadings should be November 1, 2018, and that later amendment should only be granted "upon a showing of good cause, or upon being granted leave to amend by the Court." Joint Case Management Statement & [Proposed] Order at 7 (the "Case Management Statement") [Dkt. No. 23]. On August 15, 2018, I issued a pretrial order setting the dates for claim construction, the cutoff of fact discovery, and the trial date. Civil Pretrial Order [Dkt. No. 25]. I did not set a specific deadline to amend the pleadings. *Id.*

On November 1, 2018, Check Point requested leave to file an amended answer. [Dkt. No. 36]. Finjan did not oppose the request. [Dkt. Nos. 44, 45]. Check Point filed its amended answer on November 21, 2018, and added four affirmative defenses, including two inequitable conduct defenses against the '154 Patent and the '494 Patent. Check Point Inc.'s Amended Answer and Affirmative Defenses to Complaint ("First Amended Answer") [Dkt. No. 46]. It also supplemented its allegations related to its already existing prosecution history estoppel and prosecution laches defenses. *Id.* On December 5, 2018, Finjan moved to strike several affirmative defenses from the First Amended Answer, including for prosecution laches related to the '494, '154, '086, '633, and '731 Patents and for inequitable conduct related to the '154 Patent and the '494 Patent. Motion to Strike Amended Answer to Complaint [Dkt. No.49]. While Finjan's

2

1  motion was pending, Check Point's parent company filed a separate answer that asserted identical

2  defenses to the First Amended Answer on January 8, 2019. Answer to Complaint with Jury

3  Demand [Dkt. No. 56]. On January 25, 2019, I granted Finjan's motion to strike the prosecution

4  laches affirmative defenses with leave to amend and denied the motion as to the inequitable

5  conduct affirmative defenses. Affirmative Defenses Order at 5, 9, 11.

6       Check Point now seeks leave to add (i) affirmative defenses of inequitable conduct related

7  to the '086, '633, and '844 Patents on the grounds that Finjan's patent attorney, Dawn-Marie Bey

8  mispresented material facts to the PTO and that the asserted claims of those patents are not entitled

9  to earlier priority dates; and (ii) an affirmative defense of unenforceability of the '086 Patent based

10  on its terminal disclaimer. Mot. at 1, 6.

11  **LEGAL STANDARD**

12       Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading to add an

13  affirmative defense with leave of court. "The court should freely give leave when justice so

14  requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed district courts to apply the rule

15  favoring amendments to pleadings with "extreme liberality." *DCD Programs, Ltd. v. Leighton*,

16  833 F.2d 183, 186 (9th Cir. 1987). In determining whether to allow leave to amend, courts

17  consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4)

18  futility of amendment, and (5) whether the moving party previously amended a pleading. *See In*

19  *re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013); *see also*

20  *DCD Programs*, 833 F.2d at 186 (listing the first four factors as factors to be considered). Each

21  factor is not of equal weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

22  Cir. 2003); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Of those factors, "prejudice to

23  the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387

24  (9th Cir. 1990). The party opposing the amendment bears the burden of showing prejudice. *See*

25  *DCD Programs*, 833 F.2d at 187. "Absent prejudice, or a strong showing of any of the remaining

26  . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."

27  *Eminence Capital*, 316 F.3d at 1052 (emphasis in original).

28       Once a court has entered a scheduling order, the standards set forth in Rule 16 apply, and a

3

1    court can modify the scheduling order only for good cause. Fed. R. Civ. P. 16(b)(4). Under Rule

2    16, a court's inquiry should focus on a party's diligence. *See, e.g., Johnson v. Mammoth*

3    *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The pretrial schedule may be modified if it

4    cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v.*

5    *Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (*quoting Johnson*, 975 F.2d

6    at 609) (internal quotation marks omitted). Only if the moving party establishes good cause to

7    modify the scheduling order under Rule 16 should the court consider whether the moving party

8    also has demonstrated that amendment is appropriate under Rule 15(a). *Johnson*, 975 F.2d at 608;

9    *Rodarte v. Alameda Cty.*, No. 14-cv-00468-KAW, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15,

10   2015) ("If, however, the moving party has shown good cause under Rule 16(b), it must then

11   demonstrate that its motion is also proper under Rule 15.").

