1  CLEMENT ROBERTS (SBN 209203)
   croberts@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
3  San Francisco, CA 94105
   Telephone:    (415) 773-5700
4  Facsimile:    (415) 773-5759

5  VICKIE FEEMAN (SBN: 177487)
   vfeeman@orrick.com
6  EVAN BREWER (SBN: 304411)
   ebrewer@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
8  Menlo Park, CA 94025-1015
   Telephone:    +1 650 614 7400
9  Facsimile:    +1 650 614 7401

10 ALYSSA CARIDIS (SBN: 260103)
   acaridis@orrick.com
11 MARGARET ABERNATHY (SBN: 300273)
   mabernathy@orrick.com
12 ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street, Suite 3200
13 Los Angeles, CA 90017
   Telephone: (213) 629-2020
14 Facsimile: (213) 612-2499

15 *Attorneys for Defendants*
   CHECK POINT SOFTWARE TECHNOLOGIES, INC. and
16 CHECK POINT SOFTWARE TECHNOLOGIES, LTD.

17                 UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                  SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC. a Delaware Corporation, | Case No. 3:18-cv-02621-WHO |
| Plaintiff, | **CHECK POINT SOFTWARE TECHNOLOGIES, INC. AND CHECK POINT SOFTWARE TECHNOLOGIES, LTD.'S OPPOSITION TO FINJAN'S MOTION TO CERTIFY THE COURT'S JANUARY 17, 2020 ORDER FOR INTERLOCUTORY APPEAL, TO STAY, AND TO PERMIT LIMITED DISCOVERY** |
| v. | |
| CHECK POINT SOFTWARE TECHNOLOGIES INC., a Delaware Corporation, CHECK POINT SOFTWARE TECHNOLOGIES LTD., an Israeli Limited Company, | |
| Defendants. | Date:      April 22, 2020<br>Time:      2:00 p.m.<br>Location:  Courtroom 2, 17th Floor<br>Judge:     Hon. William H. Orrick |
| | Complaint filed: May 3, 2018 |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     RELEVANT BACKGROUND ...................................................................... 1

        A.      Early Litigation. ................................................................................ 1

        B.      Finjan's Three Round of Infringement Contentions. ....................... 2

                1.      The Court Struck Finjan's Original Infringement Contentions. ................. 2

                2.      The Court Struck Finjan's Amended Infringement Contentions. ............... 4

                3.      The Court Struck Finjan's Second Amended Infringement Contentions. ................................................................... 5

        C.      Finjan's Discovery Motions. ............................................................ 6

                1.      Motion to Compel Technical Documents. .................................... 6

                2.      Motion to Compel Response to Interrogatory No. 9. .................. 7

                3.      June 2019 seeking Technical Deposition. ................................... 7

                4.      October 2019 Seeking Technical Deposition. ............................. 7

III.    LEGAL STANDARD ................................................................................... 8

        A.      Standard for Certifying an Order for Interlocutory Appeal. ............ 8

        B.      Standard for Issuing a Stay Pending an Interlocutory Appeal. ........ 9

IV.     ARGUMENT ............................................................................................... 10

        A.      Certification of the Third Strike Order for Interlocutory Appeal is Inappropriate. ................................................................................ 10

                1.      The Third Strike Order Lacks a Controlling Question of Law. ............... 10

                        a)      The Third Strike Order Reflects the Court's Broad Discretion to Manage its Docket. .................................. 10

                        b)      The Third Strike Order is at Best a Mixed Question of Law and Fact. ................................................................ 11

                        c)      The Third Strike Order Contains Multiple, Overlapping Grounds. ...................................................... 13

                2.      The Third Strike Order Does Not Reflect a Difference of Opinion. .......... 17

                3.      Certifying the Third Strike Order for Appeal Will Not Materially Advance the Case. ......................................................... 19

                4.      The Court Should Use Its Discretion to Deny Certification. .......... 20

        B.      A Stay is Inappropriate. .................................................................. 21

        C.      Additional Discovery is Inappropriate. .......................................... 21

V.      CONCLUSION ........................................................................................... 25

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
No. 19-56417, 2020 WL 1059682 (9th Cir. Mar. 5, 2020).........................................................9

*Allen v. Conagra Foods, Inc.*,
No. 3:13-cv-01279-WHO, 2019 WL 1466889 (N.D. Cal. Feb. 5, 2019) .................................12

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011).................................................................................................9

*Asetek Danmark A/S v. CMI USA, Inc.*,
No. 13-cv-00457-JST, 2016 WL 31674 (N.D. Cal. Jan. 4, 2016) .............................................9

*Big Baboon Corp. v. Dell, Inc.*,
723 F.Supp.2d 1224 (C.D. Cal. 2010)....................................................................................18

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982).........................................................................................8, 13

*Chiron Corp. v. Abbott Labs.*,
No. C-93-4380 MHP, 1996 WL 15758 (N.D. Cal. Jan. 3, 1996) ...........................................20

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)..................................................................................................8

*DeLuca v. Farmers Ins. Exch.*,
No. 17-CV-00034-EDL, 2019 WL 4260437 (N.D. Cal. Sept. 9, 2019) ....................................8

*Dietz v. Bouldin*,
__ U.S. __, 136 S. Ct. 1885 (2016) ........................................................................................10

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*,
685 F.2d 1065 (9th Cir.1982), 466 U.S. 435 (1984)...............................................................11

*Finjan, Inc. v. Cisco Systems, Inc.*,
No. 5:17-cv-00072-BLF (SVK) (N.D. Cal. Oct. 10, 2017) .......................................................1

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015).....................................1

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-cv-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ..................................18

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-CV-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015)...........................1, 17

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

*Finjan, Inc. v. Zscaler, Inc.*,
 Case No. 17-cv-06946-JST, 2018 WL 4181906 (N.D. Cal. Aug. 31, 2018) ............................18

*Finjan, Inc. v. Zscaler, Inc.*,
 Case No. 17-cv-06946-JST, 2019 WL 7589210 (N.D. Cal. Jan. 28, 2019) ............................18

*Finjan, Inc. v. Zscaler, Inc.*,
 Case No. 17-cv-06946-JST (N.D. Cal. June 26, 2018)............................................................18

*Firestone Tire & Rubber Co. v. Risjord*,
 449 U.S. 368 (1981) ...............................................................................................................8

*Hilton v. Braunskill*,
 481 U.S. 770 (1987) ...............................................................................................................9

*James v. Price Stern Sloan, Inc.*,
 283 F.3d 1064 (9th Cir. 2002)................................................................................................8

*Johnson v. Mammoth Recreations, Inc.*,
 975 F.2d 604 (9th Cir.1992)..................................................................................................10

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) (*per curiam*) .........................................................................9, 21

*Nat'l Fair Hous. All. v. A.G. Spanos Const. Inc*,
 No. C 07-3255, 2008 WL 5273335 (N.D. Cal. Dec. 16, 2008) ...........................................9, 20

*Network Caching Tech. LLC v. Novell Inc.*
 No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)...................................19

*Nken v. Holder*,
 556 U.S. 418 (2009) ...........................................................................................................9, 21

*O'Connor v. Uber Techs., Inc.*,
 No. 13-cv-03826-EMC, 2017 WL 6502799 (N.D. Cal. Sept. 14, 2017) ...................................9

*Somers v. Digital Realty Tr.*,
 No. C-14-5180-EMC, 2015 WL 4481987 (N.D. Cal. July 22, 2015).......................................21

*Stiner v. Brookdale Senior Living, Inc.*,
 383 F. Supp. 3d 949 (N.D. Cal. 2019) ....................................................................................8

*U.S. Rubber Co. v. Wright*,
 359 F.2d 784 (9th Cir. 1966)...................................................................................................8

*Vasudevan Software, Inc. v. International Business Machines Corp.*,
 No. C09-05897 RS HRL, 2011 WL 94026 (N.D. Cal. Feb. 18, 2011).............................18, 19

*Virginian Ry. Co. v. United States*,
 272 U.S. 658 (1926)...............................................................................................................9

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................8, 13, 20

**Other Authorities**

Fed. R. Civ. P. 1 ....................................................................................................2, 10

Fed. R. Civ. P. 16(c)(2) ...............................................................................................2

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

v

Check Point Opp. to
Motion to Certify
3:18-cv-02621-WHO

I.      **INTRODUCTION**

Finjan offers no compelling reason for the extraordinary relief it seeks. The elements required for interlocutory appeal are missing: the order that Finjan seeks to challenge does not depend on a controlling question of law, much less one on which there is ground for a substantial difference of opinion, and certification would not materially advance the case. Practically speaking, it makes far more sense to allow the Special Master to finish her assessment of Finjan's remaining contentions than to certify an appeal as to *some* of Finjan's contentions.

