UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02621-WHO<br><br>**ORDER DENYING MOTION TO CERTIFY THE ORDER ENTERED AT DKT. NO. 247 FOR INTERLOCUTORY APPEAL**<br><br>Re: Dkt. No. 263 |

In this patent infringement case, plaintiff Finjan, Inc. ("Finjan") accuses defendant Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. (collectively "Check Point") of infringing on several of its patents related to cyber security. There have been three rounds of infringement contentions in this case. On January 17, 2020, I granted in part Check Point's motion to strike Finjan's second amended infringement contentions ("SAICs"), which amounted to 5,135 charts, totaling to over 185,000 pages. *See* Order Granting in Part Motion to Strike Second Amended Infringement Contentions; Granting in Part Motions to Seal (the "SAIC Order") [Dkt. No. 247]. Given the unmanageable size of Finjan's SAICs, I appointed a special master to determine if other contentions should be struck in accordance with the SAIC Order. *See* Order Appointing Special Master [Dkt. No. 261].

Before me is Finjan's request that I certify the SAIC Order for interlocutory review of whether Patent Local Rule 3 requires a party claiming patent infringement to provide pinpoint source code citations for every element of every asserted claim. It also seeks to stay the proceedings and permit it limited discovery while the appeal is pending. I conclude that Finjan has failed to identify a pure question of law over which substantial grounds for difference exists

and that an interlocutory appeal would further prolong this already-prolonged litigation. Finjan's motion to certify the SAIC Order for interlocutory appeal is DENIED.

## BACKGROUND[1]

In September 2018, I received briefing from the parties on how to manage this litigation in compliance with Federal Rule of Civil Procedure 1's mandate of a "just, speedy, and inexpensive determination of this action[.]" Order Re Case Narrowing and Infringement Contentions (the "Narrowing Order") [Dkt. No. 29]. I then ordered Finjan to serve its infringement contentions under specifications that largely follow the provisions of this District's Patent Local Rules as well as the guidance provided in the since withdrawn 2013 Model Order from the Federal Circuit. *See* Narrowing Order. Finjan was instructed to "include pinpoint source code citations . . . accompanied by the document production required by Patent Local Rule 3-2" and to also:

> (i) avoid open-ended citations to "exemplary" products and use of the terms "such as" and "for example"; (ii) set forth any infringement theories based on the doctrine of equivalents with limitation-by-limitation analyses; and (iii) for any indirect theories of infringement, identify the alleged direct infringement, the alleged acts of inducement or contribution to that infringement, and the relationship between them.

*Id.* at 2.

On February 27, 2019, I granted in part Check Point's motion to strike Finjan's infringement contentions ("ICs") because they violated my Narrowing Order and the Patent Local Rules. *See* Order Granting Motion to Strike in Part; Granting Motions to Seal; Granting Motion to Amend Claim Construction Schedule (the "IC Order") [Dkt. No. 84]. Among other things, I specifically ordered Finjan to provide pinpoint source code citations that show "where and how each limitation of each asserted claim is found within each Accused Instrumentality." *Id.* at 12; *see also id.* at 11 ("It is Finjan's obligation to identify the particular claim components in each claim, map those components onto the features of the allegedly infringing products, and pinpoint cite source code that practices that component.").

Finjan then served its amended infringement contentions ("AICs"). Check Point moved to

---

[1] I summarized the facts of this case in more detail in the January 17, 2020 SAIC Order. *See* SAIC Order at 3-7.

strike, arguing that they were deficient in largely the same ways as before. On August 12, 2019, I granted Check Point's motion in part. *See* Order Granting Motion to Strike Infringement Contentions in Part (the "AIC Order") [Dkt. No. 192]. In relevant part, I found that Finjan had already been directed to provide pinpoint source code citations for each limitation and held that "[t]o the extent any or all of the 30 of the accused instrumentalities lack pinpoint citations, they are struck with prejudice." *Id.* at 11. Where Finjan used the same source code for different things, I allowed it to "amend its infringement contentions to better explain why the same source code [] applies to wholly different limitations." *Id.* I allowed Finjan limited leave to amend its infringement contentions "one last time within fourteen days." *Id.* at 18. I cautioned that "if any of its infringement contentions remain deficient, they may not form the basis for relief in this action." *Id.*

On August 26, 2019, Finjan served its SAICs, containing 5,135 claim charts and totaling more than 185,000 pages. SAIC Order at 7. Check Point moved to strike the SAICs for six reasons. Before the hearing, I issued a tentative ruling on these six issues that was almost entirely against Finjan; at the start of the hearing, Finjan abandoned its positions in response to most of the tentative. *Id.* at 1.