**DISCUSSION**

12

13   **I.    THE APPLICABLE LEGAL STANDARD**

14            As a preliminary matter, I must decide whether Federal Rule of Civil Procedure 15(a) or

15   16(b) applies. Finjan argues that Check Point must satisfy the more stringent Rule 16 good cause

16   standard because in their joint case management statement, the parties agreed to a cutoff date of

17   November 1, 2018, to amend the pleadings without leave. Opposition at 4 [Dkt. No. 83] (*citing*

18   Case Management Statement at 7). Finjan contends that applying Rule 15(a) would moot the

19   inclusion of "good cause" in the Case Management Statement since the parties agreed that there

20   can be no amendment to the pleadings absent "a showing of good cause, or upon being granted

21   leave to amend by the Court." *Id.* Check Point counters that Rule 15(a) is the appropriate

22   standard because the Civil Pretrial Order did not set a deadline to amend the pleadings and

23   allowing Check Point to amend would not require modification to the current case schedule.

24   Reply at 2-3 [Dkt. No. 86].

25            I agree with Check Point that Rule 15(a) provides the correct standard here. I did not adopt

26   the parties' proposed deadlines and did not set a specific deadline to amend pleadings in my Civil

27   Pretrial Order. Should Check Point's motion be granted, no modification of the case schedule will

28   be required. Accordingly, Rule 15(a) provides the applicable standard. *See Cal. Envtl. Prot. Ass'n*

4

1    *v. Sonoma Soil Builders, LLC*, No. 15-cv-04880-KAW, 2018 WL 1242252, at \*2 (N.D. Cal. Mar.

2    9, 2018) (applying Rule 15(a) when the amendment deadline was not included in the court's

3    scheduling order but was given at the case management conference); *see also James v. J2 Cloud*

4    *Servs. Inc.*, No. 16-cv-05769, 2019 WL 184330, at \*3 (C.D. Cal. Jan. 14, 2019) (applying Rule

5    16(b) when the court's scheduling order did not set a specific deadline for amending the

6    complaint, but plaintiff's proposed amendments would require modification to the scheduling

7    order).  If Check Point's motion is granted, Finjan will still have plenty of time to conduct fact

8    discovery on the additional defenses under the current schedule.

9    **II.     AMENDMENT IS APPROPRIATE UNDER RULE 15(a)**

10            **A.     Prejudice**

11           Check Point argues that Finjan will not be prejudiced by amendment because the case is

12   still at an early stage and amendment will not cause delay in the proceedings nor require additional

13   discovery.  Mot. at 5.  It asserts that any discovery required to respond to the additional

14   inequitable conduct defenses will be essentially identical to the discovery required for the already

15   alleged defenses because they involve many overlapping prosecution history files.  *Id.*; Reply at 5.

16   Additionally, the prosecution history files of all the asserted patents are relevant to both Check

17   Point's prosecution laches defense and to claim construction, and would therefore likely be the

18   subject of discovery.  Reply at 5.

19           Finjan counters that it will be prejudiced because permitting amendment will waste judicial

20   and party resources.  Oppo. at 11.  It argues that because Check Point's previous and additional

21   inequitable conduct defenses involve five separate patents with different file histories, amendment

22   will add additional time and expense to the case.  *Id.* at 11-12.  According to Finjan, Check Point

23   also acts in bad faith because it could have asserted the additional defenses earlier but waited to

24   see which defenses would survive Finjan's motion to strike and because its asserted

25   unenforceability defense is based only on an obvious typo in the file history.  *Id.*

26           When "additional discovery would have to be undertaken" because the amended pleading

27   contains "different legal theories and require[s] proof of different fact[s]," the opposing party may

28   be prejudiced.  *Jackson*, 902 F.2d at 1387-88.  For example, "[a] need to reopen discovery and

5

1  therefore delay proceedings supports a district court's finding of prejudice from a delayed motion

2  to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986

3  (9th Cir. 1999). But "the prospect of additional discovery needed by the non-moving party [does

4  not] in itself [constitute] a sufficient showing of prejudice." *Stearns v. Select Comfort Retail*

5  *Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) (internal citations omitted). The party

6  opposing the amendment bears the burden of showing prejudice. *See DCD Programs*, 833 F.2d at

7  187.

8  Finjan has not met its burden. This case is still in an early stage: no claims have been

9  construed, there is not an operative set of infringement contentions, fact discovery does not close

10  until December 13, 2019, and trial is not until the end of January 2021. Check Point's requested

11  amendments will cause no delay. The amendments will not likely require meaningful additional

12  discovery. Check Point's inequitable conduct allegations involve the same alleged pattern of

13  conduct and the same patent prosecution counsel. The prosecution history files of all the asserted

14  patents are relevant to the already alleged defenses and other issues in this case. The facts

15  surrounding Check Point's unenforceability defense are also contained within the prosecution

16  history files. To the extent that some additional discovery may be required, that alone is not

17  enough to constitute prejudice. *Stearns*, 763 F. Supp. 2d at 1158. Accordingly, I find no prejudice

18  to Finjan.