The case for denying certification is especially strong here, because the order Finjan seeks to appeal is exceptionally unlikely to be overturned on appeal—not only because the Court's order was very well justified but because the Court gave Finjan numerous chances to amend and because the order will be reviewed under a highly deferential standard. There is virtually no chance that an interlocutory appeal will save any time, and a very high probability that it would simply waste judicial resources. The Court should, therefore, deny Finjan's motion.

II.     **RELEVANT BACKGROUND**

A.      **Early Litigation.**

Finjan has sued many defendants in this and other districts on these and similar patents. In these litigations, Finjan has provided vague and shifting infringement contentions and forced defendants to file repeated motions to compel disclosure of Finjan's infringement theories. *See, e.g., Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015) ("the little explanation Finjan does provide is framed in high-level generalities that do not specifically relate to the claim elements identified in each Claim"); *Finjan, Inc. v. Cisco Systems, Inc.*, No. 5:17-cv-00072-BLF (SVK) (N.D. Cal. Oct. 10, 2017), ECF No. 83 at 77:16-78:17 (ordering Finjan to amend its infringement contentions "across the board"); *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) (ordering Finjan to amend infringement contentions).

In an effort to avoid this pattern, nine days after Check Point answered Finjan's Complaint, and well before the case management conference, Check Point offered to make its source code available for Finjan's review. Caridis Decl., Ex. A (Roberts July 25, 2018 letter). In

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    exchange, Check Point made clear that it expected Finjan's "infringement contentions to include

2    source code-specific citations for each element of each accused product." *Id.* Check Point

3    memorialized this request in the parties' Joint Case Management Statement and Proposed Order.

4    *See* ECF No. 23 at 5-6. Check Point also raised these concerns at the initial case management

5    conference. *See* ECF No. 24. In response, the Court directed the parties to submit briefs regarding

6    how it might manage the proceedings consistent with Fed. R. Civ. P. 1. *Id.*

7         Check Point's brief proposed a case management mechanism that "combines the [2013

8    Federal Circuit Model Order Limiting Excess Patent Claims and Prior Art], the Patent Local

9    Rules, and prior orders issued by courts that have wrestled with Finjan's approach to infringement

10   contentions." ECF No. 28 at 1. Among other things, Check Point asked the Court to require

11   Finjan's contentions to "explain specifically where and how each limitation of each asserted

12   claim is found within each accused product" by providing "pinpoint citations to the code

13   identifying the location of each limitation." *Id.* at 5. At the same time, Check Point sent Finjan an

14   interrogatory seeking pinpoint source code citations on a limitation-by-limitation basis. Caridis

15   Decl., Ex. B.

16        After considering the parties' briefs, the Court issued an order intended to streamline the

17   litigation and promote the "just, speedy, and inexpensive" determination of this action. ECF No.

18   29 ("Narrowing Order") at 1 (quoting Fed. R. Civ. P. 1)). The Narrowing Order was made

19   pursuant to the Court's broad discretion and inherent authority to manage its docket and

20   courtrooms with a view toward the efficient and expedient resolution of cases. *See* Fed. R. Civ. P.

21   16(c)(2). Among other things, the Court required that Finjan's infringement contentions "include

22   pinpoint source code citations." Narrowing Order at 2. The Narrowing Order also required

23   compliance with Patent Local Rule 3-1, which requires, among other things, Finjan to explain

24   where and how each limitation of each asserted claim is found. *Id.* at 2 (referencing Patent L.R. 3-

25   1).

26        **B.    <u>Finjan's Three Round of Infringement Contentions.</u>**

27             **1.    <u>The Court Struck Finjan's Original Infringement Contentions.</u>**

28   On November 2, 2018, Finjan served its infringement contentions, which came in at more

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

than seven thousand pages. ECF No. 55 at 1. Check Point moved to strike them, arguing that the contentions failed to comply with the Court's Local Rules and the Narrowing Order. *See generally id*. Check Point argued that where Finjan did cite source code, those "citations are not pinpoint as mandated by the Narrowing Order, and Finjan's contentions do not disclose 'specifically **where** and **how** each limitation of each asserted claim is found within **each** Accused Instrumentality,' as required by Patent L.R. 3-1(c)." *Id*. at 2. Check Point continued: "Finjan provides essentially no explanation of how it contends that any particular block [of code] (let alone any particular citation within any block) relates to the limitation to which it supposedly corresponds." *Id*.

The Court heard oral argument on Check Point's Motion on February 13, 2019. ECF No. 80. During that hearing, the Court made clear that Finjan's "[p]inpoint citations need to be specific, particularly to where and how each limitation of each asserted claims is found within the accused instrumentality." Caridis Decl., Ex. C (Feb. 13, 2019 Hr'g Tr.) at 3. The Court noted that in this case "[i]t's not sufficient to cite multiple sets of source code under each claim limitation without explanation. The public information that's cited isn't sufficient to cure the problem." *Id.*

The Court confirmed this holding in its Order Granting Motion to Strike in Part. ECF No. 84 ("First Strike Order"). The Court held that "Finjan's pinpoint source code citations, even viewed along with the public information cited, do not meet the required level of specificity, particularly to 'where and how each limitation of each asserted claim is found within each Accused Instrumentality.'" *Id*. at 9. The Court also rejected Finjan's attempt to avoid the source code and mapping requirements by relying on citations to publicly available generic marketing materials, explaining that "the public information does not help map Finjan's source code citations to a claim limitation nor assist the reader in understanding Finjan's infringement theories. The public information is largely comprised of generic marketing materials and screenshots of the type routinely rejected by courts in this district." *Id.* The Court ultimately found[1] that "Finjan has not yet adequately disclosed its infringement theories" and that it "must

---

[1] The Court found Finjan's Infringement Contentions deficient in other material respects in the First Strike Order. For brevity's sake, Check Point here only focuses on the aspects that seem to be at the core of Finjan's present request.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

provide pinpoint source code citations that show the 'where and how each limitation of each asserted claim is found.'" *Id.* at 12.

During the hearing resulting in the First Strike Order, Finjan asked the Court to order technical depositions of Check Point *before* Finjan was required to provide infringement contentions that comported with the Court's Narrowing Order and the local rules. *See, e.g.*, Caridis Decl., Ex. C (Feb. 13, 2019 Hr'g Tr.) at 4:17-20. The Court expressed skepticism over this approach, explaining that Finjan has "to lay out [its] contentions and, and it's not up to Check Point to educate [Finjan] in a way that will help [Finjan] build its case at the outset." *Id.* at 11:6-9. But while the Court rejected Finjan's request for an unbounded technical deposition, the Court provided Finjan a mechanism for taking an early 30(b)(6) deposition of Check Point:

> THE COURT: Here's what we're going to do. I'm going to stick with my tentative and have you amend in the best way that you can given the information that you have.
>
> Then I want you to meet-and-confer with [Check Point] and see whether you can agree on anything that will provide – if [Check Point] still claims that the contentions are insufficient, what it is that can happen in order to get over the – this particular hurdle. ***If you're unsuccessful, then I want you to send – send me a five page joint letter and append to it the questions that you would like to ask a 30(b)(6) witness. And then – or the places where you're in disagreement, and I'll decide that.***

*Id.* at 14:6-17 (emphasis added). In the *year* since the Court offered Finjan this procedure, and through multiple rounds of motions to strike, Finjan *never* invoked this procedure and instead affirmatively *declined* to make use of it.