In making my final ruling, I emphasized that "just because a contention crosses one of the issue hurdles, it does not necessarily mean that it is sufficiently alleged because it could fail to cross another issue hurdle." SAIC Order at 2 n.1. Ultimately, I struck with prejudice all contentions identified under Issue 1 (products and theories that were previously struck with prejudice), Issue 2 (new accusations), and Issue 5 (contentions without pinpoint source code citations). SAIC Order at 39. I struck with prejudice all inadequately identified and explained combination contentions discussed under Issue 3, and I decided to appoint a special master to determine if the other accused combinations should also be struck. *Id.* Finally, I struck with prejudice all examples discussed under Issue 6, and referred to the master the determination of whether the other contentions should also be struck for inadequate source code explanations

1  and/or failure to explain why the same source code applies in different cases. *Id.*[2]

2  On February 14, 2020, I appointed the Honorable Elizabeth D. Laporte, United States District Court Magistrate Judge (Retired), as special master after neither party objected to my notice of intent to appoint her. *See* Order Appointing Special Master [Dkt. No. 261]. On March 13, 2020, Special Master Laporte set a briefing schedule, but on the same day Finjan filed this motion to certify interlocutory appeal, to stay, and to permit limited discovery. *See* Plaintiff Finjan Inc.'s Notice of Motion and Motion to Certify the Court's January 17, 2020 Order (Dkt. No. 247) For Interlocutory Appeal, to Stay, and to Permit Limited Discovery ("Mot.") [Dkt. No. 263].

**LEGAL STANDARD**

Appellate review before a final judgment is appropriate "only in exceptional cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). For the court of appeals to have jurisdiction over an interlocutory appeal, the order must involve: (i) a controlling question of law; (ii) substantial grounds for difference of opinion; and (iii) a likelihood that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Section 1292 "was not intended merely to provide review of difficult rulings in hard cases." *Id.* Certification is at the discretion of the district court. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

A party seeking to certify an issue for interlocutory review bears the burden of showing that each of the three requirements are satisfied and that a departure from long-standing policy is justified. *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019). Even when the moving party can meet the requirements of Section 1292(b), a district court's decision to grant or deny certification is entirely discretionary. *Nat'l Fair Hous. All. v. A.G. Spanos Const. Inc,* No. C 07-3255 SBA, 2008 WL 5273335, at *1 (N.D. Cal. Dec. 16, 2008). A decision by the district court to deny certification of an issue is unreviewable. *Id.*

---

[2] I allowed Finjan to include the open-ended citations discussed under Issue 4 because it clarified that these block citations will not be relied on to show infringement at trial, but to provide context and show how pinpoint citations operate. SAIC Order at 39.

4

**DISCUSSION**

Finjan has not met its burden of satisfying all three requirements to justify the extraordinary remedy it seeks. Interlocutory review is not appropriate because Finjan seeks review of a mixed question of law and fact, it fails to show a substantial ground for a difference of opinion, and an appeal would not materially advance this litigation.

**I.     CONTROLLING QUESTION OF LAW**

A question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of the litigation." *In re Cement Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). This requirement helps ensure that section 1292(b) interlocutory appeals occur "sparingly and only in exceptional cases" as Congress intended. *See id.* at 1027. A "mixed question of law and fact or the application of law to a particular set of facts" by itself is not appropriate for permissive interlocutory review. *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017) (citation omitted); *see also Allen v. Conagra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 6000456, at *3 (N.D. Cal. Nov. 12, 2013) (denying section 1292(b) certification because proposed appeal involved application of the relevant facts to a regulation).

Finjan asserts that the SAIC Order raises the following controlling question of law: "whether Patent Local Rule 3-1 requires pinpoint source code citations for every claim element, particularly prior to the deposition phase of fact discovery, or if a Plaintiff may reasonably rely on other evidence of infringement to provide the 'where and how' of infringement for certain limitations." Mot. 7-8. But contrary to Finjan's formulation of the question, the SAIC Order did not simply apply Patent Local Rule 3-1; it also applied the Narrowing Order, the IC Order and the AIC Order.