19  **B.      Prior Amendment & Undue Delay**

20  Check Point represents that it did not file its new affirmative defenses sooner because the

21  materials related to this case are immense and it had only recently uncovered the specific facts

22  underlying the new defenses. Mot. at 3-4. It claims that it recently uncovered that during

23  prosecution of the '086 patent, Finjan submitted a terminal disclaimer with respect to a patent that

24  it has never owned. Reply at 7. Check Point also states that it only recently completed an analysis

25  showing that the asserted claims of the '086, '633 and '844 Patents are not entitled to the earlier

26  priority date asserted by Finjan's patent attorney. *Id*. Finally, Check Point notes that this is only

27  the second time it has requested leave to amend its answer. Reply at 6.

28  To evaluate undue delay, courts must determine "whether the moving party knew or

6

United States District Court
Northern District of California

1   should have known the facts and theories raised by the amendment in the original pleading."

2   *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal

3   citations omitted). While delay alone will not justify the denial of leave to amend, "late

4   amendments to assert new theories are not reviewed favorably when the facts and the theory have

5   been known to the party seeking amendment since the inception of the cause of action." *DCD*

6   *Programs*, 833 F.2d at 186; *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781

7   F.2d 1393, 1398 (9th Cir. 1986).

8          Finjan argues that Check Point has engaged in undue delay for two reasons. First, this is

9   the fourth time Check Point sought to file an answer. Oppo. at 7-9. Second, because Finjan

10  produced the file histories for each asserted patent in this case in August 2018, Check Point has

11  had ample time to review the histories and has known the factual bases necessary to assert its

12  additional defenses for months. *Id.* In Finjan's view, Check Point could have asserted these

13  additional defenses in the First Amended Answer or in the parent company's answer, but chose

14  not to do so. *Id.*

15         I am not persuaded that Check Point's conduct constitutes undue delay. The patent file

16  histories comprise nearly 4000 pages; there is no basis to doubt Check Point's representation that

17  it only recently uncovered facts underlying its additional defenses. These new facts were not

18  pleaded in Check Point's answers. [Dkt. Nos. 19, 46, 56]. Considering that the file histories for

19  the patents in this case are immense, and that it has been only roughly three months since Check

20  Point filed its First Amended Answer, I find that Check Point's explanation for its delay is

21  reasonable.

22         Finjan's cited authority is distinguishable. In *Acri*, the plaintiff sought leave to add a cause

23  of action to its complaint after discovery and oral argument on summary judgment had already

24  been completed. 781 F.2d at 1398-99. The plaintiff's attorney also admitted that plaintiff's delay

25  in adding the new cause of action was a tactical choice. *Id.* The Ninth Circuit held that the trial

26  court's denial of leave to amend was justified because the amendment would result in substantial

27  prejudice because of the need for further discovery. *Id.* Here that is plainly not the case.

28  Discovery has not concluded. No dispositive motions have been filed, much less heard.

7

1    In *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002), after close of discovery

2    the plaintiff sought to amend a previously-amended complaint to add a claim of fraud.  The Ninth

3    Circuit held that the trial court's denial of leave to amend was justified because the trial court

4    found that the "new" facts had been available to the plaintiff even before he filed his first amended

5    complaint.  *Id.*  I have made no such finding in this case.  *Edwards Lifesciences LLC v. Cook Inc.*,

6    is distinguishable for the same reason as *Chodos*.  No. 03-cv-03817-JSW, 2008 WL 913328, at *3

7    (N.D. Cal. Apr.2, 2008) (court found that plaintiff's basis for amendment should already have

8    been known to him).

9    In *Alzheimer's Inst. Of Am. v. Elan Corp. PLC*, the plaintiff sought to assert another patent

10   but did not address its reason for doing so, stating only that it was an oversight.  274 F.R.D. 272,

11   277 (N.D. Cal. 2011).  The motion to amend failed to explain how the "oversight" persisted even

12   after its filing of an amended complaint and the defendants' answer specifically pointed out the

13   omission.  *Id.*  Once the plaintiff learned of its mistake, it still waited an additional three months

14   before filing its motion while patent case management deadlines passed, even failing to bring up

15   the issue at a case management conference in the interim.  *Id.*  The facts in this case are very

16   different.

17   In short, Check Point has explained its reasons for delay.  There is no evidence that it

18   delayed filing its motion to amend for months after discovering the basis for its new defenses.