### 2.   The Court Struck Finjan's Amended Infringement Contentions.

Finjan served Amended Infringement Contentions ("AICs") on April 1, 2019. The AICs include 47 charts and comprised more than 1,500 pages. ECF No. 125-04 at 4. Again, the AICs violated the Patent Local Rules and the Narrowing Order, and fell short of the directions the Court gave Finjan in the First Strike Order. *See generally id*. After receiving the AICs, and consistent with the Court's directive during the prior hearing, Check Point communicated to Finjan the deficiencies it had noted in the AICs, and requested that Finjan provide a list of 30(b)(6) questions it would need to correct the deficiencies, if Finjan still contended that such a deposition was necessary. Caridis Decl., Ex. D (Caridis April 5 e-mail.). Finjan responded

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

claiming to be "confused by [Check Point's] claimed deficiencies." *Id.*, Ex. E (Kastens April 8 e-mail). Finjan never took Check Point up on its offer to discuss a list of 30(b)(6) questions pursuant to the process set forth by the Court.

After completing the meet and confer process, Check Point filed a motion to strike the AICs, explaining that, among other things, Finjan had failed to cite code for a plethora of accused products and that even where code was cited, "Finjan frequently fails to explain *how* the code shows infringement." ECF No. 125-04 at 11.[2] In granting in part Check Point's motion to strike the AICs, the Court reiterated that "Finjan has already been directed to provide pinpoint source code citations for each limitation." ECF No. 192 ("Second Strike Order") at 11. The Court went on to note that "[t]o the extent any or all of the . . . accused instrumentalities lack pinpoint citations, they are struck with prejudice. Where Finjan has used the same source code for different things, it may amend its infringement contentions to better explain why the same source code is [*sic*] applies to wholly different limitations." *Id.* The Court ordered that "Finjan may amend its infringement contentions *one last time* . . . Moving forward, Finjan is cautioned that if any of its infringement contentions remain deficient, they may not form the basis for relief in this action." *Id.* at 18 (emphasis added).

### 3. The Court Struck Finjan's Second Amended Infringement Contentions.

On August 26, 2019, Finjan served its Seconded Amended Infringement Contentions ("SAICs"), which totaled 5,135 charts and over 185,000 pages. ECF No. 212-04 at 3. Yet again, Finjan's contentions failed to comply with the Narrowing Order and the First Strike Order. The contentions also ignored much of the guidance of the Second Strike Order. In response, Check Point moved to strike the SAICs with prejudice. *See generally, id*. That motion asked the Court to strike the SAICs on six independent grounds. *Id*. Because every claim chart in the SAICs was inadequate based on one or more of those grounds, Check Point asked for the entirety of the SAICs to be struck with prejudice. *Id*. at 24-25.

---

[2] Again, the Motion to Strike the AICs was based (and granted in part) on several grounds. Check Point only focuses on the issues relevant to the present dispute here.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    The day before the hearing on Check Point's motion, the Court issued a tentative ruling.

2    ECF No. 242. The Court tentatively ruled in Check Point's favor on most of the issues presented

3    in Check Point's motion. *Id*. Significantly, the Court tentatively ruled in favor on Check Point's

4    Issue 6—whether Finjan had adequately explained its infringement theories—based on the

5    specific examples cited in Check Point's brief. *Id*. at 5-6. The Court further noted "it is not clear

6    to me if *any* of Finjan's contentions satisfy Issue 6" and asked Finjan to "identif[y] two of its

7    strongest contentions." *Id*. at 6 (emphasis added). Finjan presented those two contentions at the

8    oral argument. *See* Caridis Decl., Ex. F (Dec. 4, 2019 Hr'g Tr.). During the hearing, Finjan

9    stipulated to many aspects of the Court's tentative ruling. *See, e.g.*, *id.* at 6:19-21.

10    On January 17, 2020, the Court issued an order granting in part Check Point's motion to

11    strike the SAICs." ECF No. 247 ("Third Strike Order"). The Court adopted much of its tentative

12    order and referred all remaining contentions to a Special Master. *Id.* at 2; ECF No. 261.

13    **C.**    **Finjan's Discovery Motions.**

14    As the parties litigated the sufficiency of Finjan's infringement contentions over the past

15    eighteen months, various discovery disputes have also arisen. Check Point describes Finjan's

16    relevant discovery motions below.

17    **1.**    **Motion to Compel Technical Documents.**

18    On March 11, 2019, the parties filed competing discovery motions. Check Point moved to

19    compel Finjan to produce information relating to its license agreements (ECF No. 88) and Finjan

20    moved to compel Check Point to produce additional technical documents (ECF No. 89). At the

21    March 22, 2019 hearing on these motions, Magistrate Judge Spero directed the parties to confer

22    and reach a resolution on the pending disputes. ECF No. 97. The parties reached an agreement to

23    dispose of the motions, memorialized by Court order. *See* ECF No. 101. As part of that

24    agreement, Check Point agreed to produce various technical documents within prescribed time

25    frames. *Id*. at 1-2. Check Point complied with these technical document obligations. Since that

26    time, whenever Finjan has raised the possibility that document(s) were missing, Check Point

27    promptly either explained why Finjan was mistaken or searched for and produced the specific

28    documents in question. *See, e.g.*, Caridis Decl., Ex. G. Finjan never brought a motion to compel

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

6

Check Point Opp. to
Motion to Certify
3:18-cv-02621-WHO

1    additional technical documents nor has it ever filed a motion claiming that Check Point failed to

2    produce the technical documents it was ordered to produce.

3    **2.      Motion to Compel Response to Interrogatory No. 9.**

4    After serving its AICs, Finjan filed a discovery motion seeking to compel Check Point "to

5    identify which source code modules correspond to which of its products." ECF No. 119 at 2

6    (seeking to compel a response to Interrogatory No. 9). In other words, Finjan wanted Check Point

7    to provide a source-code mapping showing the relationship between the code Check Point had

8    produced for inspection and the accused products. *Id.* During the meet and confer leading up to

9    the motion, Finjan stated that its expert could not figure out which code went with which

10   products, either by looking at the folders themselves or by examining the code. *Id.* at 4. While

11   Check Point believed the manual task required to map the source code to the accused products

12   was equally burdensome for both parties, the Magistrate Judge disagreed, and ordered Check

13   Point to respond. ECF No. 128. Check Point did so.

14   **3.      June 2019 seeking Technical Deposition.**

15   On June 14, 2019—while Check Point's motion to strike the AICs was pending—Finjan

16   filed a discovery motion seeking to compel the deposition of Tamir Zegman. ECF No. 157.

17   Finjan filed this motion despite the Court having denied Finjan this deposition and (instead)

18   providing a procedure by which Finjan could procure technical testimony on the accused

19   products. *See supra* § II.B.1. Magistrate Judge Spero denied Plaintiff's motion, noting that he

20   "[was] not writing on a blank slate," that the Court had previously specified a procedure for

21   Finjan to obtain early technical witness testimony, and that Finjan had failed to follow that

22   procedure. ECF No. 161.

23   **4.      October 2019 Seeking Technical Deposition.**

24   On October 24, 2019—after Check Point filed its motion to strike the SAICs—Finjan

25   renewed its request to depose Check Point technical witnesses. ECF No. 215. Although Finjan

26   still had not provided adequate contentions and although claim construction had not yet begun,

27   Finjan claimed the issue was urgent because fact discovery was slated to close within two

28   months. *Id.* at 1-2. The Court did not reach the merits of this motion, and instead ordering the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    parties to submit a new case schedule. ECF No. 221.