I exercised my inherent broad discretion in supervising the pretrial phase of litigation and managing my docket when I entered the Narrowing Order in this case. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (citation omitted); *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). At the Initial Case Management Conference, I directed the parties to submit briefs in support of their proposals as how to manage the litigation of *this case* to comply with

5

Federal Rule of Civil Procedure 1's mandate of a "just, speedy, and inexpensive determination" of this action. Minute Entry for Proceedings Held on August 14, 2018 [Dkt. No. 24]. After considering their briefs, the Patent Local Rules, and the 2013 Model Order, I ordered Finjan to identify the specific infringing products, Check Point to provide source code for these identified products, and then Finjan to serve its infringement contentions that comply with Patent Local Rule 3-1, "include pinpoint source code citations, and be accompanied by the document production required by Patent Local Rule 3-2." Narrowing Order at 2. The Narrowing Order was a *tailored* order made in light of the facts; it was not simply an order directing compliance with the Patent Local Rules. *Id.* Other courts have also required the same in similar situations. *See, e.g.*, *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010) (where the accused instrumentality includes computer software *based upon source code made available to the patentee*, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation).

In all three rounds of infringement contentions, Check Point sought to strike not only for failure to comply with the Patent Local Rules but also to enforce the Narrowing Order that was tailored to the facts of this case. The Narrowing Order includes a determination of how to manage my docket, how to supervise pretrial litigation, or how to ensure an efficient determination, all of which are not questions of law. *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 685 F.2d 1065, 1071 (9th Cir.1982), *rev'd in part and aff'd in part*, 466 U.S. 435 (1984) ("A district court has wide latitude in controlling discovery; its rulings will not be overturned in the absence of a clear abuse of discretion."). The AC Order and AIC Order further developed the analysis of Finjan's contentions.

At best, the SAIC Order entails a mixed question of law which is inappropriate for interlocutory appeal. For example, in *Allen v. Conagra Foods, Inc*, I denied a motion to certify an order for interlocutory appeal because, among other things, the question presented was not one of pure law, but rather a mixed question of law and fact. No. 3:13-cv-01279-WHO, 2019 WL 1466889 (N.D. Cal. Feb. 5, 2019). In ruling on a motion to dismiss, I "determined that the federal regulations governing food labeling do not preempt the plaintiff's claims." *Id.* at *1. The

6

defendants sought interlocutory appeal, claiming that my order turned on a question of law –the interpretation of a federal regulation. *Id.* But I found that "[t]he facts alleged in the complaint [could not] be extricated from my discussion or from any conclusion I reached." *Id.* at *2.

Similarly, even if the SAIC includes a legal question of my interpretation of a Patent Local Rule, the nature of Finjan's infringement contentions, combined with three rounds of litigation relating to the sufficiency of those contentions, cannot be extricated from my discussion and conclusion about them. In the AIC Order and the SAIC Order, I did not make a blanket determination that all infringement contentions must include pinpoint source code citations. Rather, considering the facts unique to this case, I held that pinpoint source code citations and supporting explanations were required to put Check Point (and me) on notice of Finjan's infringement theories. Without a controlling question of law, interlocutory appeal is inappropriate.

Even if I were to find that my requirement for source code citations in this case is a pure question of law, Finjan has not met its burden in showing that it is a controlling question of law as required by 28 U.S.C. § 1292(b). A controlling question of law is one where the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. Finjan argues that the question of whether source code citations are required by the Patent Local Rules is controlling because it materially affects the outcome of this case by striking many of Finjan's infringement contentions, thereby removing these allegations from this case. Mot. 8. But it fails to consider that contentions addressed in the SAIC Order were struck on multiple overlapping grounds. Check Point moved to strike the SAICs because Finjan "(1) accuses products and theories struck with prejudice by the Court; (2) asserts new theories, claims, and combinations; (3) continues to accuse combinations without explaining which parts of the combination meet which limitation or how the combination of products act together to infringe; (4) relies on new open-ended contentions and citations to the entire code base for accused instrumentalities; (5) has not provided pinpoint source code citations for numerous contentions[3];

---

[3] Under Issue 5, Finjan stipulated to my tentative ruling to strike all contentions identified by Check Point that did not include any source code citations or had source code citations that were

7

1    and (6) still fails to specify how Check Point's products infringe Finjan's patents." SAIC Order at
2    9. In deciding each of these six issues, I emphasized that "just because a contention crosses one of
3    the issue hurdles, it does not necessarily mean that it is sufficiently alleged because it could fail to
4    cross another issue hurdle." *Id.* at 2 n.1.

Finjan has not met its burden in showing that the issue is a controlling question of law appropriate for interlocutory review.