19       **C.    Futility**

20   Check Point argues that the proposed amendments are sufficiently alleged valid defenses.

21   Mot. at 6-9.  It claims that the allegations of inequitable conduct related to the '086, '633, and

22   '844 Patents are similar to the allegations of inequitable conduct related to the '154 Patent that I

23   declined to strike after argument on the merits.  *Id.*  As with the '154 Patent, it asserts that the

24   '086, '633, and '844 Patents are not entitled to the earlier priority dates, that the claims of priority

25   are affirmative misrepresentations to the PTO, and that the misrepresentations are material and

26   made with a specific intent to deceive the PTO.  *Id.*  As to Check Point's allegation of

27   unenforceability, it asserts that Finjan did not own U.S. Patent No. 7,480,962 and still listed it on

28   the terminal disclaimer for the '086 Patent and that the PTO does not allow Finjan to "withdraw or

8

1    otherwise nullify" a terminal disclaimer once the '086 Patent issues. *Id.* at 8.

2        Finjan responds that the '086, '633 and '844 Patents are in the same patent family and its

3    filing of multiple petitions to correct the same error for the family members does not support an

4    inference that Finjan tried to deceive the PTO. Oppo. at 9-10. It further contends that it intended

5    to list U.S. Patent No. 6,480,962 on the terminal disclaimer, which it does own, but made a

6    typographical error and listed U.S. Patent No. 7,480,962 instead. *Id.* at 10-11.

7        "Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant

8    leave to amend." *Lockheed Martin Corp.*, 194 F.3d at 986. "A proposed amendment is futile if no

9    set of facts can be proved under the amendment to the pleadings that would constitute a valid and

10   sufficient claim or defense." *Collaboration Props. v. Tandberg ASA*, No. 05-cv-01940-MHP,

11   2007 WL 205065, at *2 (N.D. Cal. Jan. 25, 2017) (internal quotation marks omitted).

12       Here, Check Point states sufficient facts that, if proven, would support an inequitable

13   conduct defense. The allegations of inequitable conduct relating to the '086, '633, and '844

14   Patents are similar to the allegations of inequitable conduct relating to the '154 Patent that I found

15   were sufficient to survive a motion to strike. Accordingly, the allegations of inequitable conduct

16   during the prosecution of the '086, '633, and '844 Patents are not futile.

17       With regards to the unenforceability defense of the '086 Patent, Check Point's contention

18   that Finjan cannot correct its alleged typographical error is incorrect. While it is true that Finjan is

19   not permitted to "withdraw or otherwise nullify" a terminal disclaimer on an already issued patent,

20   35 U.S.C. § 255 provides that a "certificate of correction may be issued "[w]henever a mistake of

21   a clerical or typographical nature, or of minor character, which was not the fault of the Patent and

22   Trademark Office, appears in a patent and a showing has been made that such mistake occurred in

23   good faith . . . if the correction does not involve such changes in the patent as would constitute

24   new matter or would require re-examination." *Japanese Found. for Cancer Research v. Lee*, 773

25   F.3d 1300, 1305 (Fed. Cir. 2014) (internal quotation marks omitted). Finjan could correct the

26   disclaimer, or at least apply to correct the disclaimer. But as it stands now, there is no record that

27   it has done so. Although there may have been a typo in the disclaimer, as long as the disclaimer is

28   uncorrected, Check Point's defense is viable, and the terminal disclaimer could render the '086

9

Patent unenforceable.  Check Point's additional defenses are not futile.

### D.    Bad Faith

Finjan argues that Check Point has acted in bad faith because it could have asserted the additional defenses earlier.  Oppo. at 11-12.  It alleges that Check Point waited to see which defenses would survive Finjan's motion to strike before moving to add its additional defenses.  *Id.* It also contends that the very act of asserting the unenforceability defense based on an obvious typo in the file history demonstrates bad faith.  *Id.*

"Examples of bad faith have included-but are not limited to-instances in which a party makes a claim without alleging any newly discovered facts, makes a tactical decision to omit a claim to avoid summary judgment, or includes a claim to harass or burden the other party." *Stearns*, 763 F. Supp. 2d at 1159.  Courts have also found bad faith where the requested amendment contains baseless legal theories that are presented for the purpose of prolonging the litigation.  *See Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999).

As discussed above, the new affirmative defenses are not baseless, and I find no evidence showing that they are presented to prolong the litigation.  Finjan's allegation that Check Point waited to see which affirmative defenses would survive a motion to strike does not make sense; there is no obvious advantage to Check Point in waiting.  Although asserting the new affirmative defenses earlier would have slightly streamlined this case, I conclude that Check Point's pleading practice does not rise to the level of bad faith.

## CONCLUSION

Check Point's motion for leave to amend its answer and add additional affirmative defenses is granted.

**IT IS SO ORDERED.**

Dated: April 2, 2019

William H. Orrick
United States District Judge