2    **III.    LEGAL STANDARD**

3        **A.    Standard for Certifying an Order for Interlocutory Appeal.**

4        Generally, a party may not appeal a decision of the district court unless the decision is

5    final, which requires a decision on the merits that ends the litigation and leaves nothing for the

6    court to do but execute the judgement. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373

7    (1981). This "final judgment" rule recognizes the deference owed to the trial judge and the

8    importance of promoting efficient judicial administration. *Id.* at 374.

9        Interlocutory appeals provide a narrow exception to this rule. 28 U.S.C. § 1292(b).

10   Section 1292 permits an interlocutory appeal where the: (1) order involves a controlling question

11   of law; (2) there is substantial grounds for difference of opinion pertaining to that question of law;

12   and (3) an immediate appeal of the order may materially advance the ultimate termination of the

13   litigation. *Id.* Because of the policy of postponing appellate review until after the entry of final

14   judgement, only "exceptional circumstances" warrant certifying an order for interlocutory appeal.

15   *See DeLuca v. Farmers Ins. Exch.*, No. 17-CV-00034-EDL, 2019 WL 4260437, at *3 (N.D. Cal.

16   Sept. 9, 2019) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982)). As an

17   exceptional remedy, applications of Section 1292 "must be construed narrowly." *DeLuca*, 2019

18   WL 4260437, at *4 (quoting *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir.

19   2002); *see also Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal.

20   2019) (the requirements should be applied "strictly."). For this reason, interlocutory appeals are

21   impermissible where the party requesting certification simply disagrees with the Court's ruling.

22   *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Nor are interlocutory appeals

23   designed to simply "provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*,

24   359 F.2d 784, 785 (9th Cir. 1966)

25       A party seeking to certify an issue for interlocutory review bears the burden of showing

26   that each of the three requirements are satisfied and that a departure from long-standing policy is

27   justified. *Stiner*, 383 F. Supp. 3d at 957. Even when the moving party can meet the requirements

28   of Section 1292(b), a district court's decision to grant or deny certification is entirely

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    discretionary. *Nat'l Fair Hous. All. v. A.G. Spanos Const. Inc,* No. C 07-3255 SBA, 2008 WL

2    5273335, at *1 (N.D. Cal. Dec. 16, 2008). A decision by the district court to deny certification of

3    an issue is unreviewable. *Id.*

4        **B.    Standard for Issuing a Stay Pending an Interlocutory Appeal.**

5        A stay is not a matter of right but "an exercise of judicial discretion" that is "dependent

6    upon the circumstances of the particular case." *Virginian Ry. Co. v. United States,* 272 U.S. 658,

7    672-673 (1926); *see also Al Otro Lado v. Wolf,* No. 19-56417, 2020 WL 1059682, at *5 (9th Cir.

8    Mar. 5, 2020). Because a stay is an "intrusion into the ordinary processes of administration and

9    judicial review," the party requesting a stay must establish that "the circumstances justify an

10   exercise of [the court's] discretion" to suspend proceedings. *Nken v. Holder,* 556 U.S. 418, 427,

11   433-34 (2009) (citation omitted).

12       A court may issue a stay pending interlocutory appeal based upon consideration of four

13   factors: (1) whether the moving party has made a strong showing that it is likely to succeed on the

14   merits; (2) whether the moving party will be irreparably injured absent a stay; (3) whether

15   issuance of a stay will substantially injure other parties interested in the proceeding; and

16   (4) where the public interest lies. *Nken,* 556 U.S. at 434 (quoting *Hilton v. Braunskill,* 481 U.S.

17   770, 776 (1987)); *see also O'Connor v. Uber Techs., Inc.,* No. 13-cv-03826-EMC, 2017 WL

18   6502799, at *1 (N.D. Cal. Sept. 14, 2017); *Asetek Danmark A/S v. CMI USA, Inc.,* No. 13-cv-

19   00457-JST, 2016 WL 31674, at *4 (N.D. Cal. Jan. 4, 2016). The Ninth Circuit weighs these

20   factors on a sliding scale, whereby "a stronger showing of one element may offset a weaker

21   showing of a another." *Al Otro Lado,* 2020 WL 1059682, at *5 (citing *Alliance for the Wild*

22   *Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) and *Leiva-Perez v. Holder,* 640 F.3d

23   962, 966 (9th Cir. 2011) (*per curiam*)). If the moving party fails to make a threshold showing

24   regarding irreparable harm, however, "a stay may not issue, regardless of the petitioner's proof

25   regarding the other stay factors." *Leiva-Perez,* 640 F.3d at 965.

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

IV.     **ARGUMENT**

    A.     **Certification of the Third Strike Order for Interlocutory Appeal is Inappropriate.**

Finjan fails to show that any of the three requirements for an interlocutory appeal are met in this case. And even if they were, the Court should still use its discretion to deny certification.

          1.     **The Third Strike Order Lacks a Controlling Question of Law.**

Finjan distorts the holding of the Third Strike Order in an attempt to cast that order as containing a "controlling question of law" suitable for interlocutory appeal. According to Finjan, the Third Strike Order rests on a legal determination that Patent Local Rule 3-1 requires pinpoint source code citations for every element. *See, e.g.*, ECF No. 263 ("Br.") at 7. Not so. The Order was not the result of simple application of Patent L.R. 3-1 to a set of contentions; it was an exercise of the Court's inherent power to manage its docket and the culmination of several prior orders that were tailored to the facts of this case. Additionally, the Third Strike Order set forth overlapping grounds to strike Finjan's SAICs. No contention in the SAIC was struck *only* because it lacked source code. Rather, any contention that lacked source code *also* had another fatal defect. Accordingly, the pinpoint source requirement—even if it were a question of pure law—is not controlling.

               a)     The Third Strike Order Reflects the Court's Broad Discretion to Manage its Docket.

The Third Strike Order did not simply apply Patent L.R. 3-1—it also applied the Narrowing Order, the First Strike Order and the Second Strike Order. "The district court is given broad discretion in supervising the pretrial phase of litigation," *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (citation omitted), and has "inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, __ U.S. __, 136 S. Ct. 1885, 1892 (2016). The Court exercised this discretion and authority when entering the Narrowing Order, with the express purpose of ensuring the just, speedy, and inexpensive determination of the proceeding pursuant to Fed. R. Civ. P. 1. Narrowing Order at 1.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    The Court's determination of how to manage its docket, how to supervise pretrial

2    litigation, or how to ensure an efficient determination is not a question of law: "A district court

3    has wide latitude in controlling discovery; its rulings will not be overturned in the absence of a

4    clear abuse of discretion." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express &*

5    *Station Emps.*, 685 F.2d 1065, 1071 (9th Cir.1982), *rev'd in part and aff'd in part*, 466 U.S. 435

6    (1984). In light of Finjan's litigation history (*see* § II.A above) and the wide scope of the Check

7    Point products Finjan accused, the Court properly exercised its discretion in setting discovery

8    requirements for this proceeding. Narrowing Order at 1.

9               b)   The Third Strike Order is at Best a Mixed Question of Law and Fact.

10   Finjan alleges that the Third Strike Order rests on the Court's legal determination of the

11   proper interpretation of Patent Local Rule 3-1. In reality, the Third Strike Order is at best a mixed

12   question of law and fact for which interlocutory appeal is not appropriate.