## II.    SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

A substantial ground for difference of opinion exists where "novel and difficult questions of first impression are presented" on which "fair-minded jurists might reach contradictory conclusions." *Reese v. BP Exploration (Ak.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2001). Some examples of substantial ground for difference of opinion include cases in direct conflict with the holding in the order sought for interlocutory review, or a split in authority on the questions posed. *See Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2014 WL 4244045, at *2 (N.D. Cal. Aug. 25, 2014). "A party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Finjan relies on a series of cases in this District, including one before me, that it contends shows a difference of opinion on "whether and to what extent Patent Local Rule 3-1 requires universal pin cites to source code." Mot. 10. But each of the cases it relies on are easily distinguishable from this case because this determination is so fact dependent.

For example, in *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 5012679, at *1 (N.D. Cal. Aug. 24, 2015), I granted defendant's motion to strike to the extent that it sought to compel Finjan to amend its infringement contentions, but denied it in all other respects. I refused to strike Finjan's contentions because, unlike the third rounds of infringement contentions here, it was "the first time that a court has reviewed Finjan's contentions in [that] case, Finjan [] requested leave to amend, and it appear[ed] likely that Finjan [would] be able to cure the

---

extremely deficient because they cite code for only portions of a limitation. SAIC Order at 28-29.

8

deficiencies." *Id.* at *2. n.2.

Even though I allowed Finjan to amend its infringement contentions in that case, I still required the amended contentions to include "pinpoint citations, or the substantial equivalent, to source code." 2015 WL 5012679, at *3. Finjan similarly argued "that pinpoint citations to source code are not required under the patent local rules and that they are only required in response to an interrogatory." *Id.* But I noted that "[t]his distinction is irrelevant here because Sophos has already served (nearly five months ago) an interrogatory requesting pinpoint citations to source code" and "[s]everal courts have held that once a plaintiff has had a sufficient opportunity to review the defendant's source code, the plaintiff must provide citations to the source code in response to an interrogatory." *Id.* (collecting cases). I concluded that "[o]nce Finjan responds to the pinpoint citations interrogatory, it will be required to include that information in its infringement contentions as well." *Id.* Here, Finjan has not only had access to the source code of Check Point's accused products for several months, but also to a source-code mapping showing the relationship between the code Check Point had produced for inspection and the accused products. Check Point provided this source-code mapping to Finjan well before the SAICs were served.[4]

---

[4] I briefly address Finjan's request for limited discovery here. After receiving a source-code mapping from Check Point, Finjan attempted to compel the testimony of Tamir Zegman, Check Point's chief architect, because Finjan disagreed with his understanding with respect to what source code was related to which products. Finjan complains that despite filing repeated motions to compel, it has not been able to depose Zegman. Plaintiff Finjan, Inc.'s Reply in Support of its Motion to Certify For Interlocutory Appeal, to Stay, and to Permit Limited Discovery [Dkt. No. 266] 13. It contends that the court in *Finjan, Inc. v. Zscaler, Inc.*, Case No. 17-cv-06946-JST, did not allow that defendant to do the same litigation tactic and after Finjan deposed defendant's representative on its source code, defendant no longer challenged the infringement contentions. Finjan believes the same would happen here if it is allowed to depose Zegman. Finjan's assertion is unconvincing.

Finjan has been provided a procedure to depose Zegman, but it has never invoked this procedure and instead affirmatively declines to make use of it. At the February 13, 2019 hearing that resulted in the first IC Order, I rejected Finjan's request for an unbounded technical deposition. However, I provided Finjan with a mechanism for taking early 30(b)(6) deposition – "send me a five-page joint letter and append to it the questions that you would like to ask a 30(b)(6) witness." Transcript of Proceedings Held on February 13, 2019 [Dkt. No. 85] 4:17-20. On June 18, 2019, Chief Magistrate Judge Joseph C. Spero denied Finjan's motion to compel deposition of Zegman, noting that he "[was] not writing on a blank slate," because I had previously specified a procedure for Finjan to obtain early technical witness testimony, and that Finjan had failed to follow that procedure. Order Denying Motion to Compel Deposition of Tamir Zegman Without Prejudice

9

Finjan next relies on *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9023166 at *3 (N.D. Cal. Dec. 16, 2015) in which the court held that "pinpoint citations to source code are not a *per se* requirement in patent cases involving software. Although pinpoint citations to source code are one way of meeting Rule 3-1(c)'s requirement . . . the Court has not been presented with any authority holding that pinpoint citations are the *only* way to meet its requirements." This is not inconsistent with the SAIC Order. As discussed above, Finjan's infringement contentions had to meet not only Patent Local Rule 3-1, but also the criteria specified in the Narrowing Order. After receiving input from the parties on how to manage *this case*, and the Narrowing Order directed Finjan to provide pinpoint source code citations given the circumstances *in this case*. The SAIC Order, and my other prior orders on Finjan's ICs and AICs, merely applied that directive when it came to pinpoint source code citations. The SAIC Order did not attempt to impose a blanket rule that all software cases require "universal pin cites to source code," as Finjan claims.