13   The Third Strike Order is the culmination of a series of disputes dating back to the early

14   days of this litigation. At the Case Management Conference, partly in response to the record

15   evidence about the problems created by Finjan's historical approach to infringement contentions,

16   the Court asked the parties for recommendations to streamline the case. *See* ECF No. 24. In view

17   of Finjan's history of providing vague and shifting infringement contentions, the software-centric

18   nature of the asserted patents, and Check Point's offer to make its source code immediately

19   available for inspection, Check Point suggested that the Court issue an order requiring Finjan to

20   explain where and how each limitation of each asserted claim is found in the accused products by

21   including pinpoint source code citations. *See* ECF No. 28 at 4-8. The Court agreed. Narrowing

22   Order at 1-2. The Court's Narrowing Order was a *tailored* order made in light of the facts; it was

23   not simply an Order directing compliance with the patent local rules. *Id.*

24   The Court's subsequent orders continued to evaluate and apply the facts of this case. The

25   First Strike Order and Second Strike Order assessed whether the AICs and SAICs (respectively)

26   put Check Point on notice of Finjan's infringement theories.[3] For example, in the First Strike

27

28   [3] It is undisputed that the purpose of infringement contentions is to put the defendant on notice of plaintiff's infringement theories. *See* Br. at 10.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

Order, the Court found that Finjan's "source code citations, even viewed along with the public information cited, do not meet the required level of specificity." First Strike Order at 9. The Court held "[c]ontrary to Finjan's assertions, the public information does not help map Finjan's source code citations to a claim limitation nor assist the reader in understanding Finjan's infringement theories. The public information is largely comprised of generic marketing materials and screenshots of the type routinely rejected by courts in this district." *Id.* In other words, the Court examined the non-source code evidence that Finjan had cited and found that evidence insufficient to put Check Point on notice of Finjan's infringement theories. The Court did not make a blanket determination that all infringement contentions must include pinpoint source code citations. Rather, in *this case*, considering *this evidence*, the Court held that pinpoint source code citations and supporting explanations were required to put Check Point (and the Court) on notice of Finjan's infringement theories.

The Third Strike Order is similar. Again the Court was faced not with the bare question of whether source code was cited but with the question of whether the contentions, as presented, put Check Point on notice of Finjan's infringement theories. *See, e.g.*, Third Strike Order at 21 ("Burying combinations in this way cannot be considered adequate notice for Check Point."); *id.* ("Burying another instrumentality in this way is not adequate notice."); *id.* at 37 ("it is not made clear in the charts such that it could put Check Point on notice of Finjan's infringement theory"). Again, the Court found, after *extensive* review of the examples provided by both sides, that Finjan's contentions did not provide the kind of notice the Court repeatedly had ordered Finjan to provide in light of the specific facts of this case.

This kind of mixed question of law and fact is not appropriate for interlocutory appeal. In *Allen v. Conagra Foods, Inc*, this Court denied a motion to certify an order for interlocutory appeal because, among other things, the question presented was not one of pure law, but rather a mixed question of law and fact. No. 3:13-cv-01279-WHO, 2019 WL 1466889 (N.D. Cal. Feb. 5, 2019). There, in ruling on a motion to dismiss, the Court had "determined that the federal regulations governing food labeling do not preempt the plaintiff's claims." *Id.* at *1. The defendants sought interlocutory appeal, claiming that the Court's order turned on a question of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1   law: the interpretation of the federal regulation. *Id*. The Court disagreed, finding that "[t]he facts

2   alleged in the complaint cannot be extricated from my discussion or from any conclusion I

3   reached." *Id.* at *2. Similarly, while Finjan asserts that the Third Strike Order turns on a legal

4   question of the Court's interpretation of a Patent Local Rule, the nature of Finjan's infringement

5   contentions—combined with the 18 months of litigation relating to the sufficiency of those

6   contentions—cannot be extricated from the Court's discussions and conclusion about them.

7   Without a controlling question of law, interlocutory appeal is inappropriate.

8               c)   The Third Strike Order Contains Multiple, Overlapping Grounds.

9        Even if this Court were to find that its requirement for source code citations was a pure

10  question of law, it would still not be a *controlling* question as required by 28 U.S.C. § 1292(b). A

11  controlling question of law is one where the "resolution of the issue on appeal could materially

12  affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. In its

13  motion, Finjan does not cite a single struck contention that would otherwise be allowable if the

14  Federal Circuit found that this Court's Patent Local Rules do not, as a matter of law, require

15  source code citations. No such contention exists. To the contrary, the Third Strike Order struck

16  the SAICs on multiple overlapping grounds, the majority of which did not depend on the Court's

17  pinpoint source code citation requirement. The few contentions that were struck on account of

18  simply lacking source code were *also* struck for source-code independent reasons. To

19  demonstrate this, Check Point summarizes the Third Strike Order here:

20       Issue 1: The Court struck contentions in the SAICs directed to products that had been

21  previously struck in prior orders. This is the only issue that is potentially implicated by Finjan's

22  alleged "controlling question of law." In the Second Strike Order, the Court held that "[t]o the

23  extent that any or all of the 30 of the accused instrumentalities lack pinpoint citations, they are

24  struck with prejudice." Second Strike Order at 11. At the hearing on the SAICs, Finjan stipulated

25  to strike 27 of the 30 instrumentalities with prejudice. Third Strike Order at 10. In the Third Strike

26  Order the Court struck one of the remaining three products—Capsule Cloud—because Finjan

27  "[did] not explain [its infringement] theory and instead simply provide[d] a one-sentence

28  incorporation by reference placeholder." *Id*. at 12. This determination did not turn on the presence

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

of source code citations. *Id.* As for the remaining two products, Finjan argued that it *had* cited code for Network Firewall and Network Anti-Spam E-mail Security. *Id.* at 10-11. The Court disagreed and struck those products. *Id.* But even if the Court somehow erred by requiring source code citations (it did not), those products were *also* struck on separate grounds having nothing to do with the presence of source code. *See, e.g.*, *infra* Issue 2. In other words, the requirement for source code citations is not dispositive for this issue because the products that were struck based on that requirement were struck for separate reasons and because Finjan *stipulated* to striking most of those products with prejudice.

Issue 2: The Court struck contentions in the SAICs that had not been properly disclosed in the AICs. First, the Court focused on *products* and found that neither (1) Network Firewall nor (2) Network Anti-Spam & E-mail Security were properly accused in the AICs because Finjan had buried any reference to those products in the middle of contentions for wholly separate products. Third Strike Order at 16-17. This has nothing to do with pinpoint source code citations: the issue was whether Finjan had previously disclosed its contentions for those products. The Court found it had not. The same is true for Finjan's Network Anti-Virus charts for the '633 Patent and Network Threat Extraction charts for the '154 Patent—those contentions were not properly disclosed. *Id.* at 17-18.

The Third Strike Order also struck *claims* that were improperly added to the SAICs. *Id.* at 18. Finjan stipulated to drop all but one of these new claims. *Id.* For the one claim that Finjan challenged, the Court found that the infringement theory had not been properly disclosed in the AICs, and therefore Finjan that could not add that theory into the SAICs. *Id.* at 19. The Court expressly acknowledged that this issue is separate from source code: "Determining whether Finjan has provided source code citations *and whether it has articulated enough to amount to a contention* are two very different inquiries." *Id.* (emphasis added).

Lastly, Issue 2 of the Third Strike Order also concerned improper new *combinations* of products. Finjan stipulated to drop all but two of the new combinations. *Id.* at 20. The Court struck the two remaining combinations, not because of any source code issues, but because Finjan had buried these combinations in its AICs in a way that "cannot be considered adequate notice for

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

Check Point." *Id.* at 21.

Issue 3: The Court struck contentions in the SAIC where Finjan failed to adequately

identify and explain the accused combinations. The Court struck combinations that included (i)

SmartEvent and (ii) Forensics because Finjan did "not explain how Forensics or SmartEvent work

with any of the other products in a manner that infringes." *Id.* at 24. The Court also struck the

combination of Firewall and Threat Emulation for the '968, '154, and '731 Patents because

"Finjan [did] not explain how Firewall and Threat Emulation work in combination in a manner

that infringes." *Id.* at 26. Again, this ruling has nothing to do with any requirement for source

code citations. The SAICs were struck due to Finjan's failure to adequately explain (*i.e.*, put

Check Point on notice of) its infringement *theories*. The Court referred the remaining

combinations to the Special Master. *Id.*, 22.