Finally, Finjan's reliance on *Vasudevan Software, Inc. v. International Business Machines Corp.*, No. C09-05897 RS HRL, 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) and *Network Caching Tech. LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002) are also misplaced. In *Vasudevan*, although the court did not require pinpoint citations given the circumstances of that case, it nonetheless recognized that "[o]nce source code has been provided to the plaintiffs . . .courts have required plaintiffs to supplement their infringement charges with pinpoint citations." 2011 WL 940263, at *7. In *Network Caching*, source code was "solely in the defendants' possession," indicating that source code discovery had not yet

---

[Dkt. No. 161].

In any event, the SAIC Order did not solely rely on how Check Point mapped its source code. As explained above, products were struck for multiple reasons. For example, in evaluating Finjan's contentions against the Capsule Cloud product, I noted that parties disagreed on whether the cited source code belonged to that product. Regardless, I found that "[e]ven if Finjan was attempting to claim that non-Capsule Cloud code shows infringement, it does not explain that theory and instead simply provides a one-sentence incorporation by reference placeholder for Capsule Cloud." SAIC Order at 12; *see also id.* at 34 ("The parties dispute whether the source code cited on pages 7 and 8 belong to the Network Anti-Virus instrumentality. Assuming that it does, Finjan fails to provide an adequate explanation of the downloadable security profile.").

commenced. 2002 WL 32126128, at *7.

Finjan fails to meets its burden in showing that there are substantial grounds for a difference of opinion pertaining to the alleged "question of law".

### III.     MATERIAL ADVANCEMENT

An appeal must be "likely to materially speed the termination of the litigation." *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-cv-02182-RS, 2016 WL 777775, at *3 (N.D. Cal. Feb. 29, 2016). Considering the effect of a reversal in the case, an interlocutory appeal materially advances the termination of the litigation where it "promises to advance the time for trial or to shorten the time required for trial." *Dukes v. Wal-Mart Stores, Inc.*, 01-cv-02252-CRB, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (quoting 16 Federal Practice & Procedure § 3930 at n. 39 (2d ed.)). "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Id.* (internal quotation marks and formatting omitted).

Finjan's three reasons on how an interlocutory appeal will advance this case are unpersuasive. First, it contends that interlocutory appeal "will avoid the risk of wasting time and resources by conducting two successive rounds of expert reports and trials with significantly overlapping issues in the event of a remand on the stricken infringement claims." Mot. 13. I find that risk is low given the *multiple* opportunities I have given Finjan to comply with Patent Local Rules and my Narrowing Order.

Second, it asserts that "guidance from the Federal Circuit will assist the Special Master in determining whether Finjan's outstanding contentions should also remain in the case." Mot. 13. The Special Master was appointed to evaluate the remaining charts in light of the SAIC Order. In particular, I appointed the master to "determine if other contentions should also be struck for inadequate source code *explanations* and/or failure to *explain* why the same source code applies in different cases." SAIC Order at 39. Special Master Laporte will not be determining whether contentions should be struck for failure to provide pinpoint source code citations (the alleged "question of law" here) but rather for failure to *explain* those pinpoint citations. These are two different questions and were separately discussed in the SAIC Order as well. *See id.* at 28-29

11

1 (discussing Issue 5 failure to provide pinpoint source code citations); *id.* at 29-39 (discussing Issue 6 failure to explain how cited source code shows infringement). A ruling from the Federal Circuit before the Special Master provides a recommendation will not necessarily materially advance this case.

Third, Finjan argues that an interlocutory appeal would "help narrow the issues by finalizing the list of contentions to be tried." Mot. 13. "While this argument may provide additional support for certification in cases where the first two factors are indisputably met, it is insufficient to carry the entire weight of the certification requirements." *Chiron Corp. v. Abbott Labs.*, No. C-93-4380 MHP, 1996 WL 15758, at *3 (N.D. Cal. Jan. 3, 1996).

Interlocutory appeal is to be reserved for exceptional circumstances. This is not one. It would certainly not accelerate trial court proceedings. Almost two years have passed since Finjan initiated this patent infringement case, yet it is still at the infringement contentions stage.

## CONCLUSION

For the foregoing reasons, Finjan's motion to certify the SAIC Order for interlocutory appeal is DENIED.

**IT IS SO ORDERED.**

Dated: April 21, 2020

William H. Orrick
United States District Judge