Issue 5:[4] Finjan stipulated to the Court's tentative ruling that the contentions listed on

page 29 of the Third Strike Order be struck.

Issue 6: The Court struck contentions in the SAIC where Finjan failed to explain how the

cited source code shows infringement. This issue centers on whether Finjan adequately *explained*

how the cited evidence shows alleged infringement. In other words: do Finjan's contentions put

Check Point on notice of Finjan's infringement theories? For the contentions analyzed by the

Court (which included what Finjan considered its "best" charts), the Court said no.

The first contention analyzed by the Court was Finjan's allegation that Network IPS

infringes the '731 Patent. The Court concluded that several key questions remained unanswered:

"What is the scanner? What is the security profile? Where is it derived?" *Id.* at 32. "Because

Finjan has failed to explain how limitation 1b is found within Network [IPS], its contentions

against Network IPS infringing Claim 1 of the '731 Patent are struck with prejudice." *Id.* at 33.

Finjan claims that the Court "did not address the other evidence of infringement that Finjan

offered." Br. at 9. This argument is rooted in Finjan's continued attempt to ignore the case

history. The Court already looked at the non-source code evidence in, *e.g.*, the First Strike Order,

and found that such evidence was insufficient *in this case* to provide adequate notice. *See, e.g.*,

---

[4] The Court ruled in Finjan's favor on Issue 4.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

First Strike Order at 10 ("The marketing materials and screenshots Finjan cites only describe how the Network Security Products work in a general sense and virtually 'parrot' the claim language, without tying it to any source code citations or specific information in those screenshots that match the specific claim components.").

The Third Strike Order also analyzed Finjan's contention that Endpoint Threat Emulation infringed claim 17 of the '731 Patent. Again, the Court's order is not premised on the identification of source code, but on the failure to *explain an infringement theory*:

> Inadequate explanation of the "security profile" seems to be a common theme among the contentions pointed out by Check Point. Similar to limitation 1b of the '731 Patent discussed in the briefing, Finjan fails to explain what the security profile is. What allegedly creates the security profile? Where does the security profile allegedly reside? What are the things in the security profile that allegedly constitute the list of computer demands? Finjan does not say.

Third Strike Order at 33. In its Motion, Finjan argues that its theory *was* disclosed by its reliance on non-source code evidence. Br. at 9. But the page cited by Finjan doesn't answer any of the questions posed by the Court:



| Claim 17 | Endpoint Threat Emulation Instrumentality |
|---|---|
| 17a.  A computer-readable storage medium storing program code for causing a computer to perform the steps of: | Endpoint Threat Emulation Instrumentality has a Downloadable scanner because the it has an emulation engine that analyzes the files to determine if they are malicious based and will record computer commands like commands that change the registry and start unauthorized processes. |
| 17b.  retrieving a requested file from the Internet; | |
| 17c.  scanning the retrieved file to determine computer commands that the file is programmed to perform; | By default, SandBlast Agent uses the SandBlast Cloud for Threat Extraction and Threat Emulation.<br>If you have a SandBlast Appliance, you can use this as an alternative to SandBlast Cloud.<br>Endpoint Security R77.30.02 Administration Guide at 201 |
| 17d.  deriving a security profile for the retrieved file, the security profile including a list of at least one computer command that the retrieved file is programmed to perform; | • Threat Emulation gives networks the necessary protection against unknown threats in files that are downloaded from the Internet or attached to emails. When emulation is done on a file:<br>  • The file is opened on more than one virtual computer with different operating system environments |
| 17e.  storing the retrieved file within a file cache for future access, and indexing the retrieved file in the file cache with a file ID; and | • The virtual computers are closely monitored for unusual and malicious behavior, such as an attempt to change registry keys or run an unauthorized process<br>  • Any malicious behavior is immediately logged and you can use Prevent mode to block the file from the internal network.<br>• The cryptographic hash of a new malicious file is saved to a database and the internal network is protected from that malware |
| 17f.  storing the security profile for the retrieved file within a security profile cache for future access, and indexing the security profile in the security profile cache with the file ID of the retrieved file, so that when the same file is subsequently requested from the Internet, its security profile is readily accessible from the security profile cache without the need to perform the scanning. | • Information about malicious files and malware is shared with Check Point ThreatCloud and helps to protect all ThreatCloud users<br>CPFIN000001417 at 11431<br><br>FINJAN-CP 257851 |

ECF No. 223-15 (Kobialka Decl.), Ex., 73 at 7. Thus, even if it was permissible for Finjan to fail

1    to explain how cited source code shows alleged infringement (it is not), Finjan's non-source code

2    evidence fairs no better—and this contention was properly struck for that independent reason.

3        In its Motion, Finjan does not cite a single struck contention that would otherwise be

4    allowable if the Federal Circuit held that local rules contain no source code requirements. This is

5    because, as explained above, the only contentions that were struck on the ground that they lacked

6    source code citations were for two products: (1) Network Firewall; and (2) Network Anti-Spam &

7    E-mail Security. But those products were *also* struck on entirely separate grounds. Accordingly,

8    the resolution of whether source code citations are required would not affect the outcome of the

9    litigation as those products would remain struck, even if the Federal Circuit were to rule in

10   Finjan's favor. The question is therefore not controlling.

11            **2.    The Third Strike Order Does Not Reflect a Difference of Opinion.**

12        Finjan fails to identify a substantial ground for a difference of opinion as to the Court's

13   Third Strike Order. Finjan relies on a series of cases that it contends shows a difference of

14   opinion "on whether and to what extent Patent Local Rule 3-1 requires universal pin cites to

15   source code." Br. at 10. Unsurprisingly, because this determination is so fact dependent, each of

16   the cases cited by Finjan are easily distinguishable from the present case, and fall far short of

17   demonstrating any difference of opinion.

18        In *Sophos*, the Court refused to strike Finjan's contentions because "[t]his is the first time

19   that a court has reviewed Finjan's contentions in this case, Finjan has requested leave to amend,

20   and it appears likely that Finjan will be able to cure the deficiencies." 2015 WL 5012679 at *2,

21   n.2. The facts of the present case are markedly different. *See generally supra* § II. Moreover, in

22   *Sophos*, even though the Court permitted amendment, it required the amended contentions to

23   include "pinpoint citations, or the substantial equivalent, to source code." *Id.* at *3. While Finjan

24   argued that pinpoint citations to source code are not required under the local rules, the Court

25   noted "this distinction is irrelevant here because Sophos has already served (nearly five months

26   ago) an interrogatory requesting pinpoint citations to source code." *Id.* Similarly here, even

27   putting aside the Narrowing Order that specifically required pinpoint citations, Check Point

28   served an interrogatory on Finjan nineteen months ago asking for pinpoint citations. Caridis

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1    Decl., Ex. B. Finjan replied by incorporating its infringement contentions by reference. *Id.*, Ex. H.

2         In *Proofpoint*, the Court found that Patent L. R. 3-1 does not include a *per se* requirement

3    that pinpoint citations to source code are required in patent cases involving software. *Finjan, Inc.*

4    *v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9023166 at *3 (N.D. Cal. Dec. 16, 2015).

5    This Court has not issued a contrary ruling. Rather, the Narrowing Order *in this case* ordered

6    Finjan to provide pinpoint source code citations—*in this case*. Narrowing Order at 1-2. The Third

7    Strike Order merely applied that directive. This Court did not attempt to impose a blanket rule

8    that all software cases require "universal pin cites to source code," as Finjan claims.

9         Next, Finjan cites the Case Management Order in *Zscaler*, where the Court denied

10   defendant's request to require pinpoint source code citations in the infringement contentions.

11   Order re Further Case Management Conference, at 2, *Finjan, Inc. v. Zscaler, Inc.*, Case No. 17-

12   cv-06946-JST (N.D. Cal. June 26, 2018), ECF No. 58. Finjan fails to mention, however, that not

13   only did the *Zscaler* Case Management Order expressly leave open the possibility that Zscaler

14   could move to compel more specific contentions, *see id.*, but that Zscaler did just that—and won,

15   **twice**. *Finjan, Inc. v. Zscaler, Inc.*, Case No. 17-cv-06946-JST, 2018 WL 4181906 (N.D. Cal.

16   Aug. 31, 2018) (granting Zscaler's motion for more specific infringement contentions); *Finjan,*

17   *Inc. v. Zscaler, Inc.*, Case No. 17-cv-06946-JST, 2019 WL 7589210, at *6 (N.D. Cal. Jan. 28,

18   2019) (granting "Zscaler's motion to enforce the Court's earlier order directing more specific

19   infringement contentions").

20        In *Vasudevan Software, Inc. v. International Business Machines Corp.*, the Court ruled on

21   a motion to compel an interrogatory response that sought source-code citations. No. C09-05897

22   RS HRL, 2011 WL 940263, at *7–8 (N.D. Cal. Feb. 18, 2011). That Court recognized that

23   "[o]nce source code has been provided to the plaintiffs . . . courts have required plaintiffs to

24   supplement their infringement charges with pinpoint citations." *Id.* at *7 (quoting *Big Baboon*

25   *Corp. v. Dell, Inc.*, 723 F.Supp.2d 1224, 1227-28 (C.D. Cal. 2010)). While the *Vasudevan* Court

26   did not require pinpoint citations for every claim element in response to an interrogatory in that

27   case, such a conclusion is neither in conflict with, nor binding on, the Court's ability, in this case,

28   to control discovery in light of Finjan's prior litigation history and to manage its own docket. The

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1   *Vasudevan* Court based its determination on the specific facts of that case, much like the Court

2   has done here.

3       Finally, Finjan cites *Network Caching Tech. LLC v. Novell Inc.* No. C-01-2079-VRW,

4   2002 WL 32126128, at *6 (N.D. Cal. Aug. 13, 2002). Finjan's reliance is misplaced. The

5   question answered in *Novell* was whether plaintiff "must provide the specific location of each

6   routine within the software product *in order properly to assert its means plus functions claims.*"

7   *Id.* (emphasis added). This is obviously not the situation in which we find ourselves here.

8   Moreover, the Court in *Novell* noted that the source code was "solely in the defendants'

9   possession", indicating that source code discovery had not yet commenced. *Id.* at *7.

10       Because Finjan fails to meet its burden showing that there are substantial grounds for a

11   difference of opinion pertaining to the alleged "question of law," interlocutory certification

12   should be denied.

13           **3.**      **Certifying the Third Strike Order for Appeal Will Not Materially**

14                 **Advance the Case.**

15       Finjan presents three arguments for how an interlocutory appeal will advance the case.

16   None of them are persuasive.

17       ***First***, Finjan argues that an interlocutory appeal will avoid the "risk of wasting time and

18   resources by conducing two successive rounds of expert reports and trials." Br. at 13.

19   Respectfully, this risk is tiny. As an initial matter, Finjan's argument assumes that the Special

20   Master will find *any* of the remaining charts viable in light of the Third Strike Order. As the Court

21   no doubt recalls, Finjan showed up at the hearing preceding the Third Strike Order with what it

22   said were its ***two best*** charts. Neither passed muster. Given that Finjan's self-professed "best"

23   charts fell short, there is no reason to think that the remainder will fare any better.

24       And even if they did, the risk to which Finjan points is predicated on the supposition that

25   (after appeal) the Federal Circuit will overturn this Court's decision even *despite* (i) the highly

26   deferential standard under which that decision will be reviewed, and (ii) the *multiple*

27   opportunities the Court gave Finjan to comply with the Court's requirements. That risk is, in a

28   word, low—and does not justify the "extraordinary" remedy of an interlocutory appeal.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

*Second*, Finjan argues that "guidance from the Federal Circuit will assist the Special Master in determining whether Finjan's outstanding contentions should also remain in the case." Br. at 13. Again, this is not correct. The Special Mater was appointed to evaluate the remaining charts in light of the Court's order—*i.e.*, to assist the District Court and to ease the impact on the Court's docket. Just as this Court did not seek the Federal Circuit's guidance *before* ruling on the motion to strike, it need not seek the Federal Circuit's guidance before the Special Master provides a recommendation to the Court regarding the remaining charts.

*Third*, Finjan argues that an interlocutory appeal would "help narrow the issues by finalizing the list of contentions to be tried." Br. at 13. Again, this argument both presupposes that any contentions will survive and that the Court's Third Strike Order has a material risk of being overturned. Neither is likely. In any case, if "narrowing the issues" for trial were sufficient reason to certify for interlocutory appeal, then summary judgment decisions, *Daubert* rulings— effectively any order—would qualify. That is not the law. *See Chiron Corp. v. Abbott Labs*., No. C-93-4380 MHP, 1996 WL 15758, at *3 (N.D. Cal. Jan. 3, 1996) (concluding that adopting defendant's position would result in making "all denials of summary judgment and other potentially dispositive interlocutory orders. . . automatically appealable," which is "insufficient to carry the entire weight of the certification requirements") (citation omitted). Interlocutory appeal is to be reserved for exceptional circumstances. This is not one.

### 4.  The Court Should Use Its Discretion to Deny Certification.

Even if the Court finds that some or all of the § 1292(b) factors are present, it should exercise its discretion to deny certification. *See Nat'l Fair Housing Alliance,* 2008 WL 5273335, at *1. The parties have spent the last eighteen months litigating the sufficiency of Finjan's infringement contentions. The Court gave Finjan multiple chances to fix its contentions and clear guidance on *how* to do so. At the end of the Second Strike Order, the Court gave Finjan permission to try one more time but warned: "Finjan is cautioned that if any of its infringement contentions remain deficient, they may not form the basis for relief in this action." *Id.* at 18. Finjan has known *since August of 2018* that the Court was requiring pinpoint source code citations in its infringement contentions in this case. Narrowing Order at 1-2. After dragging

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1   Check Point and this Court through three rounds of briefing, Finjan should not be granted the

2   extraordinary relief it now requests.

3   **B.     A Stay is Inappropriate.**

4   Because certification is inappropriate, a stay would still not be warranted. But even if the

5   Court were to find that certification is proper, a stay still is not warranted. Issuing a stay pending

6   appeal is "an exercise of judicial discretion . . . to be guided by sound legal principles." *Nken*, 556

7   U.S. at 433-434. (internal quotation marks and citations omitted). When determining whether to

8   stay a case pending appeal, Courts consider four factors: (1) whether the moving party has made a

9   strong showing that it is likely to succeed on the merits; (2) whether the moving party will be

10   irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure other

11   parties interested in the proceeding; and (4) where the public interest lies. *Id.*; *see also Leiva-*

12   *Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011). Finjan does not even acknowledge these factors,

13   let alone show that, on balance, they favor a stay. This omission is fatal to Finjan's request.

14   *Somers v. Digital Realty Tr.*, Inc., No. C-14-5180-EMC, 2015 WL 4481987, at *3 (N.D. Cal. July

15   22, 2015) ("Because [movant] did not even attempt to meet that burden, the request for a stay

16   pending appeal is denied."). Finjan also does not attempt to claim that it will be *irreparably*

17   injured absent a stay. This fact also forecloses a stay on its own: "if the petitioner has not made a

18   certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of

19   the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

20   Setting aside the legal deficiencies, Finjan's stay request, for the most part, just repeats the

21   arguments Finjan made regarding whether certification will materially advance the case.

22   *Compare* Br. at 13 *with id.* at 14. Those arguments should be rejected for the reasons discussed

23   above. *Supra* § IV.A.3. The Court should deny Finjan's requested stay.

24   **C.     Additional Discovery is Inappropriate.**

25   As its final request, Finjan asks this Court to re-open discovery. Br. at 15. This request is

26   yet another example of Finjan's shifting sands approach to discovery and infringement

27   contentions. No matter what Check Point provides, Finjan always wants *more*. Finjan's request is

28   based on inaccurate characterizations and half-truths. It should be denied.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

*First*, Finjan claims that "Check Point's discovery gamesmanship has left Finjan flying in the dark." *Id*. But Finjan's claim is belied by the facts. The Narrowing Order required Finjan to identify what products it believed infringes the patents at issue. ECF No. 29 at 1. In response, Finjan identified practically the every product Check Point offers. Caridis Decl., Ex. I (Manes Sept. 20, 2018 e-mail). Pursuant to the Narrowing Order, Check Point made the source code for all those products available for inspection. *See id*., Ex. A (Roberts July 25, 2018 Letter). Finjan now complains that Check Point "buried the relevant source code for the accused products in a mountain of source code," Br. at 15, but Check Point simply gave Finjan the code it asked for, and as that code is kept in the ordinary course of business. Indeed, had Check Point provided anything less Finjan would complain (as it *also* has in its motion) that Check Point did not provide enough information.

Finjan's complaints about Check Point's technical documents are equally flawed. Throughout its brief Finjan contends that Check Point has not complied with its obligations to produce technical documents. *See, e.g.*, Br. at 2. This is a disingenuous assertion at best. In early 2019, Finjan brought a motion to compel Check Point to produce technical documents. *Supra* § II.C.1. During the hearing, the Magistrate Judge ordered the parties to meet and confer to resolve their differences. *Id.* The parties reached an agreement that was entered by the Court. *Id.* Check Point produced the requested technical documents as agreed. Now, apparently, after the *third motion to strike* Finjan suddenly wants more? It is unclear what Finjan even wants, and Finjan has neither moved for additional categories of documents nor moved to compel the production of additional documents within the categories that Check Point agreed to (and did) produce. Instead, this appears to be a case of déjà vu. Much like in the lead-up to the First Strike Order, Finjan is manufacturing a discovery dispute in order to excuse its defective infringement contentions. The Court rejected this approach before:

> Finjan argues that Check Point failed to produce internal technical documents which limited its ability to map source code packages to specific instrumentality. Oppo. at 17-18. The argument is not well-taken. On October 29, 2018, two days before the deadline to serve its infringement contentions, Finjan requested production of documents it identified on Check Point's source code computer. Roberts Decl. Ex. B. While it is not clear whether Finjan had access to those technical documents on the source code computer, Finjan did

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

not move to compel or ask for additional time to prepare its infringement contentions. If the technical documents are critical for Finjan to provide adequate pinpoint source code citations, it should not have waited so long to request them.

First Strike Order at 11. The Court should reach the same conclusion here. We are nearly two years into this case. If Finjan needed additional technical documents in order to formulate its infringement theories it had *more than* enough time to seek them.

Finjan also takes issue with Check Point's response to Interrogatory No. 9. *See, e.g.*, Br. at 4-5. Again, nothing is ever enough for Finjan. It argued repeatedly both to this Court and to the Magistrate Judge that a source code mapping was required for it to understand Check Point's code. For example, during briefing on Check Point's motion to strike the AICs, Finjan claimed that Check Point's response to Interrogatory No. 9 would "further support Finjan's opposition that the appropriate source was cited for Check Point's accused products." ECF No. 158 at 2. Now that Check Point has provided that mapping, Finjan yet again moves the goal posts. In reality, this is just an excuse. If Finjan *really* thought it needed to address issues with this mapping it could have at least *attempted* to make use of the 30(b)(6) procedure provided by the Court. Indeed, ***before*** Check Point filed the its third motion to strike, the parties had a dialogue about this very procedure. Caridis Decl., Ex. J (Roberts Sept. 4, 2019 e-mail). In that dialogue Check Point expressly cited the Court's statement during the first hearing, asked Finjan to review the list of issues the Check Point had with the SAICs and requested "[i]f you think you will be able to fix those issues with specific 30(b)(6) questions for a witness, and you think that Judge Orrick's order still applies you should provide us a list of those specific questions and (to the extent we cannot agree) we should submit a five page joint letter to Judge Orrick appending the questions as he ordered." *Id.* But Finjan ***never*** provided any such questions and instead filed another motion to take an *unbounded* deposition of Mr. Zegman. ECF No. 215. Having affirmatively refused even to discuss the deposition procedure the Court provided for Finjan's use, Finjan cannot now complain that it lacked the opportunity to take discovery about Check Point's response to Interrogatory No. 9.

Relatedly, Finjan repeatedly complains that it has not been able to depose Check Point's technical witness. This is not an issue of Check Point refusing an appropriate deposition. The

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1   Court already told Finjan that it needed to provide compliant infringement contentions before

2   taking a technical deposition. *See supra* § II.B.1. Finjan failed to provide such contentions, and

3   therefore Check Point had no obligation to produce a technical witness. *See id.*; ECF No. 157.

4        **Second**, Finjan's request for more discovery is premised on an inaccurate characterization

5   of the Third Strike Order. Finjan claims that the Third Strike Order rested on the Court's

6   resolution of "factual disputes" regarding whether Finjan had included source code citations for

7   certain products. Br. at 15-16. Finjan (1) notes that it submitted an expert declaration in support of

8   its opposition to strike the SAICs and (2) claims that the Third Strick Order relied on the

9   declaration Check Point submitted in support of its motion to strike the SAICs and Check Point's

10  response to Interrogatory No. 9. *Id*. Neither argument holds water. Finjan's expert declaration: (1)

11  improperly attempted to add substance to the SAICs; (2) is based on "experience" and "standard

12  industry practice" rather than record evidence; (3) contains summary conclusions without support

13  or explanation; and (4) was entirely too late. *See* ECF No. 234.04 at 15. The Court was well

14  within its rights to disregard it. For its part, the Zegman declaration is cited a single time in the

15  Third Strike Order when the Court summarized Check Point's position as to the Capsule Cloud

16  contentions. Third Strike Order at 12. But the Court did not strike Capsule Cloud for any reason

17  tied the Zegman declaration. *Id*. Rather, Capsule Cloud was struck because Finjan "does not

18  explain [its] theory and instead simply provides a one-sentence incorporation by reference

19  placeholder." *Id*. The Court only relied on Interrogatory 9 to strike Network Firewall and

20  Network Anti-Spam & E-mail Security pursuant to Issue 1. But as previously explained, those

21  products were also struck for entirely separate grounds. At the end of the day, even if the Court

22  erred in disregarding Finjan's expert's (conclusory and improper) declaration and relying on

23  Check Point's Interrogatory No. 9 (it did not), this would not change the result of the Third Strike

24  Order.

25        The parties and the Court have already spent considerable time and resources litigating the

26  sufficiency of Finjan's infringement contentions. The Court already gave Finjan "one last"

27  chance. Second Strike Order at 18. After blowing that chance, Finjan should not now be allowed

28  to re-open fact discovery.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO

1  **V.     CONCLUSION**

2          For all of the foregoing reasons, and the simple fact that a denial at this stage does not

3  prejudice Finjan from properly filing an appeal at the conclusion of the case, Check Point

4  respectfully requests that Finjan's motion be denied in its entirety.

5

6  Dated: March 27, 2020                        Respectfully submitted,

7                                               ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9                                               By:        */s/ Clement S. Roberts*
                                                           Clement S. Roberts
10                                                         Attorneys for Defendants
                                                           CHECK POINT SOFTWARE
11                                                         TECHNOLOGIES, INC.
                                                           CHECK POINT SOFTWARE
12                                                         TECHNOLOGIES, LTD.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

CHECK POINT OPP. TO
MOTION TO CERTIFY
3:18-CV-02621-WHO